IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06-cv-977-MEF |
| | ) | |
| MANIFOLD CONSTRUCTION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

COME NOW the Defendants, Jack Manifold (hereinafter referred to as "Jack"), and

Manifold Construction, LLC (hereinafter referred to as "Manifold"), and file this brief in support

of their motion to dismiss Plaintiff's complaint for declaratory judgment, stating as follows:

### INTRODUCTION

On the 31st day of October, 2006, Plaintiff, Ohio Casualty Insurance Company

(hereinafter "Ohio Casualty") filed its complaint for declaratory judgment to determine the rights

and obligations of Ohio Casualty under a policy of insurance it issued to Manifold and Jack, the

co-defendants in the present case.  On the 4th day of December, 2006, Defendants, by and

through their attorneys, accepted service of Ohio Casualty's complaint.

### EXHIBITS

Exhibit A:     Complaint in Civil Action No. CV-05-137 filed in the Circuit Court of Lee

County, Alabama.

Exhibit B:     Ohio Casualty's Motion for Limited Intervention in Civil Action No. CV-

05-137 filed in the Circuit Court of Lee County, Alabama.

Exhibit C:    Verdict Form in Civil Action No. CV-05-137 filed in the Circuit Court of Lee County, Alabama.

Exhibit D:    Trial Transcript from Civil Action No. CV-05-137 filed in the Circuit Court of Lee County, Alabama.

At the time of filing, the Trial Transcript had not been received by counsel for Defendants.  Defendants will supplement the exhibit at such time as it is received.

## STATEMENT OF FACTS

Manifold was engaged in the business of general contractor in site preparation work. Manifold was located in Auburn, Lee County, Alabama.  Jack and his wife Melissa Manifold were the owners of Manifold.  Jack and Melissa Manifold are residents of Auburn, Lee County, Alabama.  On or about the 7th day of June, 2004, Ohio Casualty issued policies of insurance to Manifold.  Said policies of insurance provided liability insurance coverage to Manifold and Jack in the operation of Manifold.

In or about May, 2004, Manifold entered into a contract with Whittelsey Properties and Sheldon Whittelsey for site preparation work on Sanders Creek Subdivision, Phase II, located in Opelika, Lee County, Alabama.  (Exhibit A).

On or about the 24th day of February, 2005, Whittelsey Properties, Sheldon Whittelsey and C. S. "Whit" Whittelsey filed suit against Manifold and Jack in the Circuit Court of Lee County, Alabama, in civil action number CV-05-137 (hereinafter referred to as "Lee County Case") relating to the site preparation work on Sanders Creek Subdivision, Phase II.  (Exhibit A). Melissa Manifold was initially a named defendant, but she was later dismissed from the case. The Lee County Case included claims for innocent fraud, reckless fraud, negligence and wantonness.  (Exhibit A).

On or about the 13th day of March, 2006, Ohio Casualty filed its motion for limited intervention in the Lee County Case, seeking to intervene for "the limited purpose of procuring the [trial] Court to submit interrogatories to the jury relevant to the issue of its duties under two liability insurance policies issued to [Manifold and Jack]." (Exhibit B). The trial court in the Lee County Case reserved ruling on Ohio Casualty's motion.

On the 30th day of October, 2006, Whittelsey Properties, Sheldon Whittelsey and C. S. "Whit" Whittelsey proceeded to trial against Manifold and Jack in the Lee County Case. On the 1st day of November, 2006, the trial court granted judgments as a matter of law in favor of Whittelsey Properties and Sheldon Whittelsey on their claims of innocent fraud, reckless fraud and negligence. The trial court further granted a motion for judgment as a matter of law as to C. S. "Whit" Whittelsey's claims in favor of Manifold and Jack. When the case went to the jury, the jury was given a verdict form and instructed to (1) decide whether it found Manifold and/or Jack guilty of wantonness; (2) assess the compensatory damages of Whittelsey Properties and Sheldon Whittelsey, as the trial court had already found liability for innocent fraud, reckless fraud and negligence; and (3) if they so chose, to assess punitive damages against Manifold and/or Jack. On the 2nd day of November, 2006, the jury returned a verdict against Manifold and Jack which (1) found both Manifold and Jack guilty of wantonness; (2) assessed  compensatory damages of $275,000.00; and (3) assessed punitive damages against Manifold in the amount of $1,500,000.00 and against Jack in the amount of $1,000,000.00. (Exhibit C).

After returning its verdict, the trial court instructed the jury to return to the jury deliberation room while the court took up some further matters. After the jury was excused to return to the jury deliberation room, the trial court asked counsel for Ohio Casualty, Christopher Lyle McIlwain (hereinafter referred to as "McIlwain"), counsel in the case at bar, if he would

like to be heard on Ohio Casualty's motion. (Exhibit D). McIlwain announced on the record that he wished to withdraw Ohio Casualty's motion for limited intervention. (Exhibit D).

## STANDARD OF REVIEW

"The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.' It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11thCir. 2005) (citations omitted). The dismissal of a declaratory judgment action is reviewed for abuse of discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995).

## ARGUMENT

**I.     Plaintiff Waived Any Right to Pursue a Declaratory Judgment.**

The issues presented by Ohio Casualty in its complaint for declaratory judgment could have been resolved at the end of the trial in the Lee County Case; however, while the jury was waiting in the jury deliberation room, Ohio Casualty chose to withdraw its motion for limited intervention. By withdrawing its motion for limited intervention, Ohio Casualty waived any right it may have had to pursue a declaratory judgment as to the same issues raised in its motion for limited intervention.

"[W]aiver is defined as the intentional relinquishment of a right, the intention is ascertained from the external acts manifesting the waiver." Givens v. General Motors Acceptance Corp., 56 Ala.App. 561, 564, 324 So.2d 277, 279 (1975). "[T]here can be no waiver without knowledge." Taylor v. Golden Rule Ins. Co., 544 So.2d 932, 936 (Ala. 1989), citing Aetna Insurance Co. v. Spring Lake, Inc., 350 So.2d 397 (Ala. 1977). At the time Ohio Casualty withdrew its motion for limited intervention, it was represented by counsel, McIlwain. McIlwain

knew exactly what he was waiving.  See, Christopher L. McIlwain, "Clear as Mud: An Insurer's Rights and Duties Where Coverage Under a Liability Policy Is Questionable," 27 Cumb.L.Rev. 31, 51-53 (1996).  Ohio Casualty chose to avoid the most cost effective avenue to resolve the issues raised in its motion for limited intervention and in its complaint for declaratory judgment. Ohio Casualty waived any right it may have had to pursue the present litigation; therefore, its complaint for declaratory judgment is due to be dismissed.

