IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06-cv-977-MEF |
| | ) | |
| MANIFOLD CONSTRUCTION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

COME NOW the Defendants, Whittelsey Properties, Inc. (hereinafter referred to as "Whittelsey Properties"), C.S. Whittelsey, III (hereinafter referred to as "Whit"), and C.S. Whittelsey, IV (hereinafter referred to as "Sheldon"), and file this brief in support of their motion to dismiss Plaintiff's complaint for declaratory judgment, stating as follows:

## INTRODUCTION

On the 31st day of October, 2006, Plaintiff, Ohio Casualty Insurance Company (hereinafter "Ohio Casualty") filed its complaint for declaratory judgment to determine the rights and obligations of Ohio Casualty under a policy of insurance it issued to Manifold Construction, LLC (hereinafter referred to as "Manifold") and Jack Manifold (referred to herein as "Jack"), the co-defendants in the present case. On the 4th day of December, 2006, Defendants, by and through their attorneys, accepted service of Ohio Casualty's complaint.

## EXHIBITS

The following exhibits are referenced in further support of Defendants' motion to dismiss. The exhibits are attached hereto with the exception of Exhibit D that has not yet been completed. Exhibit D will be filed with this Honorable Court when received.

Exhibit A:      Complaint in Civil Action No. CV-05-137 filed in the Circuit
                Court of Lee County, Alabama.

Exhibit B:      Ohio Casualty's Motion for Limited Intervention in Civil Action
                No. CV-05-137 filed in the Circuit Court of Lee County, Alabama.

Exhibit C:      Verdict Form in Civil Action No. CV-05-137 filed in the Circuit
                Court of Lee County, Alabama.

Exhibit D:      Trial Transcript from Civil Action No. CV-05-137 in the Circuit
                Court of Lee County, Alabama.

### STATEMENT OF FACTS

Manifold was engaged in the business of general contractor in site preparation work. Manifold was located in Auburn, Lee County, Alabama. Jack and his wife Melissa Manifold were the owners of Manifold. Jack and Melissa Manifold are residents of Auburn, Lee County, Alabama. On or about the 7th day of June, 2004, Ohio Casualty issued policies of insurance to Manifold. Said policies of insurance provided liability insurance coverage to Manifold and Jack in the operation of Manifold.

In or about May, 2004, Manifold entered into a contract with Whittelsey Properties and Sheldon for site preparation work on Sanders Creek Subdivision, Phase II, located in Opelika, Lee County, Alabama. (Exhibit A)

On or about the 24th day of February, 2005, Whittelsey Properties, Sheldon and Whit filed suit against Manifold and Jack in the Circuit Court of Lee County, Alabama, in civil action number CV-05-137 (hereinafter referred to as "Lee County Case") relating to the site preparation work on Sanders Creek Subdivision, Phase II. (Exhibit A) Melissa Manifold was initially a

named defendant, but she was later dismissed from the case.  The Lee County Case included claims for innocent fraud, reckless fraud, negligence and wantonness.  (Exhibit A).

On or about the 13th day of March, 2006, Ohio Casualty filed its motion for limited intervention in the Lee County Case, seeking to intervene for "the limited purpose of procuring the [trial] Court to submit interrogatories to the jury relevant to the issue of its duties under two liability insurance policies issued to [Manifold and Jack]."  (Exhibit B).  The trial court in the Lee County Case reserved ruling on Ohio Casualty's motion.

On the 30th day of October, 2006, Whittelsey Properties, Sheldon and Whit proceeded to trial against Manifold and Jack in the Lee County Case.  On the 1st day of November, 2006, the trial court granted judgments as a matter of law in favor of Whittelsey Properties and Sheldon on their claims of innocent fraud, reckless fraud and negligence.  The trial court further granted a motion for judgment as a matter of law as to Whit's claims in favor of Manifold and Jack.  When the case went to the jury, the jury was given a verdict form and instructed to (1) decide whether it found Manifold and/or Jack guilty of wantonness; (2) assess the compensatory damages of Whittelsey Properties and Sheldon, as the trial court had already found liability for innocent fraud, reckless fraud and negligence; and (3) if they so chose to assess punitive damages against Manifold and/or Jack.  On the 2nd day of November, 2006, the jury returned a verdict against Manifold and Jack which (1) found both Manifold and Jack guilty of wantonness; (2) assessed compensatory damages of $275,000.00; and (3) assessed punitive damages against Manifold in the amount of $1,500,000.00 and Jack in the amount of $1,000,000.00.  (Exhibit C).

After returning its verdict, the trial court instructed the jury to return to the jury deliberation room while the court took up some further matters.  After the jury was excused to return to the jury deliberation room, the trial court asked counsel for Ohio Casualty, Christopher

Lyle McIlwain (hereinafter referred to as "McIlwain"), counsel in the case at bar, if he would like to be heard on Ohio Casualty's motion. (Exhibit D, p. __). McIlwain announced on the record that he wished to withdraw Ohio Casualty's motion for limited intervention. (Exhibit D, p. __).

**STANDARD OF REVIEW**

"The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.' It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." <u>Ameritas Variable Life Ins. Co. v. Roach</u>, 411 F.3d 1328, 1330 (11thCir. 2005) (citations omitted). The dismissal of a declaratory judgment action is reviewed for abuse of discretion. <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 289-90 (1995).

**ARGUMENT**

**I.    Plaintiff Waived Any Right to Pursue a Declaratory Judgment.**

The issues presented by Ohio Casualty in its complaint for declaratory judgment could have been resolved at the end of the trial in the Lee County Case; however, while the jury was waiting in the jury deliberation room, Ohio Casualty chose to withdraw its motion for limited intervention. By withdrawing its motion for limited intervention, Ohio Casualty waived any right it may have had to pursue a declaratory judgment as to the same issues raised in its motion for limited intervention.

"[W]aiver is defined as the intentional relinquishment of a right, the intention is ascertained from the external acts manifesting the waiver." <u>Givens v. General Motors Acceptance Corp.</u>, 56 Ala.App. 561, 564, 324 So.2d 277, 279 (1975). "[T]here can be no waiver without knowledge." <u>Taylor v. Golden Rule Ins. Co.</u>, 544 So.2d 932, 936 (Ala. 1989), citing

Aetna Insurance Co. v. Spring Lake, Inc., 350 So.2d 397 (Ala. 1977).  At the time Ohio Casualty

withdrew its motion for limited intervention, it was represented by counsel, McIlwain.  McIlwain

knew exactly what he was waiving.  See Christopher L. McIlwain, "Clear as Mud: An Insurer's

Rights and Duties Where Coverage Under a Liability Policy Is Questionable," 27 Cumb.L.Rev.

31, 51-53 (1996).  Ohio Casualty chose to avoid the most cost effective avenue to resolve the

issues as raised in its motion for limited intervention and in its complaint for declaratory

judgment.  Ohio Casualty waived any right it may have had to pursue the present litigation;

therefore, its complaint for declaratory judgment is due to be dismissed.

## II.     Scrutiny of the Factors Set Forth in **Ameritas** Requires Dismissal of Plaintiff's Complaint.

In Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328 (11thCir. 2005), the Court

adopted several factors to be considered by the district court in determining whether to abstain

from exercising jurisdiction over state-law claims in the face of parallel litigation in the state

courts.  The factors for consideration to aid district courts in balancing state and federal interests

include the following:

"(1)     the strength of the state's interest in having the issues raised in the federal

declaratory action decided in the state courts;

"(2)     whether the judgment in the federal declaratory action would settle the

controversy;

"(3)     whether the federal declaratory action would serve a useful purpose in clarifying

the legal relations at issue;

"(4)     whether the declaratory remedy is being used merely for the purpose of

'procedural fencing'-that is, to provide an arena for a race for *res judicata* or to achieve a

federal hearing in a case otherwise not removable;

"(5)    whether the use of a declaratory action would increase the friction between our

federal and state courts and improperly encroach on state jurisdiction;

"(6)    whether there is an alternative remedy that is better or more effective;

"(7)    whether the underlying factual issues are important to an informed resolution of

the case;

"(8)    whether the state trial court is in a better position to evaluate those factual issues

than is the federal court; and

"(9)    whether there is a close nexus between the underlying factual and legal issues and

state law and/or public policy, or whether federal common or statutory law dictates a

resolution of the declaratory judgment action."

Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331 (11thCir. 2005).  This list is not

exhaustive and not one factor is controlling.  Id.

       Under scrutiny of the factors listed above, it is clear the present case should be dismissed.

Ohio Casualty's present action mirrors its motion for limited intervention in the Lee County

Case.  Ohio Casualty's present action was filed while its motion for limited intervention in the

Lee County Case was still pending.  The issues presented by Ohio Casualty could have been

resolved at the end of the trial in the Lee County Case; however, while the jury was waiting in

the jury deliberation room, Ohio Casualty chose to withdraw its motion for limited intervention.

Furthermore, a declaratory judgment action is not necessary in federal court as the issues raised

in Ohio Casualty's complaint could be addressed in state court under Alabama's Direct Action

Statute.  See Ala.Code 1975 § 27-23-2.  It seems Ohio Casualty attempted to avoid further state

court proceedings by racing to federal court.  Ohio Casualty's complaint for declaratory

judgment is due to be dismissed.

**III.     Ala.Code 1975 § 6-5-440 Requires the Dismissal of Plaintiff's Complaint.**

Simultaneous actions for the same cause against the same party cannot be maintained in

Alabama.  Ala.Code 1975 § 6-5-440.  The term "court of this state" as used in the statute

includes this Court.  Terrell v. City of Bessemer, 406 So.2d 337 (Ala. 1981).  At the time Ohio

Casualty filed its complaint in the case at bar, Plaintiff still maintained its motion to intervene in

the Lee County Case.  Ala.Code 1975 § 6-5-440 requires dismissal of Ohio Casualty's

complaint.

WHEREFORE, THE PREMISES CONSIDERED, Defendants pray this Honorable Court

will dismiss Plaintiff's complaint for declaratory judgment.

Respectfully submitted this the 4th day of December, 2006.

WHITTELSEY, WHITTELSEY & POOLE, P.C.


_____/s/ Davis B. Whittelsey_____
BY:    DAVIS B. WHITTELSEY (WHI067)
          E-mail:dwhittelsey@wwp-law.com


_____/s/ Robert G. Poole_____
BY:    ROBERT G. POOLE (POO014)
          E-mail:bpoole@wwp-law.com
          Attorneys for Defendants
          Post Office Box 106
          Opelika, Alabama 36803-0106
          Tel.:    (334) 745-7766
          Fax:    (334) 745-7666

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document on the parties listed below electronically or by placing a copy of the same in the United States mail, postage prepaid, to their correct address on this the 4th day of December, 2006.

Christopher Lyle McIlwain
HUBBARD, SMITH, MCILWAIN, BAKERFILED & BROWDER, P.C.
Post Office Box 2427
Tuscaloosa, Alabama 35403

Bradley J. Smith
CLARK, DOLAN, MORSE, ONCALE & HAIR, P.C.
800 Shades Creek Parkway
Suite 850
Birmingham, Alabama 35209

James D. McLaughlin
DAVIS & MCLAUGHLIN
324 East Magnolia Avenue
Auburn, Alabama 36830

/s/ Robert G. Poole
DAVIS B. WHITTELSEY
ROBERT G. POOLE

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

WHITTELSEY PROPERTIES, INC.,  *
an Alabama corporation;
C. SHELDON WHITTELSEY, III, an  *
individual Alabama resident, and
C. SHELDON WHITTELSEY, IV,   *
an individual Alabama resident,

   Plaintiffs,       *

             *  CASE NO.: CV-05-137

v.