## II.    Scrutiny of the Factors Set Forth in <u>Ameritas</u> Requires Dismissal of Plaintiff's Complaint.

In <u>Ameritas Variable Life Ins. Co. v. Roach</u>, 411 F.3d 1328 (11thCir. 2005), the Court adopted several factors to be considered by the district court in determining whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts.  The factors for consideration to aid district courts in balancing state and federal interests include the following:

"(1)    the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

"(2)    whether the judgment in the federal declaratory action would settle the controversy;

"(3)    whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

"(4)    whether the declaratory remedy is being used merely for the purpose of 'procedural fencing'-that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

"(5)    whether the use of a declaratory action would increase the friction between our

federal and state courts and improperly encroach on state jurisdiction;

"(6)    whether there is an alternative remedy that is better or more effective;

"(7)    whether the underlying factual issues are important to an informed resolution of

the case;

"(8)    whether the state trial court is in a better position to evaluate those factual issues

than is the federal court; and

"(9)    whether there is a close nexus between the underlying factual and legal issues and

state law and/or public policy, or whether federal common or statutory law dictates a

resolution of the declaratory judgment action."

Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331 (11thCir. 2005).  This list is not

exhaustive and not one factor is controlling.  Id.

Under scrutiny of the factors listed above, it is clear the present case should be dismissed.

Ohio Casualty's present action mirrors its motion for limited intervention in the Lee County

Case.  Ohio Casualty's present action was filed while its motion for limited intervention in the

Lee County Case was still pending.  The issues presented by Ohio Casualty could have been

resolved at the end of the trial in the Lee County Case; however, while the jury was waiting in

the jury deliberation room, Ohio Casualty chose to withdraw its motion for limited intervention.

Furthermore, a declaratory judgment action is not necessary in federal court as the issues raised

in Ohio Casualty's complaint could be addressed in state court under Alabama's Direct Action

Statute.  See Ala.Code 1975 § 27-23-2.  It seems Ohio Casualty attempted to avoid further state

court proceedings by racing to federal court.  Ohio Casualty's complaint for declaratory

judgment is due to be dismissed.

**III.      Ala.Code 1975 § 6-5-440 Requires the Dismissal of Plaintiff's Complaint.**

Simultaneous actions for the same cause against the same party cannot be maintained in Alabama.  Ala.Code 1975 § 6-5-440.  The term "court of this state" as used in the statute includes this Court.  <u>Terrell v. City of Bessemer</u>, 406 So.2d 337 (Ala. 1981).  At the time Ohio Casualty filed its complaint in the case at bar, Plaintiff still maintained its motion to intervene in the Lee County Case.  Ala.Code 1975 § 6-5-440 requires dismissal of Ohio Casualty's complaint.

WHEREFORE, THE PREMISES CONSIDERED, Defendants pray this Honorable Court will dismiss Plaintiff's complaint for declaratory judgment.

Respectfully submitted this the 4th day of December, 2006.

DAVIS & MCLAUGHLIN

<u>          /s/ James D. McLaughlin     </u>
BY:     JAMES D. MCLAUGHLIN  (MCL027)
          E-mail:jmclaughlin@dmlawoffice.com


Attorneys for Defendants
324 East Magnolia Avenue
Auburn, Alabama  36830
Tel.:    (334) 821-1908
Fax:    (334) 821-6335

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document on the parties listed below electronically or by placing a copy of the same in the United States mail, postage prepaid, to their correct address on this the 4th day of December, 2006.

Christopher Lyle McIlwain
HUBBARD, SMITH, MCILWAIN, BAKERFIELD & BROWDER, P.C.
Post Office Box 2427
Tuscaloosa, Alabama 35403

Bradley J. Smith
CLARK, DOLAN, MORSE, ONCALE & HAIR, P.C.
800 Shades Creek Parkway
Suite 850
Birmingham, Alabama 35209

Davis B. Whittelsey
Robert G. Poole
WHITTELSEY, WHITTELSEY & POOLE, P.,C.
P. O. Box 106
Opelika, Alabama  36803-0106


/s/ James D. McLaughlin
JAMES D. MCLAUGHLIN

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

WHITTELSEY PROPERTIES, INC.,            *
an Alabama corporation;
C. SHELDON WHITTELSEY, III, an          *
individual Alabama resident, and
C. SHELDON WHITTELSEY, IV,              *
an individual Alabama resident,

     Plaintiffs,                       *

v.                                      *       CASE NO.: CV-05-1̲3̲7̲

MANIFOLD CONSTRUCTION, LLC,             *
an Alabama Limited Liability
Company; JACK MANIFOLD, an              *
individual Alabama resident;
MELISSA MANIFOLD, an individual         *
Alabama resident; A, B, and C being the
Persons, Firms, Associations, Corporations, *
Partnerships or Entities responsible for the
acts and/or omissions complained of in this
complaint, including but not limited to the  *
Persons, Firms, Associations, Corporations,
Partnerships or Entities that negligently,
wantonly and/or fraudulently performed  *
and/or failed to perform the work and/or
provide the materials involved in this cause  *
of action and/or who negligently, wantonly
and/or fraudulently made the representations,*
misrepresentations and/or committed the
wrongs and/or acts involved herein all of which
in part, are made the subject matter of this  *
cause of action, all of whose true and correct
legal names are otherwise unknown to the  *
Plaintiffs at this time, but will be added by
amendment when ascertained,             *

     Defendants.                       *



FILED

FEB 2 4 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

4

## VERIFIED COMPLAINT

### PARTIES

1.    Plaintiff, Whittelsey Properties, Inc. (hereinafter sometimes referred to as "Whittelsey"), is an Alabama corporation qualified to do business and doing business in Lee County, Alabama.