MANIFOLD CONSTRUCTION, LLC,  *
an Alabama Limited Liability
Company; JACK MANIFOLD, an   *
individual Alabama resident;
MELISSA MANIFOLD, an individual  *
Alabama resident; A, B, and C being the
Persons, Firms, Associations, Corporations, *
Partnerships or Entities responsible for the
acts and/or omissions complained of in this
complaint, including but not limited to the *
Persons, Firms, Associations, Corporations,
Partnerships or Entities that negligently,
wantonly and/or fraudulently performed *
and/or failed to perform the work and/or
provide the materials involved in this cause *
of action and/or who negligently, wantonly
and/or fraudulently made the representations,*
misrepresentations and/or committed the
wrongs and/or acts involved herein all of which
in part, are made the subject matter of this *
cause of action, all of whose true and correct
legal names are otherwise unknown to the *
Plaintiffs at this time, but will be added by
amendment when ascertained,    *

   Defendants.       *

FILED

FEB 2 4 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Blumberg No. 5208

EXHIBIT
"A"

<u>VERIFIED COMPLAINT</u>

<u>PARTIES</u>

1.    Plaintiff, Whittelsey Properties, Inc. (hereinafter sometimes referred to as "Whittelsey"), is an Alabama corporation qualified to do business and doing business in Lee County, Alabama.

2.    Plaintiff, C. Sheldon Whittelsey, III, (hereinafter sometimes referred to as "Whit"), is an individual Alabama resident, residing at all times material hereto in Lee County, Alabama.

3.    Plaintiff, C. Sheldon Whittelsey, IV, (hereinafter sometimes referred to as "Sheldon"), is an individual Alabama resident, residing at all times material hereto in Lee County, Alabama. Whittelsey, Sheldon and Whit will hereinafter, sometimes collectively be referred to as, "Plaintiffs".

4.    Defendant, Manifold Construction, LLC, (hereinafter sometimes referred to as "Manifold"), is an Alabama Limited Liability Company, qualified to do business and doing business in Lee County, Alabama.

5.    Defendant, Jack Manifold, (hereinafter sometimes referred to as "Jack"), is an individual Alabama resident, residing at all times material hereto in Lee County, Alabama.

6.    Defendant, Melissa Manifold, (hereinafter sometimes referred to as "Melissa"), is an individual Alabama resident, residing at all times material hereto in Lee County, Alabama.

7.    Defendants, Jack and Melissa, upon information, knowledge and belief, are husband and wife, and are the sole members of Manifold. Manifold, Jack and Melissa will hereinafter, sometimes collectively be referred to as, "Defendants".

2

8.    Fictitious party Defendants, A, B and C, are the persons, firms, associations, corporations, partnerships and/or legal entities more particularly described in the heading of this Complaint, all of whose true and correct legal identities are otherwise unknown to the Plaintiffs at this time, but who will be added by amendment when ascertained.

## STATEMENT OF THE FACTS

1.    On or about the 28th day of May, 2004, Sheldon, individually and on behalf of Whittelsey, executed an Acceptance of Proposal/Bid (hereinafter sometimes referred to as, the "agreement") with Jack, individually and/or on behalf of Manifold, in the amount of Six Hundred Forty Six Thousand Seven Hundred Twelve and No/100ths dollars ($646,712.00). Numerous additional verbal agreements/representations were made by Jack, Melissa and/or Manifold, regarding the agreement, and other matters, all of which concerned the Plaintiffs and Defendants. These additional verbal agreements/representations will be described in greater detail in subsequent paragraphs contained within this Statement of the Facts.

2.    The agreement, and other representations, concerned and/or involved Defendant's construction/development; abandonment; failure to pay sub-contractors, material-men and for supplies, and other matters regarding substantial improvements necessary for the development, including but not limited to, the necessary improvements to obtain appropriate governmental permitting of Sanders Creek Subdivision, Phase II (hereinafter sometimes referred to as, "Sanders Creek"). Said construction/development will hereinafter sometimes be referred to as the "project".

3.      Sanders Creek is a residential subdivision development located in the City of Opelika, Lee County, and is owned by Whittelsey.

4.      Defendants agreed and represented that Defendants would perform the work, labor, provide the materials, and timely pay all costs associated with Defendants construction of the project, out of the proceeds paid to Defendants by Plaintiffs. Defendants represented, on numerous occasions, that Defendant's workers, sub-contractors and material-men would be and had been paid in full, and further executed various "Partial Waiver and Release of Lien" documents prepared by Defendants. The payment of Defendants' workers, sub-contractors and material-men was, and is a primary and necessary component for the completion of Sanders Creek in order for Plaintiffs to sell residential lots in Sanders Creek.  (A true and correct copy of the agreement, proposal/bid, made a part thereof, and copies of several Partial Waiver and Release of Lien documents, executed by Defendants are attached hereto as cumulative Exhibit "A" and incorporated herein by reference).

5.      On information, knowledge and/or belief, Jack is the managing member of Manifold, and Melissa is the Secretary/Treasurer of Manifold, and/or handles the finances of Manifold, including, but not limited to, the payment of Manifold's employees, sub-contractors, material-men, the deposits, withdrawals, and day to day financial affairs.

6.      On or about the 28th day of May, 2004, Defendants began clearing the Sanders Creek property.  Once the project was underway, and during the construction of the sewer and water line installation, it was realized that rock was going to be encountered in the construction of the project.

4

7.     A short time after Defendants began the construction of the project, Defendants submitted Defendants' first change request to Sheldon and/or Whittelsey concerning the additional costs of removal of the rock. Said change request was paid in full by Plaintiffs.

8.     As the project progressed, Defendants submitted numerous change requests to Sheldon and/or Whittelsey concerning additional costs to complete the project. Some of said change requests were additions that were add-ons to the original engineering drawings required by the City of Opelika and/or concerned a variety of different changes, additions and/or deletions that were added to the project. Some change requests included additional curb and gutter costs, additional sewer and water line costs, additional drainage control costs, and costs for materials, work and/or supplies billed to Plaintiffs but incurred and/or used by Defendants on unrelated projects. Said costs for materials, work and/or supplies billed to Plaintiffs but incurred and/or used by Defendants on unrelated projects were hidden from Plaintiffs.

9.     The third change request was dated the 26th day of July, 2004, and concerned the costs associated with blasting and removal of rock. Plaintiffs received said change order/pay request together with an attached invoice from Russo Corporation concerning said costs. Defendants represented and advised Plaintiffs that Defendants would pay the Russo Corporation invoice and add an additional service fee on Defendants' next pay request.

10.     All pay request submitted by Defendants to Plaintiffs were timely paid in full.

11.    In accordance with the work, labor, materials and other representations made by Defendants to Plaintiffs, Plaintiffs have paid, directly to Defendants, the approximate sum of $704,000.00. As previously stated, some of the proceeds paid to Defendants by Plaintiffs were for materials purchased by Defendants, represented to be needed and used on the project, charged to Plaintiffs, but used on other projects Defendants were involved in.

12.    Upon presentation of the first invoice by Defendants to Plaintiffs, Defendants requested immediate payment of the invoice and subsequently made the same request for all other invoices. Defendants, on each occasion, told Plaintiffs that Defendants were experiencing cash flow problems.

13.    Contemporaneously with Plaintiffs' payments to Defendants of most of the invoices, Defendants executed various Partial Waiver and Release of Lien documents, representing and warranting, in part, that all laborers, materials and supplies furnished by others to Defendants in connection with construction of the project had been fully paid. (See Exhibit "A"). Additionally, Defendants, represented to and provided Plaintiffs, at the time of, and with most, if not all, invoice submitted, a document(s), prepared by Defendants, representing and/or reflecting that all laborers, materials and supplies furnished by others to Defendants in connection with construction of the project were being timely paid.

14.    On or about the 27th day of October, 2004, Plaintiffs were submitted an invoice by Defendants totaling Fifty One Thousand Nine Hundred Thirteen and No/100ths dollars ($51,913.00).

15.    Plaintiffs paid Defendants' October 27, 2004, invoice on the 29th day of October, 2004. Upon payment of this invoice, and all other invoices, Defendants verbally represented and warranted that all sub-contractors, material-men and suppliers used by Defendants, in Defendants' construction of the project had been fully paid. However, Defendants failed to provide a Partial Waiver and Release of Lien document upon Plaintiffs' payment of the October 27, 2004 invoice.

16.    On the morning of the 30th day of November, 2004, Jack and non-party David Rouse, one of Defendants' project coordinators and/or estimators, requested a meeting with Sheldon, and pursuant thereto, met with Sheldon on said date.

17.    At the meeting described in paragraph 16 above, Defendants, Jack and Manifold, informed Plaintiffs, Sheldon and Whittelsey, that Defendants were unable to make pay role for his employees, and that Defendants were going out of business.

18.    On the request of Defendants, and based on representations made by Jack concerning Defendants' inability to pay Defendants' laborers and that Defendants would pay Defendants' material-men and suppliers, Plaintiffs, agreed to and did, pay Defendants' pay role for employees that worked on the project, for the pay period Jack represented Defendants could not pay.

19.    At the meeting referenced in paragraph 16 above, Jack, individually, and on behalf of Manifold, represented to Sheldon, individually, and on behalf of Whittelsey, in part, as follows:

1.    That due to circumstances beyond Defendants' control that Defendant was no longer in business.

2.    That all projects of Defendants had been taken over by the general contractor, owner or developer of the subject project.

3.    That Defendants no longer had employees as of Thursday, November 24, 2004.

4.    That Defendants were in the process of liquidating all company assets and would use the funds derived there from to pay the outstanding payables for the project, and would satisfy all lien-able interest concerning the project, and/or in the alternative would use funds expected to be received by Defendants from other Projects, and/or the sale of Defendants' office building, maintained in the name of Melissa, and apply the proceeds from the sale thereof, less $50,000.00, to outstanding payables for the project.

5.    Defendants specifically represented that Defendants, could and would, pay in full, Hertz's bill(s) for services/equipment provided for the project, and would provide Plaintiffs with a Final Lien/Waiver from Hertz.

6.    Defendants specifically represented that Defendants, could and would, pay in full Best Rental's bill(s) for services/equipment provided for the project, and would provide Plaintiffs with a Final Lien/Waiver from Best Rental.

7.    Defendants specifically represented that Defendants, could and would, pay Russo Corporation's bill(s) for services/equipment provided

for the project, and would provide Plaintiffs with a Final Lien/Waiver from Russo Corporation.

20.    At the meeting described in paragraph 16 above, Jack, individually, and on behalf of Manifold, represented to Sheldon, individually, and on behalf of Whittelsey, that the total amount of unpaid sub-contractors, material men and supplies used by Defendants, in Defendants' construction of the project, equaled the approximate sum of Two Hundred Thousand and No/100ths dollars ($200,000.00).

21.    Despite the representations set forth in paragraphs 19 and 20 above, Defendants, on or about the 30th day of November, 2004, by and through Jack, forwarded Plaintiffs a letter advising Plaintiffs that Defendants were no longer in business and did not have employees as of Thursday, November 24, 2004. Additionally, Defendants stated in said letter that Hertz equipment would be paid in full, that the Best Rental debt would be substantially reduced and that Defendants were working on negotiations with Russo Corporation, the blaster, on an equipment exchange to satisfy Defendants' debt to Russo Corporation. (A true and correct copy of said letter is attached hereto, labeled Exhibit "B" and incorporated herein by reference).

22.    In said letter dated the 30th day of November, 2004, Defendants further advised Plaintiffs that attached to the letter dated the 30th day of November, 2004, was a letter being sent to all outstanding vendors on the project and that said vendors would be contacting Plaintiffs for payment options. (A true and correct copy of said attachment is labeled Exhibit "C" attached hereto and incorporated herein by reference). Said letter stated, in part, as follows:

"All of our current projects have been taken over by the Owner, General Contractor or Developer.