2.    Plaintiff, C. Sheldon Whittelsey, III, (hereinafter sometimes referred to as "Whit"), is an individual Alabama resident, residing at all times material hereto in Lee County, Alabama.

3.    Plaintiff, C. Sheldon Whittelsey, IV, (hereinafter sometimes referred to as "Sheldon"), is an individual Alabama resident, residing at all times material hereto in Lee County, Alabama. Whittelsey, Sheldon and Whit will hereinafter, sometimes collectively be referred to as, "Plaintiffs".

4.    Defendant, Manifold Construction, LLC, (hereinafter sometimes referred to as "Manifold"), is an Alabama Limited Liability Company, qualified to do business and doing business in Lee County, Alabama.

5.    Defendant, Jack Manifold, (hereinafter sometimes referred to as "Jack"), is an individual Alabama resident, residing at all times material hereto in Lee County, Alabama.

6.    Defendant, Melissa Manifold, (hereinafter sometimes referred to as "Melissa"), is an individual Alabama resident, residing at all times material hereto in Lee County, Alabama.

7.    Defendants, Jack and Melissa, upon information, knowledge and belief, are husband and wife, and are the sole members of Manifold. Manifold, Jack and Melissa will hereinafter, sometimes collectively be referred to as, "Defendants".

8.     Fictitious party Defendants, A, B and C, are the persons, firms, associations, corporations, partnerships and/or legal entities more particularly described in the heading of this Complaint, all of whose true and correct legal identities are otherwise unknown to the Plaintiffs at this time, but who will be added by amendment when ascertained.

## STATEMENT OF THE FACTS

1.     On or about the 28th day of May, 2004, Sheldon, individually and on behalf of Whittelsey, executed an Acceptance of Proposal/Bid (hereinafter sometimes referred to as, the "agreement") with Jack, individually and/or on behalf of Manifold, in the amount of Six Hundred Forty Six Thousand Seven Hundred Twelve and No/100ths dollars ($646,712.00).  Numerous additional verbal agreements/representations were made by Jack, Melissa and/or Manifold, regarding the agreement, and other matters, all of which concerned the Plaintiffs and Defendants. These additional verbal agreements/representations will be described in greater detail in subsequent paragraphs contained within this Statement of the Facts.

2.     The agreement, and other representations, concerned and/or involved Defendant's construction/development; abandonment; failure to pay sub-contractors, material-men and for supplies, and other matters regarding substantial improvements necessary for the development, including but not limited to, the necessary improvements to obtain appropriate governmental permitting of Sanders Creek Subdivision, Phase II (hereinafter sometimes referred to as, "Sanders Creek"). Said construction/development will hereinafter sometimes be referred to as the "project".

6

3.    Sanders Creek is a residential subdivision development located in the City of Opelika, Lee County, and is owned by Whittelsey.

4.    Defendants agreed and represented that Defendants would perform the work, labor, provide the materials, and timely pay all costs associated with Defendants construction of the project, out of the proceeds paid to Defendants by Plaintiffs. Defendants represented, on numerous occasions, that Defendant's workers, sub-contractors and material-men would be and had been paid in full, and further executed various "Partial Waiver and Release of Lien" documents prepared by Defendants. The payment of Defendants' workers, sub-contractors and material-men was, and is a primary and necessary component for the completion of Sanders Creek in order for Plaintiffs to sell residential lots in Sanders Creek.  (A true and correct copy of the agreement, proposal/bid, made a part thereof, and copies of several Partial Waiver and Release of Lien documents, executed by Defendants are attached hereto as cumulative Exhibit "A" and incorporated herein by reference).

5.    On information, knowledge and/or belief, Jack is the managing member of Manifold, and Melissa is the Secretary/Treasurer of Manifold, and/or handles the finances of Manifold, including, but not limited to, the payment of Manifold's employees, sub-contractors, material-men, the deposits, withdrawals, and day to day financial affairs.

6.    On or about the 28th day of May, 2004, Defendants began clearing the Sanders Creek property.  Once the project was underway, and during the construction of the sewer and water line installation, it was realized that rock was going to be encountered in the construction of the project.

4

7.    A short time after Defendants began the construction of the project, Defendants submitted Defendants' first change request to Sheldon and/or Whittelsey concerning the additional costs of removal of the rock. Said change request was paid in full by Plaintiffs.

8.    As the project progressed, Defendants submitted numerous change requests to Sheldon and/or Whittelsey concerning additional costs to complete the project. Some of said change requests were additions that were add-ons to the original engineering drawings required by the City of Opelika and/or concerned a variety of different changes, additions and/or deletions that were added to the project. Some change requests included additional curb and gutter costs, additional sewer and water line costs, additional drainage control costs, and costs for materials, work and/or supplies billed to Plaintiffs but incurred and/or used by Defendants on unrelated projects. Said costs for materials, work and/or supplies billed to Plaintiffs but incurred and/or used by Defendants on unrelated projects were hidden from Plaintiffs.

9.    The third change request was dated the 26th day of July, 2004, and concerned the costs associated with blasting and removal of rock. Plaintiffs received said change order/pay request together with an attached invoice from Russo Corporation concerning said costs. Defendants represented and advised Plaintiffs that Defendants would pay the Russo Corporation invoice and add an additional service fee on Defendants' next pay request.

10.    All pay request submitted by Defendants to Plaintiffs were timely paid in full.

11.     In accordance with the work, labor. materials and other representations made by Defendants to Plaintiffs, Plaintiffs have paid, directly to Defendants, the approximate sum of $704,000.00. As previously stated, some of the proceeds paid to Defendants by Plaintiffs were for materials purchased by Defendants, represented to be needed and used on the project, charged to Plaintiffs. but used on other projects Defendants were involved in.

12.     Upon presentation of the first invoice by Defendants to Plaintiffs, Defendants requested immediate payment of the invoice and subsequently made the same request for all other invoices. Defendants, on each occasion, told Plaintiffs that Defendants were experiencing cash flow problems.