9

We are aware that there is outstanding debt due to your company on the above referenced project. Payment of the debt will be coming directly from Whittelsey Properties, 600 Avenue A, Opelika, Alabama, 36801"

(See Exhibit "C").

23.    On or about the 1st day of December, 2004, Sheldon, individually, and on behalf of Whittelsey, met with Defendants at Defendants' place of business located in Auburn, Lee County, Alabama. At the time of the meeting set forth in paragraph 16 above and as set forth herein, the work agreed to be, and represented to be performed by Defendants on the project was substantially incomplete.

24.    In the meeting referenced in paragraph 23 above, Defendants represented to Sheldon, individually, and on behalf of Whittelsey, that the total amount of unpaid debt on the project equaled the approximate sum of Eighty Six Thousand and No/100ths dollars ($86,000.00), excluding the debts owed to non-party Russo Corporation and non-party/Best Rental.

25.    In the meeting referenced in paragraph 23 above, Defendants, including but not limited to Melissa, represented in part, as follows:

1.    That due to circumstances beyond Defendants' control that Defendant was no longer in business.

2.    That all projects of Defendants had been taken over by the general contractor, owner or developer of the subject project.

3.    That Defendants no longer had employees as of Thursday, November 24, 2004.

4.    That Defendants were in the process of liquidating all company assets and would use the funds derived there from to pay the outstanding

payables for the project, and would satisfy all lien-able interest concerning the project, and/or in the alternative would use funds expected to be received by Defendants from other Projects, and/or the sale of Defendants' office building, maintained in the name of Melissa, and apply the proceeds from the sale thereof, less $50,000.00, to outstanding payables for the project.

5.      Defendants specifically represented that Defendants, could and would, pay in full, Hertz's bill(s) for services/equipment provided for the project, and would provide Plaintiffs with a Final Lien/Waiver from Hertz.

6.      Defendants specifically represented that Defendants, could and would, pay in full Best Rental's bill(s) for services/equipment provided for the project, and would provide Plaintiffs with a Final Lien/Waiver from Best Rental.

7.      Defendants specifically represented that Defendants, could and would, pay Russo Corporation's bill(s) for services/equipment provided for the project, and would provide Plaintiffs with a Final Lien/Waiver from Russo Corporation.

26.     The representations set forth in paragraph 25 above, were made despite Defendants having previously authored the letter dated the 30th day of November, 2004, together with the attachment thereto. (See Exhibits "B" & "C").

27.     On or about the 2nd day of December, 2004, Defendants forwarded to Plaintiffs, via fax transmittal, a document entitled, "Unpaid Bills By Job" prepared by

11

Defendants, evidencing un-paid debt on the project of $302,747.85. (A true and correct copy of said document is labeled Exhibit "D", attached hereto and incorporated herein by reference).

28.    Due to the wrongful actions and/or inactions of Defendants, Plaintiffs have been forced to take over the project and to serve, in effect, as general contractor for the project. Plaintiffs have been forced to expend and become obligated to expend vast sums of money in performing; correcting; paying for and completing the project that Defendants agreed and represented they would fully perform and pay the costs thereof.

29.    Due to the wrongful actions and/or inactions of Defendants, Plaintiffs have been contacted; via phone, fax, personal visits, mail, certified mail, through attorneys and/or otherwise, concerning numerous sub-contractors, material-men and suppliers demands for payment from Plaintiffs of vast sums of money for un-paid bills, incurred by Defendants, concerning the project. Additionally, Plaintiffs have been provided with numerous Notices of Intents to file Liens and/or Notice of Lien documents by sub-contractors, material-men and suppliers demanding the payment from Plaintiffs of vast sums of money for un-paid bills, incurred by Defendant, concerning the project, and/or threatening the filing of liens to encumber the Sanders Creek Development. At least one lien has been filed by a sub-contractor, material-man and/or supplier, encumbering and/or clouding the title to the Sanders Creek Development. All of these lien documents concern un-paid bills that Defendants represented had been and/or would be paid and satisfied and/or unpaid bills for materials and/or supplies purchased by Defendants and charged to Plaintiffs for unrelated projects that Defendants were involved in.

30.    On information, knowledge and/or belief, Defendants are owed vast sums of money from non-party Wal-Mart, and/or others for monies owed Defendants for projects Defendants performed work on in Stone Mountain, Georgia and elsewhere.

## COMPLAINT

## COUNT ONE
## BREACH OF CONTRACT

31.    Plaintiffs adopt each and every allegation contained in paragraphs 1-30 above as if the same were set forth fully herein.

32.    Defendants and Plaintiffs entered into a written and/or verbal contract(s), together with modifications thereto, concerning and/or involving Defendants' construction/development; abandonment; failure to pay sub-contractors, material-men and for supplies, and other matters regarding substantial improvements necessary for the development, including but not limited to, the necessary improvements to obtain appropriate governmental permitting of Sanders Creek.

33.    Defendants breached the terms and conditions of said contract(s) as set forth herein.

34.    As a direct result of the Defendants' breach, Plaintiffs were caused to:

(1)    Lose substantial sums of money.

WHEREFORE, Plaintiffs demand judgment against the Defendants in an amount as determined by a trial jury including, interest and the cost of this action.

## COUNT TWO
## FRAUDULENT MISREPRESENTATION

35.    Plaintiff adopts each and every allegation contained in paragraphs 1-34 above as if the same were set forth fully herein.

13

36.    This action is brought pursuant to Sections 6-5-100 and 6-5-101 of the Code of Alabama (1975).

37.    Defendants' representations as set forth in paragraphs 4,8,9,13,15,18,19,20,21,22,24, and 25, and/or the applicable provision thereof, and as otherwise set forth herein, were false and Defendants knew they were false, or without knowledge of the true facts, recklessly misrepresented the facts, or said representations were false and were made by mistake, but with the intention that Plaintiffs should rely on them.

38.    Plaintiffs believed said representations and relied on them to their substantial detriment.

39.    As a direct result of the Defendants' fraudulent misrepresentations, Plaintiffs were caused to:

   (1)    Lose substantial sums of money;

   (2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

   (3)    Suffer serious damages.

40.    Due to the willful and intentional, or gross and reckless nature of the Defendants' conduct, Plaintiffs claims punitive damages of the Defendants.

WHEREFORE, Plaintiffs demand judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT THREE
## NEGLIGENCE

41.     Plaintiffs adopt each and every allegation contained in paragraphs 1-40 above as if the same were set forth fully herein.

42.     The Defendants negligently: handled and/or performed on the project; failed to pay workers, sub-contractors, material-men and suppliers; administered, accounted for, applied, credited and/or failed to credit payments received from Plaintiffs; represented the full payment of sub-contractors, material-men and suppliers; represented, billed and collected substantial monies for materials, supplies, and/or work performed on unrelated projects; executed and/or presented Partial Waiver and Release of Lien documents; represented that sub-contractors, material-men and suppliers would be and/or had been paid in full; represented that final lien releases had been or would be obtained from sub-contractors, material-men and suppliers; represented the amount of un-paid bills on the project; made numerous and repetitive misrepresentations; and failed to obtain and/or provide the applicable governmental permits for the project.

43.     As a direct result of the Defendants' negligence, Plaintiffs were caused to:

(1)     Lose substantial sums of money;

(2)     Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)     Suffer serious damages.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including interest and the cost of this action.

## COUNT FOUR
## WANTONNESS

44.    Plaintiff adopts each and every allegation contained in paragraphs 1-43 above as if the same were set forth fully herein.

45.    The Defendants wantonly: handled and/or performed on the project; failed to pay workers, sub-contractors, material-men and suppliers; administered, accounted for, applied, credited and/or failed to credit payments received from Plaintiffs; represented the full payment of sub-contractors, material-men and suppliers; represented, billed and collected substantial monies for materials, supplies, and/or work performed on unrelated projects; executed and/or presented Partial Waiver and Release of Lien documents; represented that final lien releases had been or would be obtained from sub-contractors, material-men and suppliers; represented the amount of un-paid bills on the project; made numerous and repetitive misrepresentations; and failed to obtain and/or provide the applicable governmental permits for the project.

46.    As a direct result of the Defendants' wantonness, Plaintiff was caused to:

(1)    Lose substantial sums of money;

(2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)    Suffer serious damages.

47.    Due to the willful and intentional or gross and reckless nature of the Defendants' wantonness, Plaintiffs claim punitive damages of the Defendants.

16

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT FIVE
### DECEIT & FRAUDULENT DECEIT

48.     Plaintiff adopts each and every allegation contained in paragraphs 1-47 above as if the same were set forth fully herein.

49.     This action is brought pursuant to Sections 6-5-100, 6-5-103 and 6-5-104 of the Code of Alabama (1975).

50.     Defendants knew that Defendants failed to: properly handle and/or perform on the project; pay workers, sub-contractors, material-men and suppliers; properly administer, account for, apply and/or credit payments received from Plaintiffs including but not limited to, billing and collecting substantial monies for materials, supplies and/or work performed on unrelated projects; properly represent the failure to pay Defendants' sub-contractors, material-men and suppliers; properly execute and/or present Partial Waiver and Release of Lien documents; properly and accurately represent that final lien releases had been or would be obtained from sub-contractors, material-men and suppliers; properly and accurately represent the amount of un-paid bills on the project, recklessly and/or fraudulently made numerous and repetitive misrepresentations, and failed to obtain and/or provide the applicable governmental permits for the project.

51.     Defendants, by failing to inform Plaintiffs of the facts and matters set forth in paragraph 50 above and/or, misrepresenting said matters and facts, did, willfully misrepresent and/or conceal material facts to/from Plaintiffs in such a manner as to deceive and mislead Plaintiffs.

17

52.    Plaintiffs believed said representations and relied on them to Plaintiffs substantial detriment.

53.    As a direct result of the Defendants' fraudulent deceit, Plaintiffs were caused to:

(1)    Lose substantial sums of money;

(2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)    Suffer serious damages.

54.    Due to the willful and intentional, or gross and reckless nature of the Defendants' fraudulent deceit, Plaintiffs claim punitive damages of the Defendants.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT SIX
## SLANDER OF TITLE

55.    Plaintiffs adopt each and every allegation contained in paragraphs 1-54 above as if the same were set forth fully herein.

56.    At least one lien has been filed in the Probate Court of Lee County, Alabama by a sub-contractor, material-men and/or supplier against the Sanders Creek Subdivision property. (A true and correct copy of said Lien is labeled Exhibit "E", attached hereto and incorporated herein by reference).

57.    Numerous sub-contractors, material-men and/or suppliers have threatened the filing of liens for work, labor, materials and/or supplies furnished for the project and previously represented to have been paid by Defendants with money received from

Plaintiffs. On information, knowledge and belief, these sub-contractors, material-men and/or suppliers will file liens against the Sanders Creek Project in the near future.

58.    Defendants, through fraud, negligence, wantonness, breach of contract, deceit, theft and other wrongful actions have caused, lien(s) to be filed and/or threatened to be filed and/or failed to prevent liens from being filed against the Sanders Creek Subdivision property and have slandered and/or caused the title of said property to be wrongfully encumbered.

59.    As a direct result of the Defendants' slander of title, Plaintiffs were caused to:

　　　(1)    Lose substantial sums of money;

　　　(2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

　　　(3)    Suffer serious damages.

60.    Due to the willful and intentional or gross and reckless nature of the Defendants' conduct, Plaintiffs claim punitive damages of the Defendants.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT SEVEN
## THEFT

61.    Plaintiffs adopt each and every allegation contained in paragraphs 1-60 above as if the same were set forth fully herein.