13.     Contemporaneously with Plaintiffs' payments to Defendants of most of the invoices, Defendants executed various Partial Waiver and Release of Lien documents, representing and warranting, in part, that all laborers, materials and supplies furnished by others to Defendants in connection with construction of the project had been fully paid. (See Exhibit "A"). Additionally, Defendants, represented to and provided Plaintiffs, at the time of, and with most, if not all, invoice submitted, a document(s), prepared by Defendants, representing and/or reflecting that all laborers, materials and supplies furnished by others to Defendants in connection with construction of the project were being timely paid.

14.     On or about the 27th day of October, 2004, Plaintiffs were submitted an invoice by Defendants totaling Fifty One Thousand Nine Hundred Thirteen and No/100ths dollars ($51,913.00).

6

15.     Plaintiffs paid Defendants' October 27, 2004. invoice on the 29th day of October, 2004. Upon payment of this invoice, and all other invoices, Defendants verbally represented and warranted that all sub-contractors, material-men and suppliers used by Defendants, in Defendants' construction of the project had been fully paid. However, Defendants failed to provide a Partial Waiver and Release of Lien document upon Plaintiffs' payment of the October 27, 2004 invoice.

16.     On the morning of the 30th day of November, 2004, Jack and non-party David Rouse, one of Defendants' project coordinators and/or estimators, requested a meeting with Sheldon, and pursuant thereto, met with Sheldon on said date.

17.     At the meeting described in paragraph 16 above, Defendants, Jack and Manifold, informed Plaintiffs, Sheldon and Whittelsey, that Defendants were unable to make pay role for his employees, and that Defendants were going out of business.

18.     On the request of Defendants, and based on representations made by Jack concerning Defendants' inability to pay Defendants' laborers and that Defendants would pay Defendants' material-men and suppliers, Plaintiffs, agreed to and did, pay Defendants' pay role for employees that worked on the project, for the pay period Jack represented Defendants could not pay.

19.     At the meeting referenced in paragraph 16 above, Jack, individually, and on behalf of Manifold, represented to Sheldon, individually, and on behalf of Whittelsey, in part, as follows:

1.     That due to circumstances beyond Defendants' control that Defendant was no longer in business.

2.      That all projects of Defendants had been taken over by the general contractor, owner or developer of the subject project.

3.      That Defendants no longer had employees as of Thursday, November 24, 2004.

4.      That Defendants were in the process of liquidating all company assets and would use the funds derived there from to pay the outstanding payables for the project, and would satisfy all lien-able interest concerning the project, and/or in the alternative would use funds expected to be received by Defendants from other Projects, and/or the sale of Defendants' office building, maintained in the name of Melissa, and apply the proceeds from the sale thereof, less $50,000.00, to outstanding payables for the project.

5.      Defendants specifically represented that Defendants, could and would, pay in full, Hertz's bill(s) for services/equipment provided for the project, and would provide Plaintiffs with a Final Lien/Waiver from Hertz.

6.      Defendants specifically represented that Defendants, could and would, pay in full Best Rental's bill(s) for services/equipment provided for the project, and would provide Plaintiffs with a Final Lien/Waiver from Best Rental.

7.      Defendants specifically represented that Defendants, could and would, pay Russo Corporation's bill(s) for services/equipment provided

for the project, and would provide Plaintiffs with a Final Lien/Waiver from Russo Corporation.

20.     At the meeting described in paragraph 16 above, Jack, individually, and on behalf of Manifold, represented to Sheldon, individually, and on behalf of Whittelsey, that the total amount of unpaid sub-contractors, material men and supplies used by Defendants, in Defendants' construction of the project, equaled the approximate sum of Two Hundred Thousand and No/100ths dollars ($200,000.00).

21.     Despite the representations set forth in paragraphs 19 and 20 above, Defendants, on or about the 30th day of November, 2004, by and through Jack, forwarded Plaintiffs a letter advising Plaintiffs that Defendants were no longer in business and did not have employees as of Thursday, November 24, 2004.  Additionally, Defendants stated in said letter that Hertz equipment would be paid in full, that the Best Rental debt would be substantially reduced and that Defendants were working on negotiations with Russo Corporation, the blaster, on an equipment exchange to satisfy Defendants' debt to Russo Corporation. (A true and correct copy of said letter is attached hereto, labeled Exhibit "B" and incorporated herein by reference).

22.     In said letter dated the 30th day of November, 2004, Defendants further advised Plaintiffs that attached to the letter dated the 30th day of November, 2004, was a letter being sent to all outstanding vendors on the project and that said vendors would be contacting Plaintiffs for payment options.  (A true and correct copy of said attachment is labeled Exhibit "C" attached hereto and incorporated herein by reference).

Said letter stated, in part, as follows:

"All of our current projects have been taken over by the Owner, General Contractor or Developer.

We are aware that there is outstanding debt due to your company on the above referenced project. Payment of the debt will be coming directly from Whittelsey Properties, 600 Avenue A, Opelika, Alabama, 36801"

(See Exhibit "C").

23.     On or about the 1st day of December, 2004, Sheldon, individually, and on behalf of Whittelsey, met with Defendants at Defendants' place of business located in Auburn, Lee County, Alabama. At the time of the meeting set forth in paragraph 16 above and as set forth herein, the work agreed to be, and represented to be performed by Defendants on the project was substantially incomplete.

24.     In the meeting referenced in paragraph 23 above, Defendants represented to Sheldon, individually, and on behalf of Whittelsey, that the total amount of unpaid debt on the project equaled the approximate sum of Eighty Six Thousand and No/100ths dollars ($86,000.00), excluding the debts owed to non-party Russo Corporation and non-party/Best Rental.

25.     In the meeting referenced in paragraph 23 above, Defendants, including but not limited to Melissa, represented in part, as follows:

1.     That due to circumstances beyond Defendants' control that Defendant was no longer in business.

2.     That all projects of Defendants had been taken over by the general contractor, owner or developer of the subject project.

3.     That Defendants no longer had employees as of Thursday, November 24, 2004.

4.     That Defendants were in the process of liquidating all company assets and would use the funds derived there from to pay the outstanding

payables for the project, and would satisfy all lien-able interest

concerning the project, and/or in the alternative would use funds expected

to be received by Defendants from other Projects, and/or the sale of

Defendants' office building, maintained in the name of Melissa, and

apply the proceeds from the sale thereof, less $50,000.00, to outstanding

payables for the project.