62.    Defendants wrongfully, deceitfully, and in violation of the Laws of the State of Alabama misappropriated, converted, and deprived the lawful owners thereof, namely; the Plaintiffs, of the use and benefit of a substantial amount of money.

63.    As a direct result of the Defendants' theft and conversion, Plaintiffs were caused to:

(1)    Lose substantial sums of money;

(2)    Suffer severe mental anguish, emotional distress, inconvenience and worry;

(3)    Suffer serious damages.

64.    Due to the willful and intentional or gross and reckless nature of the Defendants' theft and conversion, Plaintiffs claim punitive damages of the Defendants.

WHEREFORE, Plaintiffs demands judgment against the Defendants in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT EIGHT
### VERIFIED COMPLIAINT FOR TEMPORARY RESTRAINING ORDER; FOR WRIT OF ATTATCHMENT AND FOR A PRELIMINARY AND/OR PERMANENT INJUNCTION

65.    Plaintiffs adopt each and every allegation contained in paragraphs 1-64 above as if the same were set forth fully herein.

66.    In or about January, 2005, and/or December, 2004, Defendants, sold, transferred and/or assigned a valuable piece of equipment for valuable consideration. This sell, transfer and/or assignment was done, despite Defendants' agreement and representations that the proceeds from the sale, transfer and/or assignment would be applied to and/or used to satisfy Defendants' indebtedness to Russo Corporation, Hertz,

20

Best Rentals, and/or other persons, firms, associations and/or legal entities, for labor, materials and/or supplies furnished for the project, and Defendants' numerous representations and warranties that all of Defendants' sub-contractors, material-men and/or suppliers had been paid in full.

67.    In or about January, 2005, and/or December, 2004, Defendants, sold, transferred and/or assigned that certain tract of real property located at 221 Cook Street, Auburn, Alabama for valuable consideration. This sell, transfer and/or assignment was done, despite Defendants' agreement and representations that the proceeds from the sale, transfer and/or assignment, less $50,000.00 would be applied to and/or used to satisfy Defendants' indebtedness to Russo Corporation, Hertz, Best Rental, and/or other persons, firms, associations and/or legal entities, for labor, materials and/or supplies furnished for the project, and Defendants' numerous representations and warranties that all of Defendants' sub-contractors, material-men and/or suppliers had been paid in full.

68.    On information knowledge and/or belief, Defendants have transferred, sold, assigned and/or absconded with valuable assets belonging to Defendants. These various transfers and/or assignments have been done, despite Defendants' agreement and representations that the proceeds from the liquidating of all company assets would be used to pay the outstanding payables for the project as more specifically set forth above.

69.    Defendants have not paid and/or satisfied all lien-able interest concerning the project and/or paid and satisfied all sub-contractors, material-men and/or suppliers, including but not limited to, Hertz, Best Rental and Russo Corporation, despite Defendants' representations and warranties that all sub-contractors, material-men and/or suppliers had been paid and/or would be paid in full.

70.    On information, knowledge and/or belief, Defendants are owed vast sums of money from non-party Wal-Mart, and/or others for monies owed Defendants for projects Defendants performed work on in Stone Mountain, Georgia and elsewhere.

### PRAYER FOR RELIEF

71.    Plaintiffs adopt each and every allegation contained in paragraphs 1-70 above as if the same were set forth fully herein.

72.    Plaintiffs, individually and as a corporate entity, and by and through their attorney, Davis B. Whittelsey move this Honorable Court to enter a temporary restraining order; writ of attachment, and a preliminary or permanent injunction pursuant to Rules 64 and 65, A.R.Civ.P., and pursuant to the <u>Alabama Fraudulent Transfer Act</u> against Defendants, restraining and enjoining Defendants from disposing of, transferring and/or assigning **any and all assets** of said Defendants, including but not limited to, any monies on deposit in any bank accounts maintained in any of the names of the Defendants, any accounts receivable, contract rights, receivables, securities, stock certificates, deeds, titles, certificate of origins, certificates of deposit, real estate, intangibles and/or personal property, and <u>attaching</u> any and all contract rights, assignables, and/or monies due Defendants, and/or any of Defendants' successors, affiliates, assigns, subsidiaries, sub-contractors, and/or predecessors from Wal-Mart, and/or any of Wal-Mart's successors, affiliates, assigns, subsidiaries, sub-contractors, employees, predecessors and/or related corporate entities, for any and all money owed, believed to be owed and/or claimed to be owed to Defendants pursuant to any work, labor and/or materials supplied by and/or furnished by Defendants, for any reason whatsoever, including but not limited to, any and all contracting, building and/or related services performed and/or provided by

22

Defendants, and <u>attaching</u> any and all contract rights, assignables, and/or monies due Defendants, and/or any of Defendants' successors, affiliates, assigns, subsidiaries, sub-contractors, and/or predecessors from any person, firm, association, partnership, limited partnership, corporation, professional corporation, limited liability company, state, county, municipality, and/or any legal entity whatsoever, for any and all money owed, believed to be owed and/or claimed to be owed to Defendants pursuant to any work, labor and/or materials supplied by and/or furnished by Defendants, for any reason whatsoever, including but not limited to, any and all contracting, building and/or related services performed and/or provided by Defendants. In the alternative, Plaintiffs pray that the court will appoint a receiver to take charge of the assets of said Defendants, and after entering a temporary restraining order, offer providing the Defendants an opportunity to be heard on this Complaint for a temporary restraining order, writ of attachment and preliminary and/or permanent injunction, enter a order requiring said Defendants to post a good and sufficient bond and/or security for the Plaintiffs' damages as set forth in Plaintiffs' Complaint for damages. Plaintiffs further pray that this Honorable Court will grant unto the Plaintiffs any other relief as the Court may deem appropriate in this cause. As grounds therefore, adopting all allegations and/or averments set forth herein, Plaintiffs show unto this Honorable Court as follows:

A.    That notice has been given to the Defendants of the pendency of this Complaint for a temporary restraining order, writ of attachment and for a preliminary or permanent injunction.

B.    That immediate and irreparable injury, loss or damage will result to the Plaintiffs if this Honorable Court declines to enter a temporary restraining order, writ of

attachment and preliminary and/or permanent injunction. Said irreparable injury, loss or damage is set forth in greater detail in the Affidavit of Sheldon Whittelsey, attached hereto as Exhibit "F". (Said affidavit of C. Sheldon Whittelsey, IV, individually and as Secretary of Whittelsey Properties, Inc., is attached hereto as "Exhibit "F" and is given in support of Plaintiffs application for writ of attachment.)

     C.     That pursuant to the <u>Alabama Fraudulent Transfer Act</u>, Section 8-9A-7 of The Code of Alabama (1975), et als., the Plaintiffs seek an injunction against further disposition by the Defendants or a transferee of the Defendants, or both, of the assets of the Defendants.

     D.     That pursuant to Article 2 Title 6 of The Code of Alabama (1975), et als., that the Plaintiffs seek a writ of attachment in the sum of $150,000.00 being the Plaintiffs liquidated damages to date, excluding damages for mental anguish, punitive damages, future damages and other damages recoverable by law. (See Exhibit "F")

     WHEREFORE, Plaintiffs pray that this Honorable Court will, after Plaintiffs post a bond with sureties as required by this Honorable Court, enter a temporary restraining order; writ of attachment, and a preliminary or permanent injunction pursuant to Rules 64 and 65, A.R.Civ.P., and pursuant to the <u>Alabama Fraudulent Transfer Act</u> against Defendants restraining and enjoining Defendants from disposing of, transferring and/or assigning any and all assets of said Defendants, including but not limited to, any monies on deposit in any bank accounts maintained in any of the names of the Defendants, any accounts receivable, any contract rights, any receivables, securities, stock certificates, deeds, titles, certificate of origins, certificates of deposit, real estate, intangibles and/or personal property, and attaching any and all contract rights, assignables, and/or monies

due Defendants, and/or any of Defendants' successors, affiliates, assigns, subsidiaries, sub-contractors, and/or predecessors from Wal-Mart, and/or any of Wal-Mart's successors, affiliates, assigns, subsidiaries, sub-contractors, employees, predecessors and/or related corporate entities, for any and all money owed, believed to be owed and/or claimed by Defendants pursuant to any work, labor and/or materials supplied by and/or furnished by Defendants, for any reason whatsoever, including but not limited to any and all contracting, building and/or related services performed and/or provided by Defendants; and attaching any and all contract rights, assignables, and/or monies due Defendants, and/or any of Defendants' successors, affiliates, assigns, subsidiaries, sub-contractors, and/or predecessors from any person, firm, association, partnership, limited partnership, corporation, professional corporation, limited liability company, state, county, municipality, and/or any legal entity whatsoever, for any and all money owed, believed to be owed and/or claimed by Defendants pursuant to any work, labor and/or materials supplied by and/or furnished by Defendants, for any reason whatsoever, including but not limited to any and all contracting, building and/or related services performed and/or provided by Defendants. In the alternative, Plaintiffs pray that the court will appoint a receiver to take charge of the assets of said Defendants, and, after entering a temporary restraining order having provided the Defendants an opportunity to be heard on this Complaint for a temporary restraining order, writ of attachment and preliminary and/or permanent injunction, enter a order requiring said Defendants to post a good and sufficient bond and/or security for the Plaintiffs' damages as set forth in this Complaint for damages, Plaintiffs further pray that this Honorable Court will, at the

appropriate time, enter a preliminary and/or permanent injunction and further grant unto the Plaintiffs any other relief as the Court may deem appropriate in this cause.

Respectfully submitted this the 23rd day of February, 2005.

WHITTELSEY, WHITTELSEY & POOLE, P.C.

BY: DAVIS B. WHITTELSEY (WHI067)
Attorneys for Plaintiffs
Post Office Box 106
Opelika, Alabama 36803-0106
(334) 745-7766

PLAINTIFF DEMANDS A TRIAL BY JURY.

DAVIS B. WHITTELSEY

## VERIFICATION

C. SHELDON WHITTELSEY, IV
individually and as Secretary of Whittelsey
Properties, Inc.

STATE OF ALABAMA    )
                    :
COUNTY OF LEE       )

I, the undersigned authority, a Notary Public in and for said State at Large, hereby certify that C. Sheldon Whittelsey, IV, individually and as Secretary of Whittelsey Properties, Inc., whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this day that, being informed of the contents, that each and every allegation contained within said document is true and correct to the best of his information knowledge and belief and that he executed the same voluntarily on the day the same bears date.

GIVEN under my hand and official seal this the 23rd day of February, 2005.

Lori E. King
NOTARY PUBLIC
My Commission Expires October 23, 2006.

26.



# Manifold Construction, L.L.C.
### 221 Cook Street / Auburn, AL 36830 / 334-821-6464 / Fax 334-821-6465

ACCEPTANCE OF PROPOSAL

I, Shelton Whittelsey, representing Whittelsey Properties and himself, and Jack D.
Manifold of Manifold Construction agree to the terms of the attached proposal.
This proposal was revised on May 28, 2004 and supersedes all other previous
proposals.  The terms of said contract will be as follows:

Contract Price  $646,712.00

Payment to Manifold Construction will be made on Monthly Progress Payments basis.
Payment request will sent on or about the 30th of each month with payment due by the
10th of the following month. Late payments will incur a 10% penalty.

Any additional work directed by Whittelsey Properties will not begin until all parties
agree on expense and time constraints.

Signed and Sealed this _28th_ day of _May_, 2004.