5.     Defendants specifically represented that Defendants, could and

would, pay in full, Hertz's bill(s) for services/equipment provided for

the project, and would provide Plaintiffs with a Final Lien/Waiver from

Hertz.

6.     Defendants specifically represented that Defendants, could and

would, pay in full Best Rental's bill(s) for services/equipment provided for

the project, and would provide Plaintiffs with a Final Lien/Waiver from

Best Rental.

7.     Defendants specifically represented that Defendants, could and

would, pay Russo Corporation's bill(s) for services/equipment provided

for the project, and would provide Plaintiffs with a Final Lien/Waiver

from Russo Corporation.

26.     The representations set forth in paragraph 25 above, were made despite

Defendants having previously authored the letter dated the 30th day of November, 2004,

together with the attachment thereto. (See Exhibits "B" & "C").

27.     On or about the 2nd day of December, 2004, Defendants forwarded to

Plaintiffs, via fax transmittal, a document entitled, "Unpaid Bills By Job" prepared by

Defendants, evidencing un-paid debt on the project of $302,747.85. (A true and correct copy of said document is labeled Exhibit "D", attached hereto and incorporated herein by reference).

28.    Due to the wrongful actions and/or inactions of Defendants, Plaintiffs have been forced to take over the project and to serve, in effect, as general contractor for the project. Plaintiffs have been forced to expend and become obligated to expend vast sums of money in performing; correcting; paying for and completing the project that Defendants agreed and represented they would fully perform and pay the costs thereof.

29.    Due to the wrongful actions and/or inactions of Defendants, Plaintiffs have been contacted; via phone, fax, personal visits, mail, certified mail, through attorneys and/or otherwise, concerning numerous sub-contractors, material-men and suppliers demands for payment from Plaintiffs of vast sums of money for un-paid bills, incurred by Defendants, concerning the project. Additionally, Plaintiffs have been provided with numerous Notices of Intents to file Liens and/or Notice of Lien documents by sub-contractors, material-men and suppliers demanding the payment from Plaintiffs of vast sums of money for un-paid bills, incurred by Defendant, concerning the project, and/or threatening the filing of liens to encumber the Sanders Creek Development. At least one lien has been filed by a sub-contractor, material-man and/or supplier, encumbering and/or clouding the title to the Sanders Creek Development. All of these lien documents concern un-paid bills that Defendants represented had been and/or would be paid and satisfied and/or unpaid bills for materials and/or supplies purchased by Defendants and charged to Plaintiffs for unrelated projects that Defendants were involved in.

30.    On information, knowledge and/or belief, Defendants are owed vast sums of money from non-party Wal-Mart, and/or others for monies owed Defendants for projects Defendants performed work on in Stone Mountain, Georgia and elsewhere.

## COMPLAINT

## COUNT ONE
## BREACH OF CONTRACT

31.    Plaintiffs adopt each and every allegation contained in paragraphs 1-30 above as if the same were set forth fully herein.

32.    Defendants and Plaintiffs entered into a written and/or verbal contract(s), together with modifications thereto, concerning and/or involving Defendants' construction/development; abandonment; failure to pay sub-contractors, material-men and for supplies, and other matters regarding substantial improvements necessary for the development, including but not limited to, the necessary improvements to obtain appropriate governmental permitting of Sanders Creek.

33.    Defendants breached the terms and conditions of said contract(s) as set forth herein.

34.    As a direct result of the Defendants' breach, Plaintiffs were caused to:

(1)    Lose substantial sums of money.

WHEREFORE, Plaintiffs demand judgment against the Defendants in an amount as determined by a trial jury including, interest and the cost of this action.

## COUNT TWO
## FRAUDULENT MISREPRESENTATION

35.    Plaintiff adopts each and every allegation contained in paragraphs 1-34 above as if the same were set forth fully herein.

36.    This action is brought pursuant to Sections 6-5-100 and 6-5-101 of the Code of Alabama (1975).

37.    Defendants' representations as set forth in paragraphs 4,8,9,13,15,18,19,20,21,22,24, and 25, and/or the applicable provision thereof, and as otherwise set forth herein, were false and Defendants knew they were false, or without knowledge of the true facts, recklessly misrepresented the facts, or said representations were false and were made by mistake, but with the intention that Plaintiffs should rely on them.

38.    Plaintiffs believed said representations and relied on them to their substantial detriment.

39.    As a direct result of the Defendants' fraudulent misrepresentations, Plaintiffs were caused to:

(1)    Lose substantial sums of money;

(2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)    Suffer serious damages.

40.    Due to the willful and intentional, or gross and reckless nature of the Defendants' conduct, Plaintiffs claims punitive damages of the Defendants.

WHEREFORE, Plaintiffs demand judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT THREE
## NEGLIGENCE

41.     Plaintiffs adopt each and every allegation contained in paragraphs 1-40 above as if the same were set forth fully herein.

42.     The Defendants negligently: handled and/or performed on the project; failed to pay workers, sub-contractors, material-men and suppliers; administered, accounted for, applied, credited and/or failed to credit payments received from Plaintiffs; represented the full payment of sub-contractors, material-men and suppliers; represented, billed and collected substantial monies for materials, supplies, and/or work performed on unrelated projects; executed and/or presented Partial Waiver and Release of Lien documents; represented that sub-contractors, material-men and suppliers would be and/or had been paid in full; represented that final lien releases had been or would be obtained from sub-contractors, material-men and suppliers; represented the amount of un-paid bills on the project; made numerous and repetitive misrepresentations; and failed to obtain and/or provide the applicable governmental permits for the project.

43.     As a direct result of the Defendants' negligence, Plaintiffs were caused to:

(1)     Lose substantial sums of money;

(2)     Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)     Suffer serious damages.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including interest and the cost of this action.

## COUNT FOUR
## WANTONNESS

44.    Plaintiff adopts each and every allegation contained in paragraphs 1-43 above as if the same were set forth fully herein.