Manifold Construction., LLC                Whittelsey Properties
Jack D. Manifold                           Shelton Whittelsey

_____                    _____
Owner                                      Owner

_____                    _____
Witness                                    Witness

_____                    _____
Witness                                    Witness

 **Manifold Construction, L.L.C.**
221 Cook Street / Auburn, AL 36830 / 334-821-6464 / Fax 334-821-6465

May 28, 2004

Shelton Whittelsey
Ph: 334-745-7766
Fax: 334-745-7666

Re: Sanders Creek Subdivision
Opelika, AL

Dear Mr. Whittelsey:

We are pleased to quote the following on the referenced project:

## Pricing Information

| | |
|---|---|
| Base Bid | |
| Clear & Grub/Earthwork | $117,391.00 |
| Erosion Control | $14,676.00 |
| Domestic & Fire Water System | 148,913.00 |
| Sanitary Sewer System | $113,469.00 |
| Base & Paving | $134,722.00 |
| Lake | $83,784.00 |
| Add for revisions made to dwg's dated 4/26/04 | $33,757.00 |
| TOTAL BASE BID | $646,712.00 |

## Base Bid Scope of Work Included:

Domestic and Fire Water system
Sanitary Sewer system
Construction Entrance Drive
Erosion Control – silt fence, grass seeding, mulch, etc.
General Excavation
      Rough Grading Cut and Fill
      Clear & Grub
      Re-spread Top Soil as Needed
Base and Paving (6" compacted base & 2" asphalt)

## Base Bid Scope of Work Excluded:

All Governing Authority Fees including but not limited to: Impact Fees, Road Fees Plan Fees,
Inspection Fees, Connection Fees and Capacity Fees
Utility Company Fees
Hazardous Material Removal
Site Electrical, Gas, Phone and Cable

Landscaping & Irrigation
Testing
Bonds
Undercut for unsuitable soil ($12/cy to undercut)
Stripping & signage
Curb & Gutter
Rock Removal
Engineering & Layout
Storm Drain Pipe

We appreciate the opportunity to provide a quotation for this work.  If you have any questions,
please do not hesitate to give me a call.

Sincerely,


Jack Manifold
Manifold Construction, LLC.



# Manifold Construction, L.L.C.

### 221 Cook Street / Auburn, AL 36830 / 334-821-6464 / Fax334-821-6465

To: Shelton Whittelsey
Whittelsey Properties, Inc.
PO Box 106
Opelika, AL 36803
        334-745-7666 fax

Date:    5/28/2004

From: Jack Manifold

*Project:* Sanders Creek Subdivision
*Change Request #:* 1

*Description of Work:*  Changes per drawings dated 4/26/04.

| Item | Quantity | Unit | Unit Cost | | Sub Total | |
|---|---|---|---|---|---|---|
| Deduct for decrease in 8" SDR35 sewer | 983 | lf | $ | 11.86 | $ | 11,658.38 |
| Add for increase in 8" SDR35 price | 3651 | lf | $ | 0.53 | $ | 1,935.03 |
| Add for additional sewer manholes | 6 | ea | $ 1,200.00 | | $ | 7,200.00 |
| Add for Rip Rap @ 36" headwall | 27 | tons | $ | 25.00 | $ | 675.00 |
| Add for silt fence in place of Check Dams | 18 | ea | $ | 50.00 | $ | 900.00 |
| Add for height increase of dam structure | 1 | ls | $ 2,172.28 | | $ | 2,172.28 |
| Add for additional fire hydrant assemblies | 2 | ea | $ 2,800.00 | | $ | 5,600.00 |
| | | | | | $ | - |
| | | | SubT | | $ | 30,140.69 |
| | | O&P | 12% | | $ | 3,616.88 |
| | | | Total | | $ | 33,757.57 |

PARTIAL WAIVER AND RELEASE OF LIEN

The undersigned hereby acknowledges receipt of $ 209,955.00 paid by
Whittelsey Properties, Inc. P.O. Box 106 Opelika, Alabama 36803-0106 on account
of labor performance and materials furnished for the improvements of the
following described premises:

                    Sanders Creek
                    Opelika, Alabama

    In consideration of that payment the undersigned hereby releases, waives
and relinquishes his/its lien rights, claims or rights of lien against those
premises and any surety bonds in favor of the owner and all other persons,
firms, partnerships, or corporations.

    The undersigned warrants that it/he has the right to execute this partial
waiver and release. It/he warrants further that all laborers employed by the
undersigned and all materials and supplies furnished by others to him/it in
connection with construction of the improvements on the above-described
premises have been fully paid and that no security agreement has been executed
by him/it covering any part of the improvements of the premises.

    The undersigned does not, hereby release or waive any lien, rights or
claims which he/it may acquire for labor performed or materials furnished after
_7/1/04_
    (DATE)

    Signed and sealed this _1_ day of _July_ 200_4_.

WITNESS:                              Manifold Construction LLC
                                      Name of Company/Corporation

_Joanne Scarbrough_          BY: _____
                                      As Its _Owner_

Sworn to and subscribed before me this _1_ day of _July_, 200_4_

(NOTARY SEAL)

                    Notary Public
                    My COMMISSION EXPIRES:

                    EXPIRATION DATE OCT. 9, 2006

PARTIAL WAIVER AND RELEASE OF LIEN

The undersigned hereby acknowledges receipt of $ 168,178.00 paid by Whittelsey Properties, Inc. on account of labor performance and materials furnished for the improvements of the following described premises: Sanders Creek Opelika, AL.

In consideration of that payment the undersigned hereby releases, waives and relinquishes his/its lien rights, claims or rights of lien against those premises and any surety bonds in favor of the owner and all other persons, firms, partnerships, or corporations.

The undersigned warrants that it/he has the right to execute this partial waiver and release. It/he warrants further that all laborers employed by the undersigned and all materials and supplies furnished by others to him/it in connection with construction of the improvements on the above-described premises have been fully paid and that no security agreement has been executed by him/it covering any part of the improvements of the premises.

The undersigned does not, hereby release or waive any lien, rights or claims which he/it may acquire for labor performed or materials furnished after 8-2-04 .

_____
(DATE)

Signed and sealed this 2 day of August , 200 4 .

WITNESS:

_____

_Joanne Scarbrough_

                                  Manifold Construction LLC
                                  Name of Company/Corporation

                                  BY: _____
                                  As Its Owner

Sworn to and subscribed before me this 2 day of August ,200_

(NOTARY SEAL)                     Christy Price
                                  Notary Public

MY COMMISSION EXPIRES:
     Notary Public
     CHRISTY H. PRICE
     State of Alabama
My Commission Expires Aug. 01, 2007

PARTIAL WAIVER AND RELEASE OF LIEN

The undersigned hereby acknowledges receipt of $ _231,689.00_ paid by Whittelsey Properties, Inc. P.O. Box 106 Opelika, Alabama 36803-0106 on account of labor performance and materials furnished for the improvements of the following described premises:

Sanders Creek
Opelika, Alabama

In consideration of that payment the undersigned hereby releases, waives and relinquishes his/its lien rights, claims or rights of lien against those premises and any surety bonds in favor of the owner and all other persons, firms, partnerships, or corporations.

The undersigned warrants that it/he has the right to execute this partial waiver and release. It/he warrants further that all laborers employed by the undersigned and all materials and supplies furnished by others to him/it in connection with construction of the improvements on the above-described premises have been fully paid and that no security agreement has been executed by him/it covering any part of the improvements of the premises.

The undersigned does not, hereby release or waive any lien, rights or claims which he/it may acquire for labor performed or materials furnished after _8-27-04_ .
(DATE)

Signed and sealed this __27 day of August, 200 04_.

WITNESS:

_Joanne Scalvaugh_

_Manifold Construction LLC_
Name of Company/Corporation

BY: _Jack Manifold_
As Its _Owner_

Sworn to and subscribed before me this _27_ day of August , 200 4

_Christy Price_

(NOTARY SEAL)

Notary Public
My COMMISSION EXPIRES:
Notary Public
CHRISTY H. PRICE
State of Alabama

PARTIAL WAIVER AND RELEASE OF LIEN

The undersigned hereby acknowledges receipt of $ 42,024.00 ____ paid by Whittelsey Properties, Inc. P.O. Box 106 Opelika, Alabama 36803-0106 on account of labor performance and materials furnished for the improvements of the following described premises:

Sanders Creek
Opelika, Alabama

In consideration of that payment the undersigned hereby releases, waives and relinquishes his/its lien rights, claims or rights of lien against those premises and any surety bonds in favor of the owner and all other persons, firms, partnerships, or corporations.

The undersigned warrants that it/he has the right to execute this partial waiver and release. It/he warrants further that all laborers employed by the undersigned and all materials and supplies furnished by others to him/it in connection with construction of the improvements on the above-described premises have been fully paid and that no security agreement has been executed by him/it covering any part of the improvements of the premises.

The undersigned does not, hereby release or waive any lien, rights or claims which he/it may acquire for labor performed or materials furnished after 10-01-04 ____.
(DATE)

Signed and sealed this 1st day of October, 2004.

WITNESS:

_____

_Joanne Stanbaugh_

Manifold Construction LLC
Name of Company/Corporation

BY: _____ Jack Manifold _____
As Its Owner _____

Sworn to and subscribed before me this 1 day of October, 2004

(NOTARY SEAL)

_Christy Price_

Notary Public

My COMMISSION EXPIRES:
Notary Public
CHRISTY H. PRICE
State of Alabama



EXHIBIT
B
Co-plaint

# MANIFOLD CONSTRUCTION, L.L.C.

221 Cook Street • Auburn, AL 36830 • 334-821-6464 • Fax 334-821-6465

November 30, 2004

Shelton Whittelsey
Whittelsey Properties
600 Avenue A
Opelika, Alabama

Re: Sanders Creek Subdivision

Mr. Whittelsey:

I am writing to inform you that due to circumstances beyond our control Manifold Construction LLC is no longer in business. All of our projects have been taken over by either the General Contractor, Owner or Developer. We no longer have employees as of Thursdays, November 24, 2004.

It is our understanding that Whittelsey Properties will act as the general contractor to complete the project from the 24th of November forward, and Manifold Construction LLC nor any of their employees will be on site or have any responsibility for actions taken or cost incurred from that date forward.

Manifold Construction LLC is in the process of liquidating all company assets and will apply funds from those assets toward outstanding payables for current projects. We are committed to paying Hertz Equipment all payments in full and will release to you a Final Lien Waiver from Hertz. We are not going to know the final figures on Best Rental until the sale on Dec. 2nd and 3rd, but are hopeful that a substantial amount of their outstanding balance will be satisfied. We are also working on negotiations with Russo, the blaster, on equipment exchange for outstanding receivable.

I wish that we knew at this moment how this was all going to end up, but we are in the middle of negotiations. I have attached a letter that is being sent out to all outstanding venders on the above project. They will be contacting you for payment options. We do not have the ability to make payments for any of these outstanding invoices.

We apologize for any problems this situation has caused.

Sincerely,

Jack Manifold, Member
Manifold Construction, LLC



# MANIFOLD CONSTRUCTION, L.L.C.

221 Cook Street • Auburn, AL 36830 • 334-821-6464 • Fax 334-821-6465

November 30, 2004

Re:  Sanders Creek Subdivision
     Opelika , Alabama

To Whom It May Concern:

Due to circumstances beyond our control I am writing to inform  you that Manifold Construction LLC is no longer in business. All of our current projects have been taken over by the Owner, General Contractor or Developer.

We are aware that there is outstanding debt due to your company on the above referenced project. Payment for that debt will be coming directly from Whittelsey Properties, 600 Avenue A, Opelika, Alabama, 36801.  Someone from their company will be contacting you regarding payment arrangements.

We apologize for any problems this situation has caused.