45.    The Defendants wantonly: handled and/or performed on the project; failed to pay workers, sub-contractors, material-men and suppliers; administered, accounted for, applied, credited and/or failed to credit payments received from Plaintiffs; represented the full payment of sub-contractors, material-men and suppliers; represented, billed and collected substantial monies for materials, supplies, and/or work performed on unrelated projects; executed and/or presented Partial Waiver and Release of Lien documents; represented that final lien releases had been or would be obtained from sub-contractors, material-men and suppliers; represented the amount of un-paid bills on the project; made numerous and repetitive misrepresentations; and failed to obtain and/or provide the applicable governmental permits for the project.

46.    As a direct result of the Defendants' wantonness, Plaintiff was caused to:

(1)    Lose substantial sums of money;

(2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)    Suffer serious damages.

47.    Due to the willful and intentional or gross and reckless nature of the Defendants' wantonness, Plaintiffs claim punitive damages of the Defendants.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT FIVE
## DECEIT & FRAUDULENT DECEIT

48.    Plaintiff adopts each and every allegation contained in paragraphs 1-47 above as if the same were set forth fully herein.

49.    This action is brought pursuant to Sections 6-5-100, 6-5-103 and 6-5-104 of the Code of Alabama (1975).

50.    Defendants knew that Defendants failed to:  properly handle and/or perform on the project; pay workers, sub-contractors, material-men and suppliers; properly administer, account for, apply and/or credit payments received from Plaintiffs including but not limited to, billing and collecting substantial monies for materials, supplies and/or work performed on unrelated projects; properly represent the failure to pay Defendants' sub-contractors, material-men and suppliers; properly execute and/or present Partial Waiver and Release of Lien documents; properly and accurately represent that final lien releases had been or would be obtained from sub-contractors, material-men and suppliers; properly and accurately represent the amount of un-paid bills on the project, recklessly and/or fraudulently made numerous and repetitive misrepresentations, and failed to obtain and/or provide the applicable governmental permits for the project.

51.    Defendants, by failing to inform Plaintiffs of the facts and matters set forth in paragraph 50 above and/or, misrepresenting said matters and facts, did, willfully misrepresent and/or conceal material facts to/from Plaintiffs in such a manner as to deceive and mislead Plaintiffs.

52.    Plaintiffs believed said representations and relied on them to Plaintiffs substantial detriment.

53.    As a direct result of the Defendants' fraudulent deceit, Plaintiffs were caused to:

    (1)    Lose substantial sums of money;

    (2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

    (3)    Suffer serious damages.

54.    Due to the willful and intentional, or gross and reckless nature of the Defendants' fraudulent deceit, Plaintiffs claim punitive damages of the Defendants.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

**COUNT SIX**
**SLANDER OF TITLE**

55.    Plaintiffs adopt each and every allegation contained in paragraphs 1-54 above as if the same were set forth fully herein.

56.    At least one lien has been filed in the Probate Court of Lee County, Alabama by a sub-contractor, material-men and/or supplier against the Sanders Creek Subdivision property. (A true and correct copy of said Lien is labeled Exhibit "E", attached hereto and incorporated herein by reference).

57.    Numerous sub-contractors, material-men and/or suppliers have threatened the filing of liens for work, labor, materials and/or supplies furnished for the project and previously represented to have been paid by Defendants with money received from

Plaintiffs. On information, knowledge and belief, these sub-contractors, material-men and/or suppliers will file liens against the Sanders Creek Project in the near future.

58.    Defendants, through fraud, negligence, wantonness, breach of contract, deceit, theft and other wrongful actions have caused, lien(s) to be filed and/or threatened to be filed and/or failed to prevent liens from being filed against the Sanders Creek Subdivision property and have slandered and/or caused the title of said property to be wrongfully encumbered.

59.    As a direct result of the Defendants' slander of title, Plaintiffs were caused to:

(1)    Lose substantial sums of money;

(2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)    Suffer serious damages.

60.    Due to the willful and intentional or gross and reckless nature of the Defendants' conduct, Plaintiffs claim punitive damages of the Defendants.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT SEVEN
## THEFT

61.    Plaintiffs adopt each and every allegation contained in paragraphs 1-60 above as if the same were set forth fully herein.

62.    Defendants wrongfully, deceitfully, and in violation of the Laws of the State of Alabama misappropriated, converted, and deprived the lawful owners thereof, namely; the Plaintiffs, of the use and benefit of a substantial amount of money.

63.    As a direct result of the Defendants' theft and conversion, Plaintiffs were caused to:

(1)    Lose substantial sums of money;

(2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)    Suffer serious damages.

64.    Due to the willful and intentional or gross and reckless nature of the Defendants' theft and conversion, Plaintiffs claim punitive damages of the Defendants.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT EIGHT
## VERIFIED COMPLIAINT FOR TEMPORARY RESTRAINING ORDER; FOR WRIT OF ATTATCHMENT AND FOR A PRELIMINARY AND/OR PERMANENT INJUNCTION

65.    Plaintiffs adopt each and every allegation contained in paragraphs 1-64 above as if the same were set forth fully herein.

66.    In or about January, 2005, and/or December, 2004, Defendants, sold, transferred and/or assigned a valuable piece of equipment for valuable consideration. This sell, transfer and/or assignment was done, despite Defendants' agreement and representations that the proceeds from the sale, transfer and/or assignment would be applied to and/or used to satisfy Defendants' indebtedness to Russo Corporation, Hertz,

Best Rentals, and/or other persons, firms, associations and/or legal entities, for labor, materials and/or supplies furnished for the project, and Defendants' numerous representations and warranties that all of Defendants' sub-contractors, material-men and/or suppliers had been paid in full.

67.    In or about January, 2005, and/or December, 2004, Defendants, sold, transferred and/or assigned that certain tract of real property located at 221 Cook Street, Auburn, Alabama for valuable consideration. This sell, transfer and/or assignment was done, despite Defendants' agreement and representations that the proceeds from the sale, transfer and/or assignment, less $50,000.00 would be applied to and/or used to satisfy Defendants' indebtedness to Russo Corporation, Hertz, Best Rental, and/or other persons, firms, associations and/or legal entities, for labor, materials and/or supplies furnished for the project, and Defendants' numerous representations and warranties that all of Defendants' sub-contractors, material-men and/or suppliers had been paid in full.