Sincerely,



Jack Manifold, Member
Manifold Construction, LLC



## Manifold Construction, LLC
### Unpaid Bills By Job
#### All Transactions

| Type | Date | Source Name | Due Date | Account | Aging | Open Balance |
|------|------|-------------|----------|---------|-------|--------------|
| MC2156Whittelsey Lake/Opelika | | | | | | |
| Bill | 9/7/2004 | Airgas South, Inc. | 9/30/2004 | 639 · Large Equipm... | 54 | 29.67 |
| Bill | 10/13/2004 | Airgas South, Inc. | 10/29/2004 | 639 · Large Equipm... | 25 | 92.49 |
| Bill | 8/13/2004 | Alabama Precast & ... | 9/6/2004 | 722.2 · Sanitary Se... | 78 | 1,463.00 |
| Bill | 9/30/2004 | Alabama Precast & ... | 10/23/2004 | 722.2 · Sanitary Se... | 31 | 28.00 |
| Bill | 9/30/2004 | Alabama Precast & ... | 10/15/2004 | 722.1 · Storm Drain... | 39 | 3,240.00 |
| Bill | 11/3/2004 | Alabama Precast & ... | 11/14/2004 | 722.2 · Sanitary Se... | 9 | 170.00 |
| Bill | 11/3/2004 | Alabama Precast & ... | 11/6/2004 | 722.1 · Storm Drain... | 17 | 854.47 |
| Bill | 11/5/2004 | Alabama Precast & ... | 11/22/2004 | 722.2 · Sanitary Se... | 1 | 40.12 |
| Bill | 10/13/2004 | Auburn Tire Service | 10/30/2004 | 639 · Large Equipm... | 24 | 1,068.83 |
| Bill | 11/5/2004 | Auburn Tire Service | 11/29/2004 | 638 · Large Equipm... | | 1,647.90 |
| Bill | 8/10/2004 | Batey & Sanders, Inc. | 9/9/2004 | 639 · Large Equipm... | 75 | 566.22 |
| Bill | 9/15/2004 | Batey & Sanders, Inc. | 9/15/2004 | 639 · Large Equipm... | 69 | 35.74 |
| Bill | 9/30/2004 | Batey & Sanders, Inc. | 10/24/2004 | 639 · Large Equipm... | 30 | 759.95 |
| Bill | 8/23/2004 | Best Rental | 9/16/2004 | 714.A · Earth Work-... | 68 | 3,000.00 |
| Bill | 8/23/2004 | Best Rental | 9/16/2004 | 714.B · Rental Equi... | 68 | 120.00 |
| Bill | 8/23/2004 | Best Rental | 9/15/2004 | 714.A · Earth Work-... | 69 | 8,500.00 |
| Bill | 8/23/2004 | Best Rental | 9/15/2004 | 714.B · Rental Equi... | 69 | 340.00 |
| Bill | 9/2/2004 | Best Rental | 9/24/2004 | 627 · Small Tool Pu... | 60 | 73.55 |
| Bill | 9/8/2004 | Best Rental | 9/27/2004 | 639 · Large Equipm... | 57 | 442.86 |
| Bill | 9/8/2004 | Best Rental | 9/27/2004 | 714.A · Earth Work-... | 57 | 4,450.00 |
| Bill | 9/8/2004 | Best Rental | 9/27/2004 | 714.B · Rental Equi... | 57 | 178.00 |
| Bill | 9/7/2004 | Best Rental | 10/7/2004 | 627 · Small Tool Pu... | 47 | 26.75 |
| Bill | 9/7/2004 | Best Rental | 9/16/2004 | 714.A · Earth Work-... | 68 | 2,930.00 |
| Bill | 9/7/2004 | Best Rental | 9/16/2004 | 638 · Large Equipm... | 68 | 100.00 |
| Bill | 9/7/2004 | Best Rental | 9/16/2004 | 714.B · Rental Equi... | 68 | 117.20 |
| Bill | 9/30/2004 | Best Rental | 10/21/2004 | 627 · Small Tool Pu... | 33 | 24.56 |
| Bill | 9/30/2004 | Best Rental | 10/24/2004 | 714.A · Earth Work-... | 30 | 4,628.00 |
| Bill | 9/30/2004 | Best Rental | 10/13/2004 | 714.A · Earth Work-... | 41 | 3,120.00 |
| Bill | 9/30/2004 | Best Rental | 10/12/2004 | 714.A · Earth Work-... | 42 | 8,840.00 |
| Bill | 9/30/2004 | Best Rental | 10/11/2004 | 714.A · Earth Work-... | 43 | 3,120.00 |
| Bill | 9/30/2004 | Best Rental | 10/13/2004 | 714.A · Earth Work-... | 41 | 2,080.00 |
| Bill | 10/13/2004 | Best Rental | 10/25/2004 | 623 · Small Tools | 29 | 692.64 |
| Bill | 11/3/2004 | Best Rental | 11/13/2004 | 627 · Small Tool Pu... | 10 | 16.22 |
| Bill | 11/3/2004 | Best Rental | 11/10/2004 | 714.A · Earth Work-... | 13 | 8,500.00 |
| Bill | 11/3/2004 | Best Rental | 11/10/2004 | 714.B · Rental Equi... | 13 | 340.00 |
| Bill | 11/3/2004 | Best Rental | 11/11/2004 | 714.A · Earth Work-... | 12 | 2,080.00 |
| Bill | 11/3/2004 | Best Rental | 11/11/2004 | 714.A · Earth Work-... | 12 | 1,560.00 |
| Bill | 11/3/2004 | Best Rental | 11/9/2004 | 714.A · Earth Work-... | 14 | 3,120.00 |
| Bill | 11/4/2004 | Best Rental | 11/28/2004 | 714.A · Earth Work-... | | 2,908.00 |
| Bill | 11/4/2004 | Best Rental | 11/23/2004 | 623 · Small Tools | | 692.64 |
| Bill | 11/4/2004 | Best Rental | 11/22/2004 | 714.A · Earth Work-... | 1 | 4,450.00 |
| Bill | 11/4/2004 | Best Rental | 11/22/2004 | 714.B · Rental Equi... | 1 | 178.00 |
| Bill | 11/17/2004 | Best Rental | 11/21/2004 | 714.A · Earth Work-... | 2 | 8,840.00 |
| Bill | 11/17/2004 | Best Rental | 11/20/2004 | 714.A · Earth Work-... | 3 | 3,120.00 |
| Bill | 11/17/2004 | Best Rental | 11/22/2004 | 714.A · Earth Work-... | 1 | 2,080.00 |
| Bill | 10/7/2004 | BP | 10/11/2004 | 609 · Fuel & Maint -... | 43 | 287.73 |
| Bill | 10/7/2004 | BP | 10/11/2004 | 609 · Fuel & Maint -... | 43 | 142.72 |
| Bill | 11/9/2004 | BP | 11/10/2004 | 609 · Fuel & Maint -... | 13 | 454.80 |
| Credit | 7/12/2004 | Consolidated Pipe ... | | 722.2 · Sanitary Se... | | -190.68 |
| Bill | 8/17/2004 | Consolidated Pipe ... | 9/12/2004 | 722.3 · Water Line :... | 72 | 30,764.62 |
| Bill | 8/23/2004 | Consolidated Pipe ... | 9/10/2004 | 722.2 · Sanitary Se... | 74 | 81.27 |
| Bill | 8/26/2004 | Consolidated Pipe ... | 9/18/2004 | 722.3 · Water Line ... | 66 | 613.78 |
| Bill | 8/26/2004 | Consolidated Pipe ... | 9/16/2004 | 722.3 · Water Line ... | 68 | 366.12 |
| Bill | 9/2/2004 | Consolidated Pipe ... | 9/17/2004 | 722.3 · Water Line ... | 67 | 13,114.56 |
| Bill | 9/15/2004 | Consolidated Pipe ... | 9/1/2004 | 722.3 · Water Line ... | 83 | 246.65 |
| Bill | 9/30/2004 | Consolidated Pipe ... | 10/21/2004 | 722.2 · Sanitary Se... | 33 | 1,558.85 |
| Bill | 10/14/2004 | Consolidated Pipe ... | 11/1/2004 | 722.3 · Water Line ... | 22 | 35.57 |
| Bill | 10/14/2004 | Consolidated Pipe ... | 11/1/2004 | 722.3 · Water Line ... | 22 | 87.48 |
| Bill | 11/3/2004 | Consolidated Pipe ... | 11/8/2004 | 722.3 · Water Line ... | 15 | 172.77 |
| Bill | 11/3/2004 | Consolidated Pipe ... | 11/8/2004 | 722.3 · Water Line ... | 15 | 91.11 |
| Bill | 11/3/2004 | Consolidated Pipe ... | 11/12/2004 | 722.3 · Water Line ... | 11 | 533.04 |
| Bill | 11/3/2004 | Consolidated Pipe ... | 11/11/2004 | 722.3 · Water Line ... | 12 | 1,846.74 |
| Bill | 11/3/2004 | Consolidated Pipe ... | 11/6/2004 | 722.3 · Water Line ... | 17 | 59.05 |
| Bill | 11/4/2004 | Consolidated Pipe ... | 11/27/2004 | 722.3 · Water Line ... | | 474.24 |
| Bill | 11/4/2004 | Consolidated Pipe ... | 10/24/2004 | 722.3 · Water Line :... | 30 | 7,141.20 |
| Bill | 11/4/2004 | Consolidated Pipe ... | 11/19/2004 | 722.3 · Water Line ... | 4 | 70.30 |
| Bill | 11/5/2004 | Consolidated Pipe ... | 11/5/2004 | 722.3 · Water Line ... | 18 | 5.40 |