68.    On information knowledge and/or belief, Defendants have transferred, sold, assigned and/or absconded with valuable assets belonging to Defendants. These various transfers and/or assignments have been done, despite Defendants' agreement and representations that the proceeds from the liquidating of all company assets would be used to pay the outstanding payables for the project as more specifically set forth above.

69.    Defendants have not paid and/or satisfied all lien-able interest concerning the project and/or paid and satisfied all sub-contractors, material-men and/or suppliers, including but not limited to, Hertz, Best Rental and Russo Corporation, despite Defendants' representations and warranties that all sub-contractors, material-men and/or suppliers had been paid and/or would be paid in full.

70.    On information, knowledge and/or belief, Defendants are owed vast sums

of money from non-party Wal-Mart, and/or others for monies owed Defendants for

projects Defendants performed work on in Stone Mountain, Georgia and elsewhere.

### PRAYER FOR RELIEF

71.    Plaintiffs adopt each and every allegation contained in paragraphs 1-70

above as if the same were set forth fully herein.

72.    Plaintiffs, individually and as a corporate entity, and by and through their

attorney, Davis B. Whittelsey move this Honorable Court to enter a temporary restraining

order; writ of attachment, and a preliminary or permanent injunction pursuant to Rules 64

and 65, A.R.Civ.P., and pursuant to the Alabama Fraudulent Transfer Act against

Defendants, restraining and enjoining Defendants from disposing of, transferring and/or

assigning **any and all assets** of said Defendants, including but not limited to, any monies

on deposit in any bank accounts maintained in any of the names of the Defendants, any

accounts receivable, contract rights, receivables, securities, stock certificates, deeds,

titles, certificate of origins, certificates of deposit, real estate, intangibles and/or personal

property, and attaching any and all contract rights, assignables, and/or monies due

Defendants, and/or any of Defendants' successors, affiliates, assigns, subsidiaries, sub-

contractors, and/or predecessors from Wal-Mart, and/or any of Wal-Mart's successors,

affiliates, assigns, subsidiaries, sub-contractors, employees, predecessors and/or related

corporate entities, for any and all money owed, believed to be owed and/or claimed to be

owed to Defendants pursuant to any work, labor and/or materials supplied by and/or

furnished by Defendants, for any reason whatsoever, including but not limited to, any and

all contracting, building and/or related services performed and/or provided by

Defendants, and <u>attaching</u> any and all contract rights, assignables, and/or monies due Defendants, and/or any of Defendants' successors, affiliates, assigns, subsidiaries, sub-contractors, and/or predecessors from any person, firm, association, partnership, limited partnership, corporation, professional corporation, limited liability company, state, county, municipality, and/or any legal entity whatsoever, for any and all money owed, believed to be owed and/or claimed to be owed to Defendants pursuant to any work, labor and/or materials supplied by and/or furnished by Defendants, for any reason whatsoever, including but not limited to, any and all contracting, building and/or related services performed and/or provided by Defendants.  In the alternative, Plaintiffs pray that the court will appoint a receiver to take charge of the assets of said Defendants, and after entering a temporary restraining order, offer providing the Defendants an opportunity to be heard on this Complaint for a temporary restraining order, writ of attachment and preliminary and/or permanent injunction, enter a order requiring said Defendants to post a good and sufficient bond and/or security for the Plaintiffs' damages as set forth in Plaintiffs' Complaint for damages.  Plaintiffs further pray that this Honorable Court will grant unto the Plaintiffs any other relief as the Court may deem appropriate in this cause. As grounds therefore, adopting all allegations and/or averments set forth herein, Plaintiffs show unto this Honorable Court as follows:

      A.    That notice has been given to the Defendants of the pendency of this Complaint for a temporary restraining order, writ of attachment and for a preliminary or permanent injunction.

      B.    That immediate and irreparable injury, loss or damage will result to the Plaintiffs if this Honorable Court declines to enter a temporary restraining order, writ of

attachment and preliminary and/or permanent injunction. Said irreparable injury, loss or damage is set forth in greater detail in the Affidavit of Sheldon Whittelsey, attached hereto as Exhibit "F". (Said affidavit of C. Sheldon Whittelsey, IV, individually and as Secretary of Whittelsey Properties, Inc., is attached hereto as "Exhibit "F" and is given in support of Plaintiffs application for writ of attachment.)

C.    That pursuant to the <u>Alabama Fraudulent Transfer Act</u>, Section 8-9A-7 of The Code of Alabama (1975), et als., the Plaintiffs seek an injunction against further disposition by the Defendants or a transferee of the Defendants, or both, of the assets of the Defendants.

D.    That pursuant to Article 2 Title 6 of The Code of Alabama (1975), et als., that the Plaintiffs seek a writ of attachment in the sum of $150,000.00 being the Plaintiffs liquidated damages to date, excluding damages for mental anguish, punitive damages, future damages and other damages recoverable by law. (See Exhibit "F")

WHEREFORE, Plaintiffs pray that this Honorable Court will, after Plaintiffs post a bond with sureties as required by this Honorable Court, enter a temporary restraining order; writ of attachment, and a preliminary or permanent injunction pursuant to Rules 64 and 65, A.R.Civ.P., and pursuant to the <u>Alabama Fraudulent Transfer Act</u> against Defendants restraining and enjoining Defendants from disposing of, transferring and/or assigning **any and all assets** of said Defendants, including but not limited to, any monies on deposit in any bank accounts maintained in any of the names of the Defendants, any accounts receivable, any contract rights. any receivables, securities, stock certificates, deeds, titles, certificate of origins, certificates of deposit, real estate, intangibles and/or personal property, and attaching any and all contract rights, assignables, and/or monies