11/23/04

# Manifold Construction, LLC
## Unpaid Bills By Job
### All Transactions

| Type | Date | Source Name | Due Date | Account | Aging | Open Balance |
|------|------|-------------|----------|---------|-------|--------------|
| Bill | 11/5/2004 | Consolidated Pipe ... | 11/5/2004 | 722.3 · Water Line ... | 18 | 19.74 |
| Bill | 11/5/2004 | Consolidated Pipe ... | 11/5/2004 | 722.3 · Water Line ... | 18 | 658.17 |
| Bill | 11/16/2004 | Consolidated Pipe ... | 12/1/2004 | 722.3 · Water Line ... | | 485.14 |
| Bill | 11/18/2004 | Consolidated Pipe ... | 12/11/2004 | 722.3 · Water Line ... | | 296.35 |
| Bill | 11/18/2004 | David Williams Wel... | 12/16/2004 | 639 · Large Equipm... | | 191.00 |
| Bill | 11/16/2004 | Davis Machine Works | 11/26/2004 | 639 · Large Equipm... | | 80.25 |
| Bill | 11/16/2004 | Doms Auto Parts | 11/30/2004 | 639 · Large Equipm... | | 154.69 |
| Bill | 10/13/2004 | Eagle Wholesale S... | 10/24/2004 | 722.2 · Sanitary Se... | 30 | 30.81 |
| Bill | 7/20/2004 | Earl Dudley Associ... | 8/15/2004 | 627 · Small Tool Pu... | 100 | 48.20 |
| Bill | 9/28/2004 | Econo Lodge | 10/20/2004 | 631.1 · Lodging | 34 | 270.00 |
| Bill | 10/13/2004 | Econo Lodge | 10/30/2004 | 631.1 · Lodging | 24 | 360.00 |
| Bill | 10/14/2004 | Econo Lodge | 11/4/2004 | 631.1 · Lodging | 19 | 630.00 |
| Bill | 11/3/2004 | Econo Lodge | 11/8/2004 | 631.1 · Lodging | 15 | 630.00 |
| Bill | 11/3/2004 | Econo Lodge | 11/17/2004 | 631.1 · Lodging | 6 | 630.00 |
| Bill | 11/4/2004 | Econo Lodge | 11/26/2004 | 631.1 · Lodging | | 630.00 |
| Bill | 11/16/2004 | Econo Lodge | 12/1/2004 | 631.1 · Lodging | | 630.00 |
| Bill | 11/18/2004 | Econo Lodge | 12/15/2004 | 631.1 · Lodging | | 990.00 |
| Bill | 11/4/2004 | Hanson Pipe & Pro... | 11/27/2004 | 722.1 · Storm Drain... | | 1,566.00 |
| Bill | 7/20/2004 | Hertz Equipment R... | 7/29/2004 | 714.A · Earth Work-... | 117 | 7,200.00 |
| Bill | 7/20/2004 | Hertz Equipment R... | 7/29/2004 | 714.B · Rental Equi... | 117 | 288.00 |
| Bill | 8/6/2004 | Hertz Equipment R... | 8/27/2004 | 714.A · Earth Work-... | 88 | 7,200.00 |
| Bill | 8/6/2004 | Hertz Equipment R... | 8/27/2004 | 714.B · Rental Equi... | 88 | 288.00 |
| Bill | 9/8/2004 | Hertz Equipment R... | 9/24/2004 | 714.A · Earth Work-... | 60 | 7,200.00 |
| Bill | 9/8/2004 | Hertz Equipment R... | 9/24/2004 | 714.B · Rental Equi... | 60 | 288.00 |
| Bill | 10/19/2004 | Hughes Supply,Inc | 10/10/2004 | 722.3 · Water Line ... | 44 | 5.09 |
| Bill | 11/16/2004 | J & M Bookstore | 11/28/2004 | 712 · Earth Work - ... | | 81.49 |
| Bill | 10/13/2004 | K & B Oil Supply, Inc. | 10/30/2004 | 636 · On Site Fuel | 24 | 3,221.75 |
| Bill | 11/5/2004 | K & B Oil Supply, Inc. | 11/10/2004 | 636 · On Site Fuel | 13 | 1,978.48 |
| Bill | 9/28/2004 | M & M Trucking | 10/14/2004 | 722.2 · Sanitary Se... | 40 | 442.95 |
| Bill | 10/14/2004 | M & M Trucking | 11/5/2004 | 722.2 · Sanitary Se... | 18 | 421.33 |
| Bill | 11/3/2004 | M & M Trucking | 11/11/2004 | 722.3 · Water Line ... | 12 | 505.75 |
| Bill | 11/16/2004 | M & M Trucking | 11/26/2004 | 722.3 · Water Line ... | | 480.50 |
| Bill | 11/16/2004 | M & M Trucking | 11/26/2004 | 722.3 · Water Line ... | | 211.89 |
| Bill | 11/16/2004 | M & M Trucking | 11/26/2004 | 722.3 · Water Line ... | | 147.43 |
| Bill | 9/30/2004 | Martin Marietta Mat... | 10/7/2004 | 722.2 · Sanitary Se... | 47 | 224.30 |
| Bill | 11/18/2004 | Opelika Utilities | 11/24/2004 | 722.3 · Water Line ... | | 104.00 |
| Bill | 9/8/2004 | Piedmont Fertilizer ... | 9/19/2004 | 717 · Erosion Control | 65 | 437.50 |
| Bill | 9/8/2004 | Russo Corporation | 9/1/2004 | 715 · Earth Work - ... | 83 | 91,723.00 |
| Bill | 11/18/2004 | Russo Corporation | 10/30/2004 | 715 · Earth Work - ... | 24 | 18,984.75 |
| Bill | 8/10/2004 | Salia Construction ... | 8/30/2004 | 638 · Large Equipm... | 85 | 2,150.00 |
| Bill | 10/7/2004 | Shell | 10/9/2004 | 609 · Fuel & Maint -... | 45 | 146.67 |
| Bill | 11/3/2004 | Sherman Industries... | 11/5/2004 | 722.3 · Water Line ... | 18 | 198.40 |
| Bill | 11/16/2004 | Sherman Industries... | 11/27/2004 | 722.3 · Water Line ... | | 97.96 |
| Bill | 11/4/2004 | Thompson Supply ... | 11/25/2004 | 722.2 · Sanitary Se... | | 124.81 |
| Bill | 11/4/2004 | Thompson Supply ... | 11/15/2004 | 722.3 · Water Line ... | 8 | 75.30 |
| Bill | 11/4/2004 | Thompson Tractor ... | 10/28/2004 | 722.3 · Water Line ... | 26 | 101.43 |
| Bill | 11/18/2004 | Verizon Wireless | | 630 · Superintendent | | 267.47 |
| Bill | 9/7/2004 | W T Wadsworth Oil... | 9/30/2004 | 609 · Fuel & Maint -... | 54 | 457.12 |
| Bill | 10/14/2004 | W T Wadsworth Oil... | 10/30/2004 | 609 · Fuel & Maint -... | 24 | 201.01 |
| Bill | 10/14/2004 | W T Wadsworth Oil... | 10/30/2004 | 609 · Fuel & Maint -... | 24 | 143.74 |
| Bill | 10/14/2004 | Waid True Value H... | 10/10/2004 | 638 · Large Equipm... | 44 | 214.52 |
| Bill | 10/14/2004 | Waid True Value H... | 11/10/2004 | 722.1 · Storm Drain... | 13 | 23.53 |
| Bill | 11/10/2004 | Wesley Tire & Auto ... | 11/25/2004 | 639 · Large Equipm... | | 391.11 |
| Total MC2156Whittelsey Lake/Opelika | | | | | | 302,747.85 |
| TOTAL | | | | | | 302,747.85 |

eb 09 05 12:47p      K & B OIL SUPPLY           1-334-741-4018        p.1



# FAX COVER SHEET

K & B OIL SUPPLY, INC.
1405 1st AVENUE
OPELIKA, AL
334-741-7075
FAX 334-741-4018

| Send to: DAVIS WHITTELSEY | From: TOMMY BRASWELL |
|---|---|
| Attention: | Date: 2-9-05 |
| Office Location: | |
| Fax Number: 745-7666 | |

☐ Urgent
☐ Reply ASAP
☐ Please comment
☐ Please Review
☐ For your Information

Total pages, including cover:  2

Comments:

To follow is the lien our company filed on
2-4-05. The payoff for this lien is
$11,709.94. I can be reached at
741-7075 or 319-1271.

Feb 09 05 12:48p       K & B OIL SUPPLY              1-334-741-4018           P.2

STATE OF ALABAMA
LEE COUNTY

<u>VERIFIED STATEMENT OF LIEN</u>

COMES NOW, K & B Oil Supply, Inc., and files this Verified Statement of Lien in writing, verified by the oath of Thomas J. Braswell, Jr., Vice President, who has personal knowledge of the facts herein set forth:

That said Thomas J. Braswell, Jr., Vice President of K & B Oil Supply, Inc. claims a lien upon the following property, situated in Lee County, Alabama, to-wit:

Parcel A, Sanders Creek Subdivision-Phase One, according to and as shown by that certain map or plat filed for record in Town Plat Book 15, at Page 146, in the Office of the Judge of Probate of Lee County, Alabama, consisting of 62.478 acres, more or less.

This lien is claimed, separately and severally, as to any and all improvements thereon, and the said land. That said lien is claimed to secure an indebtedness, after all just credits have been given, of $11,368.87, plus interest from to-wit: November 15, 2004, for the furnishing of work, materials, equipment used and incorporated in the improvement of the above described land under a contract with Manifold Construction, LLC. Said work, equipment, materials and labor were used for the construction of certain improvements on said real property. Materials provided and incorporated into the project included, but are not limited to, fuel, oil and other supplies. The name of the owner or proprietor of said property is Whittelsey Properties, Inc.

K & B OIL SUPPLY, INC.

By: _Thomas J. Braswell, Jr._
THOMAS J. BRASWELL, JR., Vice President
Claimant

STATE OF ALABAMA
LEE COUNTY

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large, personally appeared Thomas J. Braswell, Jr., Vice President of K & B Oil Supply, Inc., who being duly sworn, doth depose say that he has personal knowledge of the facts set forth in the foregoing statement of lien, and that the same are true and correct.

_Thomas J. Braswell, Jr._
THOMAS J. BRASWELL, JR., Affiant

Sworn to and subscribed before me on this the _4th_ day of February, 2005 by said Affiant.

Recorded In MISC BK 1274 PG 865, 02/04/2005 12:48:43 PM Recording Fee 8.00, TOTAL 8.00
BILL ENGLISH, PROBATE JUDGE, LEE COUNTY

[2]

*Sharon C. Braswell*
NOTARY PUBLIC
My Commission Expires: ____MY COMMISSION EXPIRES APRIL 16, 2008

This instrument prepared by:
Ronald W. Cooper
937 Opelika Road
Auburn, AL 36830
(334) 887-5632

# K. & B. OIL SUPPLY, INC.

1405 FIRST AVENUE
OPELIKA, AL 36801
TELEPHONE: 334-741-7075
FACSIIMLE: 334-741-4018

January 28, 2005

### NOTICE OF INTENT TO FILE LIEN

**SENT VIA CERTIFIED & REGULAR MAIL**

Whittelsey Properties, Inc.                    Cert. Mail #7003 2260 0000 9054 0295
P.O. Box 106
Opelika, AL 36803-0106

Manifold Construction, LLC                     Cert. Mail #7003 2260 0000 9054 0301
401 Willow Run Road
Auburn, AL 36832

RE: Parcel A, Sanders Creek Subdivision-Phase One, Plat Book 15, Page 146, consisting of
    62.478 acres, more or less, lying in S35 and 36, T20N, R26 East, Opelika, Alabama

Dear Sirs:

The purpose of this letter is to provide notice pursuant to Sections 35-11-210, et seq.,
Code of Alabama 1975 that K & B Oil Supply, Inc. claims and intends to file a mechanics' lien
against the real property and improvements thereon located on 62.478 acres, more or less, lying
in Section 35 and 36, Township 20 North, Range 26 East, more specifically described as:

> Parcel A, Sanders Creek Subdivision-Phase One, according to and as shown
> by that certain map or plat filed for record in Town Plat Book 15, at Page 146,
> in the Office of the Judge of Probate of Lee County, Alabama, consisting of
> 62.478 acres, more or less.

and claims a lien on any unpaid balance owing to Manifold Construction, LLC.

K & B Oil Supply, Inc. is owed the amount of $11,368.87 plus interest for material,
equipment and labor furnished to said property under a contract with Manifold Construction,
LLC. This material, equipment and labor were used in the construction of certain improvements
on said real property including delivery of fuel, oil and other supplies.

In accordance with Section 35-11-210, et seq. Code of Alabama 1975, any unpaid
balance owed to Manifold Construction, LLC shall be held by you subject to the lien of K & B
Oil Supply, Inc. claimed herein and may not be paid to Manifold Construction, LLC.

Notice of Intent to File Lien
Page 2
January 28, 2005

      If you wish to discuss this matter further, or if you wish to arrange payment in order to avoid the filing of said lien, please contact me at the number shown above.

Yours very truly,

K & B OIL SUPPLY, INC.

*Thomas J. Braswell, Jr.*

Thomas J. Braswell, Jr.
Vice President

TJB:scb

EXHIBIT

tabbies

F

STATE OF ALABAMA          )
                          :
LEE COUNTY                )

## AFFIDAVIT OF C. SHELDON WHITTELSEY, IV

Comes now C. Sheldon Whittelsey, IV, individually and as Secretary of

Whittelsey Properties, Inc., an Alabama Corporation, and after having been duly sworn

deposeth and saith as follows:

My name is C. Sheldon Whittelsey, IV, and I am an individual Alabama resident

residing in Auburn, Lee County, Alabama.  I am the Secretary of Whittelsey Properties,

Inc., an Alabama Corporation.  My father, namely; C. S. Whittelsey, III, and I own all of

the authorized, issued and outstanding stock of Whittelsey Properties, Inc.

I give this Affidavit, in part, in support of the Verified Motion for Temporary

Restraining Order; for Writ of Attachment and for a Preliminary and/or Permanent

Injunction filed in the Circuit Court of Lee County, Alabama, together with the Verified

Complaint filed in the Circuit Court of Lee County, Alabama, on today's date, against

Manifold Construction, LLC, Jack Manifold, and Melissa Manifold.  I based this

Affidavit on my own personal knowledge.

I have reviewed each and every allegation and averment contained within the

Verified Complaint, together with the Verified Motion for Temporary Restraining Order;

for Writ of Attachment and for a Preliminary and/or Permanent Injunction filed on behalf

of Whittelsey Properties, Inc.; C. Sheldon Whittelsey, III, and C. Sheldon Whittelsey, IV.

To the best of my information, knowledge and/or belief, each and every allegation and

averment contained therein is true and correct.

On or about the 28th day of May, 2004, I, individually and on behalf of Whittelsey Properties, Inc., executed an Acceptance of Proposal/Bid with Jack Manifold, individually, and/or on behalf of Manifold Construction, LLC. The principal amount of said Acceptance of Proposal/Bid was Six Hundred Forty Six Thousand Seven Hundred Twelve and No/100ths dollars ($646,712.00). This Acceptance of Proposal/Bid concerned and/or involved Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold's development, including but not limited to, the necessary site improvements for the subdivision and to obtain the appropriate governmental permits for Sanders Creek Subdivision - Phase Two. Whittelsey Properties, Inc., C. S. Whittelsey, III, and/or I have paid Manifold Construction, LLC, and/or Jack Manifold and/or Melissa Manifold the approximate sum of Seven Hundred and Four Thousand and No/100ths dollars ($704,000.00).

Sanders Creek is a residential subdivision development located in the City of Opelika, Lee County, and is owned by Whittelsey Properties, Inc.

Manifold Construction, LLC; Jack Manifold and/or Melissa Manifold, breached the terms and conditions of Whittelsey Properties, Inc., and my agreement with Manifold Construction, LLC; Jack Manifold and/or Melissa Manifold. The specifics of said breach are set forth in greater detail within the Verified Motion for Temporary Restraining Order, etc., being filed simultaneously herewith and specifically adopted herein.

Manifold Construction, LLC, Jack Manifold and Melissa Manifold made numerous misrepresentations of material fact upon which Whittelsey Properties, Inc., C. S. Whittelsey, III, and/or I relied on to our substantial detriment.

Said material misrepresentations include, but are not necessarily limited to, the following:

1.     Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold executed various Partial Waiver and Release of Lien Documents, representing and warranting, in part, that all laborers, materials, and supplies furnished by others to Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold in connection with the construction of Sanders Creek Subdivision - Phase Two had been fully paid.

2.     On or about the 30th day of November, 2004, Manifold Construction, LLC, and Jack Manifold, disclosed to Whittelsey Properties, Inc., C. S. Whittelsey, III, and me, that, despite specific and direct representations and warranties to the contrary, that all laborers, materials and supplies furnished by others to Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold, in connection with their construction of Sanders Creek Subdivision - Phase Two had not been paid in full.

3.     On or about the 30th day of November, 2004, Manifold Construction, LLC, and Jack Manifold, represented, in part, that Manifold Construction, LLC, was in the process of liquidating all company assets and would use the funds derived there from to pay the outstanding payables for the Sanders Creek project; would satisfy all lienable interest concerning the Sanders Creek project, and/or in the alternative would use funds expected to be received by Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold from other projects, and/or the sale of the Manifold Construction, LLC's, office building, maintained in the name of Melissa Manifold, and apply the proceeds from the sale thereof, less Fifty Thousand and No/100ths dollars ($50,000.00) to the outstanding payables on the Sanders Creek project.

4.      On or about the 30th day of November, 2004, Manifold Construction, LLC, and Jack Manifold further represented that Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold, could and would pay in full, Hertz, Best Rental, and Russo Corporation's bills for services/equipment provided for the Sanders Creek project, and would provide Whittelsey Properties, Inc., C. S. Whittelsey, III, and me a final Lien/Waiver from said entities.

The itemized representations set forth above, were further communicated to Whittelsey Properties, Inc., and me, by Jack Manifold and Melissa Manifold on or about the 1st day of December, 2004, in a meeting conducted at Manifold Construction, LLC's, place of business.

Despite the representations and/or misrepresentations set forth above, and as set forth within the Verified Complaint and Verified Motion for Temporary Restraining Order being filed simultaneously herewith, Manifold Construction, LLC, in or about December, 2004, and/or January, 2005, sold, transferred and/or assigned several valuable pieces of equipment for valuable consideration. Additionally, in or about December, 2004, and/or January, 2005, Melissa Manifold, transferred and/or assigned that certain tract of real property located at 221 Cook Street, Auburn, Alabama, for valuable consideration. Despite numerous representations and/or agreements to the contrary, the proceeds from these sales were not used to pay and/or satisfy the lienable interest concerning the Sanders Creek - Phase Two Development.

On information, knowledge and/or belief, Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold have transferred, sold, assigned and/or absconded with valuable assets belonging to Manifold Construction, LLC, Jack Manifold and/or Melissa

Manifold, and have failed to apply the proceeds from the sale, transfer and/or assignment thereof, to the lienable interest of various creditors concerning the Sanders Creek - Phase Two Development.

Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold have not paid and/or satisfied all lienable interest concerning the Sanders Creek - Phase Two Development and/or paid and satisfied all sub-contractors, material men and/or suppliers, including but not limited to, Hertz, Best Rental, and Russo Corporation, despite said entity and individuals representations and warranties that all sub-contractors, material men and/or suppliers had been paid and would be paid in full.

At least one Verified Lien has been filed against the Sanders Creek - Phase Two Development. Additionally, numerous entities have threatened the filing of liens against the Sanders Creek - Phase Two Development. I have been informed that Best Rental will file a lien against the Sanders Creek Development project during the week of February 21, 2005.

Whittelsey Properties, Inc., C. S. Whittelsey, III, and I will suffer serious and irreparable injury if Manifold Construction, LLC, Jack Manifold and/or Melissa Manifold are not restrained from further transferring, selling, assigning and/or absconding with the assets and/or things described in the Verified Motion for Temporary Restraining Order, including but not limited to, the inability of Plaintiffs to satisfy the judgment, ultimately to be returned against the Defendants in this cause of action. Said serious and irreparable injury further include, but is not limited to, the continued loss of substantial sums of money, the inability of Plaintiffs to satisfy and pay the lienable and non-lienable interest concerning Sanders Creek Subdivision - Phase Two; the additional filing of liens against

the Sanders Creek Subdivision – Phase Two; the inability of Plaintiff to sell lots in

Sanders Creek Subdivision – Phase Two; and other serious and irreparable injury and

damages.

Further, Affiant saith not.

C. SHELDON WHITTELSEY, IV

STATE OF ALABAMA    )

                      :

LEE COUNTY          )

      I, the undersigned Notary Public in and for said State, at Large, hereby certify that
C. Sheldon Whittelsey, IV, whose name is signed to the foregoing conveyance, who is
known to me, acknowledged before me on this day, that being informed of the contents
of this conveyance, he executed the same voluntarily on the day the same bears date.

      GIVEN under my hand, this 23rd day of February        , 2005.

Lori E. King

NOTARY PUBLIC
My Commission Expires: 10-23-2006

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

WHITTELSEY PROPERTIES,
INC., et al.,

    Plaintiff,

v.

MANIFOLD CONSTRUCTION,
LLC, et al.,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION: CV-05-137

## MOTION FOR LIMITED INTERVENTION
## BY OHIO CASUALTY INSURANCE COMPANY

Comes now Ohio Casualty Insurance Company ("Ohio Casualty") and moves the Court to allow it to intervene in this case for the limited purpose of procuring the Court to submit interrogatories to the jury relevant to the issue of its duties under two liability insurance policies issued to Defendant Manifold Construction, LLC ("Manifold"). As grounds therefore the Movant states as follows:

1.    According to the Complaint, the Plaintiffs are seeking several different elements of damage arising out of a construction project.

2.    Manifold was the named insured under policies of liability insurance ("the Policies") issued by the Movant for the policy periods June 7, 2003, to June 7, 2004, and June 7, 2004, to June 7, 2005, which, subject to various exclusions, cover only bodily injury and property damage caused by an occurrence as those terms are defined in the Policies.

EXHIBIT
"B"

3.     The Policies contain several exclusions, including exclusions which exclude coverage for expected or intended injury, property damage because of incorrectly performed work, property damage to work, and property damage arising out of defective, deficient, inadequate work or delay or failure to perform a contract or agreement.

4.     If the jury in this case holds the Defendants liable for expected or intended injury, or damage subject to the aforementioned exclusions, then the Movant would have no duty to indemnify the Defendants or its duty to indemnify would be limited.

5.     The Movant is currently providing a defense to the Defendants with a reservation of rights to deny coverage, and the Defendants' defense counsel cannot request the Court to submit interrogatories to the jury relating to insurance coverage issues.

6.     The jury's post-verdict answers to interrogatories regarding the basis of any verdict against the Defendants, if any, are necessary to determine the Movant's obligations under the Policies.

HUBBARD, SMITH, McILWAIN
BRAKEFIELD & BROWDER, P. C.

_____

Christopher Lyle McIlwain, MCI002
Attorneys for Ohio Casualty Insurance
Company
Post Office Box 2427
Tuscaloosa, AL 35403
Telephone: (205) 345-6789


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading upon the following counsel, by depositing same in the United States Mail with adequate postage prepaid thereon and properly addressed to them.

Davis B. Whittelsey
Whittelsey, Whittelsey & Poole, P.C.
P. O. Box 106
Opelika, AL 36803-0106

James Don McLaughlin
Davis & McLaughlin
324 E. Magnolia Avenue
Auburn, AL 36830

Bradley J. Smith
Clark, Dolan, Morse, Oncale & Hair, P.C.
800 Shades Creek Parkway, Suite 850
Birmingham, AL 35209

This the 13th day of March, 2006.

_____
Of Counsel

### Verdict

X___    We, the jury, find in favor of the plaintiffs and against the defendant, Manifold

Construction, LLC, on plaintiffs' wantonness claim.  Or…

___    We, the jury, find in favor of the defendant, Manifold Construction, LLC, on plaintiffs'

wantonness claim.

(Mark an "X" in the appropriate blank above.)

*Morris Oliver*
Foreperson

We the jury assess plaintiffs' compensatory damages at $ 275,000                 .

*Morris Oliver*
Foreperson

We, the jury, find the plaintiffs have proven their claim for punitive damages against the

following defendants:

X___    Manifold Construction, LLC, and assess punitive damages at $ ~~2,500,000~~ *$1,500,000 no*

X___    Jack Manifold, individually, and assess punitive damages at  $ 1,000,000.

(Mark an "X" in the appropriate blank above.)

*Morris Oliver*
Foreperson

We, the jury, find the plaintiffs have not proven their claim for punitive damages against the

following defendants:

___    Manifold Construction, LLC

___    Jack Manifold, individually

(Mark an "X" in the appropriate blank above.)

EXHIBIT
"C"

Foreperson _____

FILED

NOV 01 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

11/2/06 Judgment entered by
the Court
*[signature]*