due Defendants, and/or any of Defendants' successors, affiliates, assigns, subsidiaries, sub-contractors, and/or predecessors from Wal-Mart, and/or any of Wal-Mart's successors, affiliates, assigns, subsidiaries, sub-contractors, employees, predecessors and/or related corporate entities, for any and all money owed, believed to be owed and/or claimed by Defendants pursuant to any work, labor and/or materials supplied by and/or furnished by Defendants, for any reason whatsoever, including but not limited to any and all contracting, building and/or related services performed and/or provided by Defendants; and attaching any and all contract rights, assignables, and/or monies due Defendants, and/or any of Defendants' successors, affiliates, assigns, subsidiaries, sub-contractors, and/or predecessors from any person, firm, association, partnership, limited partnership, corporation, professional corporation, limited liability company, state, county, municipality, and/or any legal entity whatsoever, for any and all money owed, believed to be owed and/or claimed by Defendants pursuant to any work, labor and/or materials supplied by and/or furnished by Defendants, for any reason whatsoever, including but not limited to any and all contracting, building and/or related services performed and/or provided by Defendants.  In the alternative, Plaintiffs pray that the court will appoint a receiver to take charge of the assets of said Defendants, and, after entering a temporary restraining order having provided the Defendants an opportunity to be heard on this Complaint for a temporary restraining order, writ of attachment and preliminary and/or permanent injunction, enter a order requiring said Defendants to post a good and sufficient bond and/or security for the Plaintiffs' damages as set forth in this Complaint for damages, Plaintiffs further pray that this Honorable Court will, at the

appropriate time, enter a preliminary and/or permanent injunction and further grant unto

the Plaintiffs any other relief as the Court may deem appropriate in this cause.

Respectfully submitted this the 23rd day of February, 2005.

WHITTELSEY, WHITTELSEY & POOLE, P.C.

BY: DAVIS B. WHITTELSEY (WHI067)
Attorneys for Plaintiffs
Post Office Box 106
Opelika, Alabama 36803-0106
(334) 745-7766


**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DAVIS B. WHITTELSEY


**VERIFICATION**

C. SHELDON WHITTELSEY, IV
individually and as Secretary of Whittelsey
Properties, Inc.

STATE OF ALABAMA  )
                  :
COUNTY OF LEE     )

I, the undersigned authority, a Notary Public in and for said State at Large, hereby certify that C. Sheldon Whittelsey, IV, individually and as Secretary of Whittelsey Properties, Inc., whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this day that, being informed of the contents, that each and every allegation contained within said document is true and correct to the best of his information knowledge and belief and that he executed the same voluntarily on the day the same bears date.

GIVEN under my hand and official seal this the 23rd day of February, 2005.

NOTARY PUBLIC
My Commission Expires October 23, 2006.

26

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| WHITTELSEY PROPERTIES, INC., et al., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION: CV-05-137 |
| MANIFOLD CONSTRUCTION, LLC, et al., | § § § | |
| Defendants. | § § | |

## MOTION FOR LIMITED INTERVENTION
## BY OHIO CASUALTY INSURANCE COMPANY

Comes now Ohio Casualty Insurance Company ("Ohio Casualty") and moves the Court to allow it to intervene in this case for the limited purpose of procuring the Court to submit interrogatories to the jury relevant to the issue of its duties under two liability insurance policies issued to Defendant Manifold Construction, LLC ("Manifold"). As grounds therefore the Movant states as follows:

1.     According to the Complaint, the Plaintiffs are seeking several different elements of damage arising out of a construction project.

2.     Manifold was the named insured under policies of liability insurance ("the Policies") issued by the Movant for the policy periods June 7, 2003, to June 7, 2004, and June 7, 2004, to June 7, 2005, which, subject to various exclusions, cover only bodily injury and property damage caused by an occurrence as those terms are defined in the Policies.

3.    The Policies contain several exclusions, including exclusions which exclude coverage for expected or intended injury, property damage because of incorrectly performed work, property damage to work, and property damage arising out of defective, deficient, inadequate work or delay or failure to perform a contract or agreement.

4.    If the jury in this case holds the Defendants liable for expected or intended injury, or damage subject to the aforementioned exclusions, then the Movant would have no duty to indemnify the Defendants or its duty to indemnify would be limited.

5.    The Movant is currently providing a defense to the Defendants with a reservation of rights to deny coverage, and the Defendants' defense counsel cannot request the Court to submit interrogatories to the jury relating to insurance coverage issues.

6.    The jury's post-verdict answers to interrogatories regarding the basis of any verdict against the Defendants, if any, are necessary to determine the Movant's obligations under the Policies.

HUBBARD, SMITH, McILWAIN
BRAKEFIELD & BROWDER, P. C.

_____

Christopher Lyle McIlwain, MCI002
Attorneys for Ohio Casualty Insurance
Company
Post Office Box 2427
Tuscaloosa, AL 35403
Telephone: (205) 345-6789

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading upon the following counsel, by depositing same in the United States Mail with adequate postage prepaid thereon and properly addressed to them.

Davis B. Whittelsey
Whittelsey, Whittelsey & Poole, P.C.
P. O. Box 106
Opelika, AL 36803-0106

James Don McLaughlin
Davis & McLaughlin
324 E. Magnolia Avenue
Auburn, AL 36830

Bradley J. Smith
Clark, Dolan, Morse, Oncale & Hair, P.C.
800 Shades Creek Parkway, Suite 850
Birmingham, AL 35209

This the 13th day of March, 2006.

_____
Of Counsel

**Verdict**

_X_     We, the jury, find in favor of the plaintiffs and against the defendant, Manifold

Construction, LLC, on plaintiffs' wantonness claim.  Or…

___     We, the jury, find in favor of the defendant, Manifold Construction, LLC, on plaintiffs'

wantonness claim.

(Mark an "X" in the appropriate blank above.)

_Morris Oliver_
Foreperson

We the jury assess plaintiffs' compensatory damages at $ _275,000_ .

_Morris Oliver_
Foreperson

We, the jury, find the plaintiffs have proven their claim for punitive damages against the

following defendants:

_X_     Manifold Construction, LLC, and assess punitive damages at $ ~~2,500,000~~    $ 1,500,000 no

_X_     Jack Manifold, individually, and assess punitive damages at  $ _1,000,000_ .

(Mark an "X" in the appropriate blank above.)

_Morris Oliver_
Foreperson

We, the jury, find the plaintiffs have not proven their claim for punitive damages against the

following defendants:

___     Manifold Construction, LLC

___     Jack Manifold, individually

(Mark an "X" in the appropriate blank above.)

_____
Foreperson

11/2/06 Judgment entered by
the Court
_Bradlin, Judge_

FILED

NOV 0 2 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK