IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06-cv-977-MEF |
| | ) | |
| MANIFOLD CONSTRUCTION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY BRIEF TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

COME NOW the Defendants, Whittelsey Properties, Inc. (hereinafter referred to as "Whittelsey Properties") and C.S. Whittelsey, IV (hereinafter referred to as "Sheldon"), and file this reply brief to Plaintiff's response to motion to dismiss.

## EXHIBITS

The following exhibits are referenced in further support of Defendants' motion to dismiss. The exhibits are attached hereto and incorporated herein by reference.

Exhibit D:     A certified portion of Trial Transcript from Civil Action No. CV-05-137 in the Circuit Court of Lee County, Alabama.

Exhibit E:     Ohio Casualty's Letter Brief dated April 20, 2006, in Civil Action No. CV-05-137 in the Circuit Court of Lee County, Alabama.

Exhibit F:     Motion for New Trial filed by Manifold Construction, LLC and Jack Manifold in Civil Action No. CV-05-137 in the Circuit Court of Lee County, Alabama.

**ADDITIONAL FACTS IN RESPONSE TO PLAINTIFF'S BRIEF**

On the 30th day of October, 2006, when the Defendants proceeded to trial against Manifold and Jack in the Lee County Case, McIllwain was present at each and every stage of the trial. After the jury was excused to return to the jury deliberation room, the trial court asked McIlwain if he would like to be heard on Ohio Casualty's motion. (Exhibit D, p. 59-60). McIlwain announced on the record that he wished to withdraw Ohio Casualty's motion for limited intervention. (Exhibit D, p. 60). Ohio Casualty's motion for limited intervention was not met with a stone wall in State Court, as contended by Ohio Casualty. (Plaintiff's Response Brief, p. 8). Defendant's offered no objection to Ohio Casualty's motion at trial. (Exhibit D, p. 60-61). Defendant's were not aware Ohio Casualty had filed the present action. Although Ohio Casualty's complaint is stamped filed October 31, 2006, the summons directed to Sheldon is dated November 7, 2006. See File in the present Action.

Ohio Casualty claims that its present action and its motion for limited intervention do not "mirror" each other as claimed by Defendants. (Plaintiff's Response Brief, p. 3, ¶ 8). However, Plaintiff's motion for limited intervention was filed to allow Ohio Casualty to submit post-verdict interrogatories to the jury, as the answers would be "necessary to determine [Ohio Casualty's] obligations under the Policies [of insurance issued to Manifold and Jack]" (Exhibit B, p. 2, ¶ 6), and the present action requests "the Court determine the rights and obligations of the parties under the policy of insurance as they relate to the underlying lawsuit;…" (Plaintiff's Complaint for Declaratory Judgment, p. 2, ¶ 1). In further support of is motion for limited intervention, Ohio Casualty addressed the trial judge in a letter brief dated April 20, 2006, stating: "[Y]ou will be the final arbiter on what interrogatories are propounded to the jury, and that answers to those interrogatories will effectively determine whether the Plaintiffs will

actually receive and compensation, I submit that intervention is an absolute necessity." (Exhibit E, pp. 2-3). The two requests are obviously similar.

## ARGUMENT

### I.     Waiver.

In response to the first issue raised in Defendants' motion to dismiss, Ohio Casualty argues that it did not file a declaratory judgment action in State court, but that it merely sought to intervene to submit interrogatories to the jury whose answers would be used in a later proceeding. (Plaintiff's Response Brief, p. 5). No allegation has been made that Ohio Casualty filed a declaratory judgment action in State court; however, the request for relief in its motion for limited intervention and its request for relief in the present action are very similar. (Exhibit B, p. 2, ¶ 6; Plaintiff's Complaint for Declaratory Judgment, p. 2, ¶ 1). The issues presented by Ohio Casualty in its complaint for declaratory judgment could have been resolved at the end of the trial in the Lee County Case; however, while the jury was waiting in the jury deliberation room, Ohio Casualty chose to withdraw its motion for limited intervention. By withdrawing its motion for limited intervention, Ohio Casualty waived any right it may have had to pursue a declaratory judgment as to the same issues raised in its motion for limited intervention.

Ohio Casualty next argues that Defendant's are judicially estopped from moving to dismiss this action. (Plaintiff's Response Brief, p. 5). In the case cited by Ohio Casualty, New Hampshire v. Maine, 532 U.S. 742 (2001), the Court held that for judicial estoppel to apply "First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled,…"

A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 750-751 (citations omitted). As set forth above, the trial court did not deny Ohio Casualty's motion for limited intervention, it took the motion under advisement. When the trial court asked McIlwain if he would like to be heard on Ohio Casualty's motion, he announced on the record that he wished to withdraw Ohio Casualty's motion for limited intervention. (Exhibit D, p. 59-60). Being unaware of the present action, Defendant's offered no objection to Ohio Casualty's motion at trial. (Exhibit D, p. 60-61). There never was a ruling by the trial court. Ohio Casualty's reliance on judicial estoppel in the present case is misplaced.

Ohio Casualty chose to avoid the most cost effective avenue to resolve the issues raised in its motion for limited intervention and complaint for declaratory judgment. Ohio Casualty waived any right it may have had to pursue the present litigation; therefore, Ohio Casualty's complaint for declaratory judgment is due to be dismissed.

## II. <u>Ameritas</u> Factors.

In response to the second issue raised in Defendants' motion to dismiss, Ohio Casualty argues that <u>Ameritas Variable Life Ins. Co. v. Roach</u>, 411 F.3d 1328 (11thCir. 2005) is not applicable to the present case as "none of the circumstances present in <u>Ameritas</u> are present in the instant action." (Plaintiff's Response Brief, p. 6). Of the nine factors enumerated in <u>Ameritas</u>, several are present in this action:

"(1)    [T]he strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;…" <u>Id.</u>, at 1331. Alabama does have an interest in having the issues raised in the present action determined by state courts, hence the Alabama Direct Action Statute.

4

"(3)     [W]hether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;…" Id.  The clarifying of issues could have been taken care of in State court at the end of the trial, and they can still be clarified in State court if suit under Alabama's Direct Action Statute is required.

"(4)     [W]hether the declaratory remedy is being used merely for the purpose of 'procedural fencing'-that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;…" Id.  Ohio Casualty did not like the way things were going at trial so it withdrew its request to submit interrogatories to the jury, and the race to the court house ensued to beat the time of filing under Alabama's Direct Action Statute.  Ohio Casualty notes that the Defendants have not invoked their right under the direct action statute (Plaintiff's Response Brief, p. 6, Note 4); however, before filing pursuant to Alabama's Direct Action Statute the judgment in the trial court must be final.  See Ala.Code 1975 § 27-23-2.  Several post trial motions are pending, including the motion for new trial filed by Manifold and Jack.  (Exhibit F).  The judgment in State court is not final.

"(5)     [W]hether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;…" Id.  There could be increased friction if the Federal Courts take a case like the present one that could have been resolved, or substantial questions could have been answered, in the trial court or through Alabama's Direct Action Statute.

"(6)     [W]hether there is an alternative remedy that is better or more effective;…" Id. Suit pursuant to the Alabama Direct Action Statute would be better and more efficient.

"(7)     [W]hether the underlying factual issues are important to an informed resolution of

the case;…" Id. An understanding of the underlying factual issues is important to an informed resolution of the case. Obviously the Judge presiding over the State court proceedings is most familiar with the facts in this case. The facts presented at trial in State court are the facts determinative of the coverage issues.

"(8)    [W]hether the state trial court is in a better position to evaluate those factual issues than is the federal court;…" Id. The State court would be in a better position to evaluate those factual issues, as it presided over the trial.

Under scrutiny of the Ameritas factors, Ohio Casualty's complaint for declaratory judgment is due to be dismissed.

**III.    Ala.Code 1975 § 6-5-440.**

In response to the second issue raised in Defendants' motion to dismiss, Ohio Casualty argues that Ala.Code 1975 § 6-5-440 is not applicable to the present case. In support of this argument, Ohio Casualty argues that its motion for limited intervention has been withdrawn. However, at the time Ohio Casualty filed its complaint in the case at bar, Plaintiff still maintained its motion to intervene in the Lee County Case. Defendant's were not aware Ohio Casualty had filed the present action. Ala.Code 1975 § 6-5-440 requires dismissal of Ohio Casualty's complaint.

WHEREFORE, THE PREMISES CONSIDERED, Defendants pray this Honorable Court will dismiss Plaintiff's complaint for declaratory judgment.

Respectfully submitted this the 28th day of December, 2006.

WHITTELSEY, WHITTELSEY & POOLE, P.C.


_____/s/ Davis B. Whittelsey_____
BY:    DAVIS B. WHITTELSEY (WHI067)
          E-mail:dwhittelsey@wwp-law.com

6

<u>/s/ Robert G. Poole</u>

BY:    ROBERT G. POOLE (POO014)
       E-mail: bpoole@wwp-law.com
       Attorneys for Defendants
       Post Office Box 106
       Opelika, Alabama 36803-0106
       Tel.:    (334) 745-7766
       Fax:    (334) 745-7666

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document on the parties listed below electronically or by placing a copy of the same in the United States mail, postage prepaid, to their correct address on this the 28th day of December, 2006.

Christopher Lyle McIlwain
HUBBARD, SMITH, MCILWAIN, BAKERFILED & BROWDER, P.C.
Post Office Box 2427
Tuscaloosa, Alabama 35403

Bradley J. Smith
CLARK, DOLAN, MORSE, ONCALE & HAIR, P.C.
800 Shades Creek Parkway
Suite 850
Birmingham, Alabama 35209

James D. McLaughlin
DAVIS & MCLAUGHLIN
324 East Magnolia Avenue
Auburn, Alabama 36830

/s/ Robert G. Poole
ROBERT G. POOLE

**ORIGINAL**                                    1

1                    IN THE CIRCUIT COURT

2                            OF

3                    LEE COUNTY, ALABAMA

4

5    WHITTELSEY PROPERTIES, INC.,

6              Plaintiff,

7    vs.                              CIVIL ACTION AT LAW

8                                     CASE NO. CV-05-137

9    MANIFOLD CONSTRUCTION, LLC,
     et al.,

10

11             Defendant.

12

13              *  *  *  *  *  *  *  *  *  *

14

15         PROCEEDINGS BEFORE THE HONORABLE BRADY

16   E. MENDHEIM, reported by Shannon M. Williams,

17   Certified Shorthand Reporter and Commissioner for

18   the State of Alabama at Large, in Courtroom One

19   at the Lee County Justice Center, 600 Gateway

20   Drive, Opelika, Alabama, on Thursday, November 2,

21   2006, commencing at approximately 9:00 a.m..

22

23              *  *  *  *  *  *  *  *  *  *

24

25

EXHIBIT
D
Bumberg No. 5208

```
 1                      APPEARANCES

 2

 3      FOR THE PLAINTIFF:

 4      DAVIS B. WHITTELSEY
        ROBERT G. POOLE
 5      Whittelsey, Whittelsey & Poole
        600 Avenue A
 6      Opelika, Alabama  36801

 7      FOR THE DEFENDANT:

 8      BRADLEY J. SMITH
        ERIC D. BONNER
 9      Clark, Oncale, Hair & Smith, PC
        800 Shades Creek Parkway, Suite 850
10      Birmingham, Alabama  35209

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Whereupon, the proceedings

2              commenced as follows:)

3    THE COURT:  The jury, through the

4              bailiff, has sent me the following

5              questions.  Question one:  Please

6              explain the verdict form.  It

7              seems unclear.

8              Number two:  Should we find

9         two figures on the fraud charge,

10        one for Manifold and one for Jack

11        Manifold -- Manifold Construction,

12        and one for Jack Manifold?

13             And three:  Are mental anguish

14        damages and punitive damages --

15        are mental anguish and punitive

16        damages separate?

17             That one's pretty easy to

18        answer, the third.  But I guess

19        while they're taking a break --

20   MR. WHITTELSEY:  Read the first

21             question again, Your Honor?

22   THE COURT:  Please explain the verdict

23             form.  It seems unclear.

24   MR. POOLE:  This is it.

25   MR. WHITTELSEY:  Go ahead.  The second

```
 1              question?

 2    THE COURT:  The second, should we find

 3              two figures on the fraud charge,

 4              one for Manifold Construction and

 5              one for Jack Manifold?

 6    MR. WHITTELSEY:  The answer is yes.

 7    THE COURT:  You could, yes.

 8              Would the damages be separate

 9              or would it be the same amount?

10    MR. WHITTELSEY:  On what?

11    THE COURT:  That question number two.

12    MR. WHITTELSEY:  It would be separate.

13    THE COURT:  It could be separate.

14    MR. WHITTELSEY:  They would have to be

15              separate because you've got a

16              fraud count against him as

17              individual defendant and fraud

18              count against Manifold

19              Construction, LLC, as a defendant.

20    THE COURT:  I got you, yes.

21    MR. WHITTELSEY:  Then the third

22              question is quite easy.  No.

23    THE COURT:  Yes.

24    MR. WHITTELSEY:  So I guess what we

25              do --
```

```
 1    THE COURT:  Where is the verdict form?
 2        I probably need to talk to them
 3        and make sure that I understood
 4        what they think is unclear.
 5    MR. POOLE:  Let me ask this question of
 6        everybody.
 7    THE COURT:  Let me see the verdict
 8        form.  Thank you.
 9    MR. POOLE:  We have a judgment as a
10        matter of law as to negligence
11        against the company, wantonness
12        against the company.
13    MR. SMITH:  No.
14    MR. BONNER:  Wantonness is a question
15        of fact and then there's not
16        wantonness as to Manifold.
17    MR. POOLE:  Innocent and reckless fraud
18        against both of them?  Those are
19        judgments as a matter of law?
20    MR. BONNER:  Yes.
21    THE COURT:  Let me ask y'all this.  I
22        was thinking -- I could be wrong,
23        but I thought wantonness only went
24        as to Manifold Construction.
25    MR. WHITTELSEY:  It does.
```

```
 1        THE COURT:  But the verdict form says
 2              we, the jury, find in favor of the
 3              plaintiffs and against the
 4              defendant Manifold Construction,
 5              LLC, and Jack Manifold
 6              individually.
 7        MR. WHITTELSEY:  We need to take that
 8              out.
 9        MR. POOLE:  That includes the fraud,
10              though, with the compensatory
11              damages.
12        MR. BONNER:  Maybe what we need to do
13              is just put an addition in there
14              as to the wantonness.
15        MR. POOLE:  And then we can do
16              separate -- you can do a separate
17              claim.
18        THE COURT:  We probably need a verdict
19              form for the defense on the
20              wantonness claim.  We don't have
21              it.
22        MR. SMITH:  Right.  That was my
23              concern.
24        MR. POOLE:  Okay.  So you want to
25              change it to where we just add the
```

1    wantonness in there or that they

2    find against each individual

3    defendant a certain amount?

4    THE COURT:  I think we need to change

5        the first verdict form on here to

6        take Jack Manifold individually

7        out of it and then, otherwise, I

8        think it's okay.  I'll tell them

9        that's --

10   MR. POOLE:  Use that red pen and make

11        marks on it and I'll fix it.  Are

12        we going to do a separate one for

13        fraud?

14   THE COURT:  I'm going to do it one at a

15        time.  I'm going read back to

16        y'all how I'm going to change --

17        again, we'll talk to them and make

18        sure we change the verdict form on

19        the first one.  It will read:  We,

20        the jury, find in favor of the

21        plaintiffs on their wantonness

22        claim and against the defendant

23        Manifold Construction, LLC, and

24        assess the plaintiffs'

25        compensatory damages at blank.

1    MR. POOLE:  Say that again.

2    THE COURT:  We, the jury, find in favor

3        of the plaintiffs on their

4        wantonness claim and against the

5        defendant Manifold Construction,

6        LLC, and assess the plaintiffs'

7        compensatory damages at blank.

8    MR. POOLE:  That's going to be the new

9        thing under the first one.  I

10        mean, that first part covers

11        negligence and fraud.

12    THE COURT:  I thought we had a judgment

13        as a matter of law on negligence

14        and fraud.

15    MR. POOLE:  I know.  But they have to

16        assess damages somewhere.  And

17        that's why we -- there's no

18        checkmark for which one you find

19        against on that one.  They've

20        already -- that's why we had that

21        one, that liability is found on

22        that one.  See what I'm saying?

23    **THE COURT:  I think we need to seperate**

24        **that wantonness out and then do**

25        **another verdict form.  We need to**

1    do an additional verdict form that

2    simply says we, the jury, find in

3    favor of the defendant Manifold

4    Construction, LLC, on the

5    plaintiffs' claim of wantonness

6    because we did charge specifically

7    on -- it's up to them on that

8    issue.

9    MR. POOLE:  But do we want to separate

10    out how they are to assess damages

11    in the fraud claim?

12    THE COURT:  I think then we need a

13    third verdict form that says we,

14    the jury, assess compensatory

15    damages against Manifold

16    Construction, LLC, at blank.  They

17    have got to put a figure on that

18    one.  That's going to be the fraud

19    and the negligence.

20    MR. WHITTELSEY:  Got to read that to me

21    again, Judge.  Your proposal is?

22    MR. POOLE:  You want to come stand over

23    my shoulder while we're in front

24    of the computer?

25    THE COURT:  Let me tell you the

1    problem.  What I just wrote out

2    would be a third possible verdict

3    form:  We, the jury, assess

4    compensatory damages against

5    Manifold Construction, LLC, at

6    blank.  Okay.  I think if we do

7    that, I need to take out entirely

8    the verdict form that reads we,

9    the jury, find in favor of the

10   plaintiffs on their wantonness

11   claim and against the defendants

12   Manifold Construction, LLC, and

13   assess damages at -- compensatory

14   damages at blank.  Get rid of that

15   one.

16        So, therefore, if -- and then

17   do another one that simply says

18   we, the jury, find in favor of

19   Manifold -- defendant Manifold,

20   LLC, on the plaintiffs' wantonness

21   claim.

22        All right.  Here's what I

23   would -- Forget anything I just

24   said.  I'm now proposing the first

25   two verdict forms.  The first one,

1    again in no specific order, to:

2    We, the jury, find in favor of the

3    defendant Manifold Construction,

4    LLC, on the plaintiffs' wantonness

5    claim.

6        The second one:  We, the jury,

7    find in favor of the -- we, the

8    jury, find in favor of the

9    plaintiffs on the wantonness

10   claim -- and at that point

11   assess.

12       Do a third one that says:  We,

13   the jury, assess compensatory

14   damages against defendant

15   Manifold, LLC, at blank.

16       I would charge the jury you

17   have to answer that -- you've got

18   to put some figure there.  We will

19   know whether wantonness is

20   included or not based on the

21   answer to the first two

22   questions.  But regardless of yes

23   or no, they've still got to assess

24   a figure.  So we will know, you

25   know, based on that.

1        And then, let's see the one
2      about punitive.  Then I think the
3      other two about punitives are
4      okay.
5    MR. POOLE:  Do you want to do a
6      separate compensatory for Jack
7      or --
8    MR. WHITTELSEY:  No.  Why would you --
9    MR. POOLE:  Because they asked about
10     assessing different damages on
11     fraud.
12   THE COURT:  Jack is in there only on
13     the fraud claim.  So we do need a
14     different one for Jack.
15   MR. WHITTELSEY:  Yes, but not on
16     compensatory.  Only for the fraud.
17   MR. POOLE:  For the fraud, yes,
18     compensatory and punitive.
19   MR. WHITTELSEY:  That's true.
20   THE COURT:  Let me go with what you've
21     got there.  The one for Jack on
22     the fraud claim.
23   MR. POOLE:  We can just do, we assess
24     compensatory damages against
25     Manifold, LLC, at blank.

1          We assess compensatory damages

2          against Jack Manifold at blank.

3          And we know the only thing against

4          Jack is the fraud and that's what

5          they were charged on, so that

6          ought to be okay.

7     THE COURT:  I'm going to put, in

8          parentheses, fraud on Jack so that

9          I know as well, because I keep

10         forgetting actually.

11    MR. WHITTELSEY:  That's fine with the

12         plaintiffs.

13    THE COURT:  That's a question that must

14         be answered also.  They have got

15         to put a figure there on Jack, and

16         that's the one that just for the

17         Record, I'm still not necessarily

18         convinced of, but I thought it

19         would be better to go ahead and

20         put it in.  It's easier to knock

21         it out in a post-judgment motion.

22    MR. SMITH:  Which one?

23    THE COURT:  On Jack Manifold

24         individually on the fraud claim.

25         So leave the two punitive forms.

1    We think that's okay?  I'm going

2    to leave the two punitive forms

3    like you have it on here.  Then

4    I'm going to add four additional

5    verdict forms.

6        We, the jury, find in favor of

7    defendant Manifold Construction,

8    LLC, on the plaintiffs' claim of

9    wantonness.  Just yes or no.

10       We, the jury, find in favor --

11   well, find in favor of the

12   plaintiffs on the wantonness

13   claim.  Those would be the first

14   two forms.

15   MR. POOLE:  You want that something

16       where they just check it?

17   THE COURT:  Yes.  I think that's fine.

18       Just do a check.  Don't do a yes

19       or no because that's going to be

20       further confusion.

21   MR. POOLE:  They will just have to

22       check one or the other.

23   THE COURT:  Right.

24       Then we, the jury, assess

25       compensatory damages against

1       Manifold Construction, LLC.

2       That's number three.

3         Number four:  We, the jury,

4       assess compensatory damages

5       (fraud) against defendant Jack

6       Manifold individually at blank,

7       number four.

8         Then the punitive clauses will

9       be five and six.

10  MR. POOLE:  Do we want to separate

11      amounts for punitive damages?  I

12      mean, so there's a punitive

13      against Jack, punitive against

14      Manifold, so if he was to go out

15      on a post-verdict motion?

16  MR. WHITTELSEY:  See, I have a problem

17      with that, I mean, because the

18      defendants are jointly and

19      severally liable for the

20      judgment.  I don't know why you're

21      breaking it apart.  I'm kind of

22      reversing myself on breaking apart

23      the fraud or compensatory on --

24  THE COURT:  But, actually, the way

25      you've written what will now be

1    verdict form five, they do choose

2    whether to assess punitive damages

3    against Jack or not.

4    MR. POOLE:  Yes.  Okay.

5    THE COURT:  So they circle.

6    MR. POOLE:  Right.

7    MR. WHITTELSEY:  But they are jointly

8        and severally liable, okay.

9        There's no contribution among

10       joint tortfeasors, so you've got

11       the same actions.  Why are we

12       separating out punitive damages?

13   MR. POOLE:  We're not.

14   MR. WHITTELSEY:  The question is:  Do

15       you find Jack Manifold as guilty

16       of fraud individually?  If they

17       do, then whatever damages

18       proximately flow from that fraud

19       go to either/or, go to both.

20   THE COURT:  That's just it.  I'm not

21       convinced that Jack is

22       individually liable on the fraud

23       claim.  They had asked me to throw

24       it out.  For that single reason

25       and perhaps others, but I know

1    that reason.

2    MR. WHITTELSEY:  Well, so what?  So if

3    you throw out Jack individually on

4    the fraud on a post-verdict and

5    you don't throw it out against

6    Manifold, the judgment -- the

7    number still sticks because

8    they're jointly and severally

9    liable.  It's the same action.

10    It's identical.

11    THE COURT:  You're probably right, but

12    I think just --

13    MR. SMITH:  I would like to see it

14    typed up.  I think the only thing

15    that may be of concern is they may

16    think, well, they can double up

17    the compensatory damages.  That

18    would be the only problem.

19    MR. WHITTELSEY:  There's another

20    reason.  So why go into two

21    blanks?  I mean, they either find

22    that Jack is liable for fraud

23    individually or they don't.

24    THE COURT:  I've already ruled as a

25    matter of law at this point that

1    Jack committed a legal fraud.  But

2    I'm not -- But what I'm saying on

3    the issue about him versus the

4    corporation, that's what causes me

5    concern.

6    MR. WHITTELSEY:  But why are we

7    severing damages?  Why does it

8    matter?  Because they're jointly

9    and severally liable.

10   MR. POOLE:  He's right about that.

11   THE COURT:  I'm still not convinced of

12   the correctness of my ruling on

13   that issue.  I want to be able, on

14   my post-judgment motion, to go

15   ahead and take him out.

16   MR. WHITTELSEY:  But you still could,

17   because there's no question in

18   Alabama that Jack and Manifold

19   Construction, whatever the figure

20   is, are jointly and severally

21   liable under the fraud count for

22   compensatories and punitives.  So

23   if you have one figure, number

24   one, you avoid any question of

25   there being a duplicity of

1    recovery.  And if the Court gets
2    satisfied in post-trial motions
3    that Jack should not have gone in
4    as a defendant on the fraud case,
5    you simply direct verdict for him
6    or you dismiss it against him; the
7    judgment remains against the
8    corporation because the number is
9    joint and several liability.  It
10   does not matter.  Putting two
11   numbers down doesn't make sense.
12   MR. POOLE:  What he's saying is with
13       the two numbers down, that would
14       be doubling damages, which you
15       don't want.
16   THE COURT:  On the fraud claim only.
17   MR. WHITTELSEY:  It doesn't make sense
18       because all you've got to do is
19       throw Jack out.  Fraud claim only,
20       that's right.
21   THE COURT:  Isn't it written up so if
22       there were punitive damages to
23       double up?
24   MR. POOLE:  Punitive damages are where
25       you choose both one or the other

1    or neither.

2    THE COURT:  And you're punishing both

3       separately.

4    MR. SMITH:  Correct.

5    MR. WHITTELSEY:  But why would we do

6       that?  Because they're jointly and

7       severally liable anyway.  Okay?

8    MR. POOLE:  Because the question on

9       punitive damages is whether -- he

10      just does the judgment as a matter

11      of law as negligence and fraud.

12      Correct?

13   THE COURT:  Right.

14   MR. POOLE:  Wantonness was a question

15      for the corporation, but the

16      question for punitive damages, we

17      don't have a judgment as to a

18      matter of law on punitive damages,

19      so they have to decide we provided

20      clear and convincing evidence

21      against both one or the other or

22      neither, and they will circle.  So

23      you're not going to take out the

24      punitive damages -- I mean, you're

25      not going to separate punitive

```
 1              damages.  They will tell us who
 2              they're assessing the punitive
 3              damages against.
 4       THE COURT:  I prefer, just my overall
 5              thought process -- unless it gets
 6              too confusing for the jury and for
 7              us -- I prefer to have a little
 8              bit too much information that I
 9              can just ignore later if you're
10              right, which you may well be.  And
11              then if you're right on that other
12              issue, I think I can fix that
13              without creating any other issues.
14       MR. POOLE:  Well, see, I -- This is
15              where I agree with Davis.  I think
16              you need to have one number for
17              compensatory damages and you need
18              to charge them that these people
19              can only be compensated -- I mean,
20              their damages are what their
21              damages are.  I think if you have
22              two separate compensatory
23              damages --
24       THE COURT:  I don't think we do.
25       MR. POOLE:  -- that'll confuse them.
```

1          No.  You said you wanted to assess

2          Jack, what you're going to find

3          are just compensatory damages

4          against Jack Manifold on the fraud

5          case.  See, on your second one on

6          the yellow sheet there?

7  MR. WHITTELSEY:  Guys, the defendants

8          are jointly and severally liable

9          period, and so --

10  THE COURT:  I don't think the

11          compensatory is really the

12          problem.

13  MR. POOLE:  Yes.  You don't need to

14          double that.  That's what I'm

15          saying.

16  MR. WHITTELSEY:  You don't want to

17          split it.  You're inviting error.

18  THE COURT:  I think we're going to need

19          two separate lines with dollar

20          signs for Jack and Manifold on

21          punitive.

22  MR. POOLE:  Davis?  You hear that?

23  MR. WHITTELSEY:  I did.

24  MR. POOLE:  Okay.  That's fine.

25  MR. POOLE:  I'll do a checkmark-type

1    thing on them.  I'll change it

2    that way.

3    THE COURT:  Try that.

4         (Recess in proceedings from

5    9:22 until 10:03 a.m.)

6    THE COURT:  Let's go ahead and bring

7    them back in, please.

8         (Jury enters courtroom.)

9    THE COURT:  Good morning again.  Let me

10    start out by apologizing for

11    keeping y'all back here.  We have

12    been and, in fact, are still

13    working on some of the questions

14    that y'all have raised.  We think

15    we almost have the issue about the

16    verdict forms resolved.

17    We did want to consult with

18    you and make sure that you didn't

19    have some of the same questions

20    that we realized that we had once

21    y'all came back and also slept on

22    it overnight.

23    That first verdict form,

24    through nobody's fault or all

25    three of our fault, theirs and

1    mine -- and, ultimately, the buck

2    stops with me, it's my decision --

3    sent back to you a very poorly

4    written verdict form.  And I

5    apologize for that.  That is my

6    fault.  We are redoing the verdict

7    forms.

8         There's about one or two

9    issues that we're still trying to

10   work through to get that done.

11   But to go through some of the --

12   Let me talk for a second about a

13   couple of the other questions that

14   you had and come back to the

15   verdict forms.

16        The one about the third

17   question y'all wrote was, are

18   mental anguish and punitive

19   damages separate.  Is that still

20   an issue that y'all want me to

21   respond to?

22   THE FOREPERSON:  Yes.

23   THE COURT:  The short answer is yes.

24        But understand, where mental

25   anguish damages come in are on

compensatory damages.  It is one element of compensatory damages. You have to reach a number on compensatory damages in this case.  That has to be done.  I want to be clear on that.  The amount is totally up to you based on the evidence.

When it comes to mental anguish damages, however, the law states that there is no way that anybody could put a specific figure, for instance, like you can on -- you know, if somebody you know steals a car, you can put a pretty specific figure on the value of that car.  But mental anguish damages are something that the law says that -- and you're not, you know -- and the attorneys aren't expected to put a specific figure.  But rather, it is for you to consider and you to decide based on all of the evidence in this case.

1    You can choose not to give any

2    mental anguish damages and that

3    would be your decision, or you can

4    put a figure.  When your verdict

5    comes back, we will never know

6    specifically whether y'all awarded

7    that or not because that question

8    is not asked of you.  But it is

9    just, in fact, with anything to do

10   with compensatory damages, we will

11   not know how y'all arrived at that

12   figure.

13       In theory, you know, we may be

14   able to sit back down and go

15   through in tedious detail and

16   figure it out, but that's really

17   not important to us.  We're just

18   interested in that final figure

19   that y'all arrive at.

20       And punitive damages are a

21   separate issue.  And just -- and

22   there is no specific monetary

23   figure put on that either.  It

24   just -- it is discretionary with

25   you.  You do have the right,

1    unlike compensatory damages, to

2    give zero on punitive.  You're not

3    being charged that you have to

4    award punitive damages.  Rather,

5    if you determine, by clear and

6    convincing evidence under that

7    higher burden of proof that I went

8    over with you yesterday, then you

9    may award punitive damages, and

10   there will be a form on that on

11   the verdict form.

12        On the verdict form, I guess

13   I'll ask it to the Foreman,

14   anything specific that y'all had a

15   problem with?  I think we all may

16   have had the same problems, but

17   I'm trying to find out if there's

18   something different.  And we're

19   working on redoing the verdict

20   form.  But anything y'all want to

21   at this point --

22   THE FOREPERSON:  The wording of the

23        last section was almost

24        contradictory in our minds and the

25        whole thing was rather ambiguous.

1        THE COURT:  We're completely revamping,
2                  redoing the verdict form.  At this
3                  point, just ignore everything to
4                  do with that old verdict form.
5                  Any other questions that y'all
6                  have other than the verdict form
7                  at this time?
8        THE FOREPERSON:  Yes.  The damages
9                  between Jack Manifold -- well, the
10                 judgments against Jack Manifold
11                 himself and the judgments against
12                 the corporation itself, there was
13                 some question on the way it was
14                 worded on the form as -- I'm
15                 trying to remember exactly how it
16                 was worded, but we were unsure as
17                 to what applied.
18        THE COURT:  Right.  That is one of the
19                 issues we're still contemplating
20                 or working actively on redoing the
21                 verdict forms.  Give us hopefully
22                 just a few more minutes.
23                 Actually, what takes a little bit
24                 of time is we do like to type
25                 these up, not just that it looks

```
 1              nice, but you won't be able to
 2              read any of our handwriting in
 3              such a way -- I am going to bring
 4              you back in when we finish with
 5              that new verdict form and go back
 6              over it with you, and that should
 7              address that issue.  Anything
 8              else?
 9    THE FOREPERSON:  Yes.  Could you reread
10              us the definition of wantonness?
11    THE COURT:  Wantonness.  Wantonness.
12              I've packed all this up.  Okay.
13              Wantonness is the conscious doing
14              of some act or omission, under
15              knowledge of existing conditions,
16              and consciousness that, from the
17              doing of such act or omission of
18              such duty, an injury will likely
19              or probably result.  Before a
20              party can be said to be guilty of
21              wanton conduct, it must be shown
22              that with reckless indifference to
23              the consequences, he either
24              consciously and intentionally did
25              some wrongful act or consciously
```

omitted some known duty which produced injury.

When I charged you, because it's easier for me -- and I hope for the jury, I always break that down into elements numbered one, two, three, each to your reasonable satisfaction. Let me give you that again also.

The breakdown of those sentences that I just read stated another way: If the plaintiff proves each of these three things to your reasonable satisfaction, then you would return a verdict of wantonness. If any one or more is not proven to your reasonable satisfaction, you could -- excuse me -- you could not return a verdict for the plaintiffs on wantonness, and you would have to return a verdict in favor of the defendant Manifold Construction, Incorporated, on wantonness.

The first element is the

1    conscious doing of an act or
2    omission; second, knowledge of the
3    existing conditions; and, three,
4    conscious or aware that such act
5    or omission will likely result in
6    damages.  Is that okay?
7    THE FOREPERSON:  Yes.  And could you
8    also read the definition for fraud
9    and negligence?
10   THE COURT:  Okay.  Now, keep in mind
11   that on the fraud and negligence
12   we have already ruled as a matter
13   of law based on Jack Manifold's
14   candid admissions on the witness
15   stand.  While he may not -- Those
16   are legal terms of art.  But what
17   he admitted to, he admitted
18   liability on those issues, so
19   that's not for your
20   consideration.  Not that I
21   wouldn't mind reading it to you,
22   but you, the jury, are not free to
23   go back there and say that Jack
24   Manifold or Manifold,
25   Incorporated, is not guilty of

1    fraud or negligence.  Legally,

2    that was admitted in open court,

3    and so really the only issue is

4    damages.  He has not admitted to

5    the damages that the plaintiffs

6    are claiming.  They have admitted,

7    I think I'm not mistaken, to

8    saying this to some damages but

9    not to what the plaintiffs are

10   claiming.  So that is an issue in

11   dispute for you to determine both

12   as to compensatory damages.  And

13   he has not admitted liability for

14   punitive damages at all, so that

15   would also be for your

16   consideration.

17        Anything else other than the

18   verdict form issues that I can

19   help y'all with at this time?

20   THE FOREPERSON:  That's it, I believe.

21   MR. SMITH:  Judge, may I approach real

22        quick?

23   THE COURT:  I need to consult with the

24        attorneys first on what I just

25        told you.

1          (Bench conference held out of

2              the hearing of the jury.)

3      MR. POOLE:  If we could have that jury

4          charge 16 and 18 read, that it

5          does not have to be intentional

6          and --

7      THE COURT:  That's what I was looking

8          for, H.  I didn't throw anything

9          away.  Because that was a good

10         charge.

11

12     MR. SMITH:  Judge, I would just ask in

13         response to the questions about

14         the damages against Jack and

15         Manifold, that they be instructed

16         that the compensatory damages go

17         to both the corporation and to him

18         individually.  I don't think that

19         was clear.

20     THE COURT:  I thought -- well, what --

21         I thought Davis was thinking about

22         just dropping --

23     MR. SMITH:  That's on punitive.  I

24         think the compensatory damages, I

25         don't think that was clear.

1   MR. WHITTELSEY:  We're not going to

2       drop the punitive.  I'm working on

3       the verdict form.

4   THE COURT:  But the compensatories

5       would be the same --

6   MR. SMITH:  But I don't think they

7       understood that they were going to

8       both the corporation and to the

9       individual.

10  THE COURT:  -- whatever figure they

11      arrived at.

12  MR. POOLE:  I think he's asking you to

13      instruct them that compensatory

14      damages are what they are.  You

15      can only compensate one time.  I

16      think that's what --

17  MR. SMITH:  But they are as to both the

18      corporation and the individual --

19  THE COURT:  Okay.  I'll do that.

20  MR. SMITH:  -- in response to their

21      question.

22  THE COURT:  Any problem with that?

23  MR. POOLE:  No.  That's fine.

24          **(Return to open court.)**

25  THE COURT:  Let me mention two other

1    matters.  Back to the wantonness

2    charge that I gave you -- and I

3    couldn't lay my hands on it and I

4    did just find it -- but this is a

5    good and correct statement of the

6    law.  To prove wantonness, it is

7    not essential for the plaintiff to

8    prove that the defendant

9    entertained a specific decision or

10    specific intent to injure the

11    plaintiff.  Okay.

12        Now then, also let me mention

13    to you -- and this will also come

14    back in the verdict form on the

15    issue about compensatory damages

16    against --  Yes, sir?

17    THE FOREPERSON:  Could you repeat the

18        last statement about wantonness,

19        please?

20    THE COURT:  Yes.  To prove wantonness,

21        it is not essential or required

22        that the plaintiff prove that the

23        defendant entertained a specific

24        design or specific intent to

25        injure the plaintiff.  But keep in

mind, it is more than mere negligence, just breaching a duty.  It requires a consciousness or an awareness in the mind of the circumstances based on the elements that I outlined to you. Everybody got that on the wantonness?

On the issue about compensatory damages between Manifold, Incorporated, and Jack Manifold individually, you will only award one figure that will be applied to both of them. Technically under Alabama law -- I don't want to further confuse it, so if you think this confuses you, put it out of your mind.

But in this situation, they are both called jointly and severally liable.  You can't distinguish the two under these circumstances.  For instance, the contracts that -- with the mental anguish damages with Sheldon

1      Whittelsey and his company, you

2      can distinguish those two.  Not

3      that that's necessarily important

4      on the issue of mental anguish,

5      even though basically Sheldon

6      Whittelsey and his company are one

7      and the same, just like Jack

8      Manifold and Manifold Construction

9      are the same, on some issues they

10     go completely together.  All

11     issues regarding compensatory

12     damages in this case, they will go

13     together.  Punitive damages will

14     be different.  And I'll discuss

15     that when we get the verdict forms

16     rewritten to address that issue.

17        So -- and I don't want to even

18     throw out just any specific

19     figure, but whatever -- you will

20     arrive at a figure.  You are being

21     charged to do that.  And the blank

22     for that is just going to have one

23     blank but refer to both

24     defendants.  So it's going to be

25     one amount.  And that's how you

```
 1            would calculate it.

 2                Anything else at this time

 3            other than the verdict forms that

 4            I can help y'all with?

 5     THE FOREPERSON:  That seems to satisfy

 6            everyone.

 7     THE COURT:  Okay.  I'm going to send

 8            y'all back.  Or if you want to

 9            take a break, either way.  Give us

10            five or ten more minutes to get

11            them, because we have to rewrite

12            them in here, get both parties and

13            myself in agreement on the

14            verbiage, then get it over to the

15            secretary to get her to type it

16            up.  Then we have to get her to

17            come back and reread it, because I

18            think I noticed what's one error

19            in the draft.  Give us a few more

20            minutes on that.  I'm going to

21            bring you back out and go over the

22            new verdict forms with you then.

23            Okay.  Thank y'all.

24                (Jury exits the courtroom.)

25     THE COURT:  Let me put something else
```

1                  real quick on the record.  Just

2                  for the record, based on the

3                  instruction I just finished, is

4                  the plaintiff satisfied at this

5                  point?

6      MR. WHITTELSEY:  Yes, sir.

7      THE COURT:  Is the defense satisfied?

8      MR. SMITH:  Yes, sir.

9      MR. WHITTELSEY:  Your Honor, before we

10                  get going, I would like to read

11                  what I would propose would be a

12                  jury verdict form.  I have been

13                  sitting here working on it.

14      THE COURT:  Different from this one?

15      MR. WHITTELSEY:  Very different.

16                  Because I think -- this is how I

17                  think this thing ought to go now.

18                  Let's start with -- let's start at

19                  the top of the verdict form, let's

20                  start negligence.  There's a

21                  judgment as a matter of law.  We,

22                  the jury, award blank in

23                  compensatory damages against

24                  defendant Manifold Construction,

25                  LLC, on the negligence claim,

1    period.

2         Middle of the page.

3    Wantonness.  We, the jury, find

4    that defendant Manifold

5    Construction, LLC, is -- with a

6    blank, to be checked or left

7    blank, comma -- or is not, with a

8    blank, guilty of wantonness as

9    charged.

10         Okay.  Middle of the page.  If

11    you find Manifold Construction,

12    LLC, is guilty of wantonness as

13    charged, then you go further.  And

14    then it would read:  We, the jury,

15    award blank in compensatory

16    damages against Manifold

17    Construction, LLC.  And we, the

18    jury, award blank in punitive

19    damages against Manifold

20    Construction, LLC.  That gets rid

21    of the negligence.  That gets rid

22    of the wantonness.

23         Then you go to the middle of

24    the page.  You put fraud.  We, the

25    jury, assess blank in compensatory

1    damages against defendants

2    Manifold Construction, LLC, and

3    Jack Manifold.  So you've got one

4    form.

5        And then you go -- and then

6    you -- middle of the page.  Fraud,

7    paren, punitives.  We assess blank

8    in punitive damages for the fraud

9    claims against Manifold

10   Construction, LLC, and we assess

11   blank in punitive damages for the

12   fraud claims against Jack Manifold

13   individually, period.  You're

14   done.  You've covered everything.

15   THE COURT:  The only question I pose to

16       you is the issue about a double

17       award for compensatory damages for

18       negligence and wantonness.

19       Basically, the damages are going

20       to be the same.

21   MR. WHITTELSEY:  Put it on there.  Put

22       it on there.  If you want to,

23       then, go in -- but you've got to

24       have a finding -- well, then flip

25       it.  Make the first thing

1    the award -- the first question --
2    make the first question
3    wantonness.  Put it in front of
4    negligence, okay, and have it read
5    we, the jury, find that defendant
6    Manifold Construction, LLC, was
7    with a blank, was not guilty of
8    wantonness as charged, period.
9        Middle of the page.  If was
10   not, go no further on wantonness.
11   If was, move further.  Okay.
12       Then you go in and you put --
13   you know, if it was, you put the
14   negligence and the wantonness
15   together.  On the claims of
16   negligence and wantonness, we
17   assess compensatory damages
18   against Manifold Construction,
19   LLC, in the amount of blank.  On
20   the wantonness claim, we assess
21   the amount of punitive damages
22   against Manifold Construction,
23   LLC, in the amount of blank.  And
24   you can put a paren or an asterisk
25   by it.  Don't fill in this blank

1      if you found that they're not

2      wanton.

3  THE COURT:  Instead of doing the blank

4      for -- Keep that thought you just

5      gave me, but let me throw this one

6      out.  Under the yes, we have found

7      wantonness, basically just put in

8      a phrase and the compensatory

9      damages are covered by our finding

10     on the negligence claim.

11 MR. WHITTELSEY:  Or better yet, why

12     don't we do this?

13 THE COURT:  Or they don't put a figure

14     in.  They will put one in for the

15     negligence if you do that.

16 MR. WHITTELSEY:  Why don't we do this?

17     Why don't we bring them back in

18     and say, ladies and gentlemen,

19     we're going to do this in a

20     bifurcated manner.  Here's your

21     jury form on wantonness.  Do you

22     or do you not find that Manifold

23     Construction, LLC, is guilty of

24     wantonness.  Yes or no.

25         If they answer no, we have

1              just simplified this thing

2              tremendously.  If they answer yes,

3              we've simplified it tremendously.

4    THE COURT:  I don't --

5    MR. SMITH:  I just think that's all

6              getting way, way too confusing for

7              this jury.

8    MR. WHITTELSEY:  Well, I'm just giving

9              options.

10   MR. SMITH:  I mean, it seems like the

11             compensatory damages are the same

12             on any of them, right?  And if we

13             put it more than once, I think

14             that's going to confuse them where

15             they think they can award it

16             twice.

17   THE COURT:  Why don't we do -- either

18             of those forms that Davis just

19             suggested -- I don't have a

20             problem with this form either.

21             But instead of putting a blank for

22             compensatory damages for

23             wantonness, just have it phrased,

24             you know, for the one where they

25             found it, just go ahead and type

1    in, you know, for compensatory

2    damages the findings are the same

3    as for the negligence.  Because if

4    they find wantonness, the damages,

5    my understanding from the facts,

6    are the exact same compensatory

7    damages as they are for the

8    negligence.

9    MR. WHITTELSEY:  That's right.  The

10    only issue is punitives.

11    THE COURT:  Let me do this.  I charge

12    them and tell them it's all the

13    same, then they have two options.

14    If there's a blank, they can put a

15    zero, and that can mean two

16    different things; they really

17    didn't find wantonness or they're

18    referring back to the previous

19    award on the negligence.  Or they

20    can put in the same figure as the

21    negligence and either it's a

22    double recovery or they're

23    intending simply to restate what

24    has already been stated.  And

25    either way, that's going to lead

1        to potentially, you know, with an

2        appeal or something, further

3        confusion on that issue.

4   MR. SMITH:  Well, isn't it just easier

5        the way we were going where if

6        they find on the wantonness count,

7        and then they put their amount in

8        for compensatory damages, and then

9        just -- and then I would object --

10       I don't even think all the clear

11       and convincing evidence verbiage

12       is necessary.  They find punitive

13       damages.

14   MR. WHITTELSEY:  They've been charged

15       on that.

16   MR. SMITH:  I think it's as simple as

17       that.

18   THE COURT:  My preference at this -- if

19       y'all want to retype it --

20   MR. POOLE:  I've got it saved on

21       computer over there so it's no

22       problem at all.

23   THE COURT:  Is Manifold Construction,

24       they're a corporation --

25   MR. BONNER:  They're an LLC.

1     MR. SMITH:  They are an LLC.

2     THE COURT:  It's Whittelsey that's -- I

3          keep -- Okay.  So they're the LLC,

4          okay.  Let's work off the one we

5          already have.  We, the jury --

6     MR. POOLE:  Use that red pen up there,

7          Judge.

8     MR. WHITTELSEY:  May I be excused to go

9          upstairs before the presiding

10         judge does something bad to me?

11    THE COURT:  Yes.  That first one was

12         okay.

13    MR. SMITH:  I think so.

14    THE COURT:  So we'll go with the first

15         one.  We're going to do that.

16    MR. SMITH:  And then I think on the

17         second one all you need is we, the

18         jury, and then you can take out

19         the rest of the spiel --

20    THE COURT:  Davis --

21    MR. SMITH:  -- about compensatory

22         damages.  I think that's all you

23         need, isn't it?  Well, no, we can

24         leave that in, that's fine,

25         because actually I do want that

 1          language.  You're right.  And then
 2          we, the jury, find --
 3     THE COURT:  Are y'all wanting punitives
 4          on Jack?
 5     MR. POOLE:  We've got to put in Jack.
 6          They'll check.
 7     THE COURT:  I think the only thing you
 8          need to change is put in Jack on
 9          the punitive.
10     MR. SMITH:  I think that's already
11          there, isn't it?
12     MR. POOLE:  No, no, no.  On that form,
13          we didn't have Jack.
14     THE COURT:  We want separate punitive
15          blanks for the two defendants but
16          only one for the compensatory.
17     MR. SMITH:  Yes.  Maybe put "or"
18          there.  And then take out --
19     MR. WHITTELSEY:  But you have to have
20          an area in there, Judge, that they
21          make a finding concerning the
22          wantonness claim.
23     THE COURT:  That's the first thing.
24     MR. POOLE:  Davis.
25     MR. WHITTELSEY:  Sir?

1      MR. POOLE:  One amount for punitive
2          damages against the company, one
3          amount for punitive damages
4          against Jack?
5      MR. WHITTELSEY:  That's correct.
6      MR. POOLE:  I got it.
7      MR. BONNER:  The only thing I saw,
8          Bobby, is -- I think you and I
9          goofed on this when we were going
10         back.  Originally, we had the
11         "or," but we need to just add
12         those back in.
13     MR. POOLE:  No, I just didn't do "or"
14         because they're going to check one
15         or the other.  That's why we say
16         mark appropriate box, so there's
17         not an "or."
18     MR. BONNER:  I didn't know if it would
19         confuse them or not.
20     MR. SMITH:  Just leave these like they
21         are.
22     MR. POOLE:  I'll take out your
23         verbiage.
24     THE COURT:  We can be off.
25              (Discussion held off the

1              record.)

2    THE COURT:  Let's go back on the

3              record.  At this point,

4              Mr. Whittelsey says he's satisfied

5              with the verdict form.  Is the

6              defense satisfied?

7    MR. SMITH:  Satisfied.

8    THE COURT:  Everyone agree?

9    MR. WHITTELSEY:  Plaintiff is

10             satisfied, Your Honor.

11                 (Jury enters the courtroom.)

12   THE COURT:  Okay.  We hope we have a

13             better verdict form for y'all.

14             You'll have this to go back there,

15             but I'm just going to briefly go

16             over it with you.  It is pretty

17             self-explanatory.  The first issue

18             up here at the top -- the order is

19             not necessarily that important,

20             but the first issue is either you

21             find for the plaintiff or for the

22             defendant on the wantonness

23             claim.  It is just a yes or no.

24             Don't check both boxes.  Just

25             check the one, either yes --

basically yes or no.  We, the
jury, find in favor of the
plaintiffs; or we, the jury, find
in favor of the defendant.
Manifold Construction, LLC, is the
only named defendant on that
claim, not Jack Manifold
individually.

The next thing we need y'all
to tell us is, we, the jury,
assess plaintiffs' compensatory
damages at blank.  Y'all have to
put a figure there based on the
negligence and the fraud issues.
Even if you find for the defendant
on the wantonness claim, we still
need to know the total lump sum.
Don't break it down.  Lump sum of
compensatory damages, what I went
over with you to actually
compensate the plaintiff for the
damages that y'all find that they
have legitimately and legally
suffered.  That would also -- if
you find mental anguish, that

1    would be in that total lump sum.

2    Just add it all up, give us a

3    single figure.  We don't need a

4    breakdown.  If you find in favor

5    of the wantonness, that figure is

6    going to include your damages on

7    the wantonness as well, that lump

8    sum.

9        As a practical matter -- and I

10    don't want to add further

11    confusion -- since the negligence

12    and wantonness both involve the

13    same set of facts, the damages are

14    really going to be the same.  The

15    compensatory damages.  I don't see

16    how you can, you know, separate

17    those really, but we still need to

18    know the answer to these

19    questions.

20        The next two issues deal with

21    the punitive damages issues.  And

22    the first is if you find, by clear

23    and convincing evidence, to award

24    punitive damages against Manifold

25    Construction, LLC, there's a blank

1　for you to put a figure there.

2　　If you find Jack Manifold

3　liable for punitive damages,

4　there's a blank for him.　Just

5　because you assess against one

6　does not mean that you have to

7　assess against the other.　Follow

8　the law and your sound judgment on

9　those issues.　I'm not suggesting

10　you answer one way or the other.

11　I just want to make sure we're all

12　on the same page on this.

13　　And then the contra:　If you

14　don't find as to one or both,

15　that's that final question, and we

16　basically know that by your

17　answering the first, but we want

18　to make sure we're clear on the

19　punitive damages issue.

20　　Let me also mention that if

21　you go back and, for whatever

22　reason, you're confused about

23　either what I have told you or

24　about the verdict forms, please

25　don't hesitate to come back and

```
 1              let's try it again, because
 2              everybody wants everybody to be
 3              clear on what y'all are doing.  In
 4              your collective groups, we have to
 5              deal with you collectively.  We
 6              can't go back and find out
 7              individually what you were
 8              thinking.  At this point, on the
 9              verdict form and my explanations,
10              is the plaintiff satisfied?
11   MR. POOLE:  Need to approach just on
12              one thing, Judge.
13                  (Bench conference held outside
14                  the hearing of the jury.)
15   MR. POOLE:  Just on the form, if you
16              tell them if they mark both of
17              them on this, that wouldn't even
18              go down on this.  If they don't
19              mark on this, they are not going
20              to sign this.  You see what I'm
21              saying?  Just that clarity.
22   MR. SMITH:  That's fine.
23   THE COURT:  Okay.  And this is really
24              for the Foreman.  But understand
25              on this, the way we phrase the
```

1     punitive damages is that if you

2     find punitive damages as to both

3     defendants and you put two

4     figures, one for each defendant,

5     you don't need to answer the

6     bottom question or sign it.

7         By the same token, if you find

8     no punitive damages for either

9     defendant, you don't need to sign

10    this one.  Just do the bottom.  I

11    think you'll see that that's

12    self-explanatory when you get back

13    there.  But again, if there's any

14    confusion, please let us know

15    while we're all still here.

16        At this point, is the

17    plaintiff satisfied?

18    MR. POOLE:  Yes, sir.

19    MR. WHITTELSEY:  Yes, Your Honor.  Let

20        me -- I just need to make one

21        statement to the Court.  Ladies

22        and gentlemen, I'm an

23        insulin-dependent diabetic, and

24        that's the reason I've had a Diet

25        Coke or a Coke brought to me.  I

1    just want y'all to know that,

2    okay.  It's not disrespectful to

3    the trial.

4    THE COURT:  Is the defense satisfied as

5    well?

6    MR. SMITH:  Yes, Your Honor.

7    THE COURT:  Are there any questions at

8    this point that y'all have about

9    the verdict forms or what I just

10    told you or any other issues that

11    anybody wants to ask while y'all

12    are out here?

13    THE FOREPERSON:  That seems to have

14    cleared everything up.  Thank

15    you.

16    THE COURT:  And with that, we'll give

17    you the verdict form and let you

18    go back, and we'll wait on your

19    decision.

20    (Jury exits the courtroom.)

21    THE COURT:  Let's see.  Mr. Oliver, you

22    are the Foreman; is that right?

23    THE FOREPERSON:  Yes, sir.

24    THE COURT:  For the Record, you've

25    handed me the verdict and I will

```
 1              go over the verdict.  We, the

 2              jury, find in favor of the

 3              plaintiffs and against defendant

 4              Manifold Construction, LLC, on

 5              plaintiffs' wantonness claim.  We,

 6              the jury, assess plaintiffs'

 7              compensatory damages at $275,000.

 8                  We, the jury, find that the

 9              plaintiffs have proven their claim

10              for punitive damages against the

11              following defendants, Manifold

12              Construction, LLC, and assess

13              punitive damages at $1.5 million,

14              one and a half million dollars;

15              and against Jack Manifold

16              individually, and assess punitive

17              damages at $1 million.

18                  And, Ladies and Gentlemen,

19              what I need to do at this time is

20              poll you.  And I hate to point at

21              you.  That's the easiest way.  I'm

22              going to start right here, just

23              work my way down and back across.

24              And I'll simply be asking if this

25              is your verdict.  If it is, would
```

1          you just state affirmatively,

2          yes.  If not, please let me know.

3          Is it your verdict?

4     JUROR:  Yes.

5     JUROR:  Yes.

6     JUROR:  Yes.

7     JUROR:  Yes.

8     THE COURT:  Yours?

9     JUROR:  Yes.

10    JUROR:  Yes.

11    JUROR:  Yes.

12    JUROR:  Yes.

13    JUROR:  Yes.

14    JUROR:  Yes.

15    JUROR:  Yes.

16    THE COURT:  And let the Record show

17         that each juror has stated in the

18         affirmative.  Anything from the

19         plaintiff at this time?

20    MR. WHITTELSEY:  No, Your Honor, not at

21         this time.

22    THE COURT:  Anything from the defense

23         at this time?

24    MR. SMITH:  Nothing.

25    THE COURT:  At this time, if you don't

1   mind, go back to the jury room,

2   hopefully for just a minute, and

3   let me take up something, and then

4   we will let you know.  I'm not

5   going to keep you back there

6   hopefully more than just a couple

7   minutes without knowing

8   something.  So if you don't mind,

9   just go back with the bailiff.  If

10  you need to go to the restroom or

11  something, that's fine.

12      (Jury exits the courtroom.)

13  THE COURT:  I guess we need to, at

14  least for the Record, take up, I

15  guess, the Intervenor's issue.  Do

16  y'all want to address that while

17  we still have the jury or -- let

18  me just do this, officially just

19  ask for a response from them.

20      For the Record, just state

21  your name and, also, who your

22  client is.

23  MR. MCILWAIN:  I'm Chris McIlwain.  I

24  represent Ohio Casualty Insurance

25  Company, which has a pending

1          Motion to Intervene that's not

2          been ruled upon, so we are not a

3          party to the case.

4     THE COURT:  Based on the verdict, are

5          y'all asking for anything at this

6          time or --

7     MR. MCILWAIN:  Well, I will -- Let me

8          put it this way:  As long as the

9          parties do not ask for any special

10         interrogatories, I will not

11         either; and, therefore, will

12         withdraw my Motion to Intervene.

13    THE COURT:  That's withdrawn.  Anything

14         else from the plaintiff at this

15         time?

16    MR. WHITTELSEY:  One moment, Your

17         Honor.

18            I've got to hear the statement

19         again, offer again from the

20         proposed intervenor.

21    THE COURT:  He says that he's

22         withdrawing, I guess, his Motion

23         to Intervene.

24    MR. WHITTELSEY:  Well, Your Honor, our

25         statement on that is this, is that

1     we do not plan to submit special

2     interrogatories to the jury.

3     However -- and we don't plan to

4     submit special interrogatories to

5     the jury.  But on the issue of

6     their withdrawing their motion to

7     intervene, that's up to them, and

8     we don't -- we neither accept it.

9     We just -- that's up to them.

10    THE COURT:  I guess at this point, I'm

11    basically needing to know from the

12    plaintiff, is there a problem with

13    me discharging the jury at this

14    time from the plaintiffs'

15    standpoint?

16    MR. WHITTELSEY:  No, sir.

17    THE COURT:  Okay.  From the defense

18    standpoint, can I discharge the

19    jury?

20    MR. SMITH:  Yes.  I guess -- Yes, sir,

21    Your Honor.

22    THE COURT:  I'm just going to tell

23    them -- You want me to ask them to

24    come back in?  Does anybody know,

25    do they need to contact the clerk

1                or are they just free to go?  Do

2                you know, sheriff?

3      THE BAILIFF:  As far as I know, they

4                would be free to go, and the clerk

5                will mail them their check.  If

6                they would like, they could step

7                to the clerk's office, those that

8                want to go by there.

9          (Jury enters the courtroom.)

10     THE COURT:  The good news at this point

11              is I'm discharging you from

12              further service.  I do want to

13              thank you all.  I know that you

14              have been very conscientious about

15              your duties.  That's been obvious

16              to everyone.  And I do truly

17              appreciate you and thank you for

18              your service.  It is a very

19              important form of citizenship.

20              You are discharged at this time.

21              I'm not sure of the exact

22              procedure.  My understanding is

23              your jury service is finished.

24              You're free to go back about your

25              home or work.  The clerk will mail

```
 1            you your checks.  Or I'm told if
 2            you want to stop by the clerk's
 3            office, you know, they may be able
 4            to prepare your juror check now.
 5            I just don't know since I'm not
 6            normally assigned here.  With
 7            that, thank you for your service,
 8            thank you for your verdict, and
 9            y'all are free to go.  Okay.
10            Thank y'all.  Good luck to you.
11                 (Jury exits the courtroom.)
12      THE COURT:  I have entered the verdict
13            for the Record by signing the
14            bottom of the verdict form.  Is
15            there anything else from the
16            plaintiff at this time?
17      MR. WHITTELSEY:  No, sir, not at this
18            time.
19      THE COURT:  Anything else?
20      MR. SMITH:  Judge, we would obviously
21            seek a remittitur in that it
22            doesn't comply with the punitive
23            damage statute in that it's much
24            over three times compensatory
25            damages.
```

1      THE COURT:  I guess the best thing,
2              just a follow-up brief, file a
3              written motion is probably going
4              to be best at this point, and get
5              it to me.  And, you know,
6              presumably, we may have to have a
7              subsequent hearing on that, but I
8              guess just prepare the motion and
9              we will consider that
10             accordingly.  Anything else?
11             Okay.  That's it.  Good luck to
12             y'all.
13                 (The proceedings concluded at
14                 11:58 a.m.)
15         * * * * * * * * * * *
16         END OF PROCEEDINGS
17         * * * * * * * * * * *
18
19
20
21
22
23
24
25

REPORTER'S CERTIFICATE

STATE OF ALABAMA

MONTGOMERY COUNTY

      I, Shannon M. Williams, Certified Shorthand Reporter and Commissioner for the State of Alabama at Large, hereby certify that on November 2, 2006, I reported the TESTIMONY AND PROCEEDINGS in the matter of the foregoing cause, and that pages 1 through 65 contain a true and accurate transcription of said proceedings. Only the aforementioned page numbers will change on completion of the final appeal transcript, along with insertion of an index on the appearance page.

      I further certify that I am neither kin nor of counsel to the parties to said cause, nor in any manner interested in the results thereof.

      This 30th day of November, 2006.

SHANNON M. WILLIAMS, CSR
Commissioner for the
State of Alabama at Large

MY COMMISSION EXPIRES: 1/14/2010

HUBBARD, SMITH, McILWAIN, BRAKEFIELD & BROWDER, P.C.
ATTORNEYS AT LAW
808 LURLEEN WALLACE BLVD., NORTH
P.O. BOX 2427
TUSCALOOSA, ALABAMA 35403-2427

MICHAEL D. SMITH
CHRISTOPHER L. McILWAIN
W. MARCUS BRAKEFIELD
HERBERT E. "CHIP" BROWDER
ROBERT M. SPENCE
SHANNON CLAY STAGGS
TRAVIS R. WISDOM
KRISTOFOR D. SODERGREN
J. GRIFFIN WATERS

PERRY HUBBARD
1921-1991

TELEPHONE
(205) 345-6789

TELECOPY
(205) 759-1195

Writer's E-Mail Address:
cmcilwain@hsmbb.com

April 20, 2006

Hon. Bradley E. Mendheim
Houston County Circuit Court
P. O. Box 6406
Dothan, AL 36302-6406



RE:   *Whittelsey Properties, Inc., et al. v Manifold Construction, LLC, et al.*
Lee County Case No.:    CV-05-137
Our File:    36618

Dear Judge Mendheim:

At the conclusion of the hearing on April 17 in this case, you requested the parties to forward to you any additional cases that they felt were pertinent.

As the cases cited to the Court by counsel for the Plaintiff indicate, a decision whether to grant or deny a pre-verdict motion for permissive intervention under 24(b) is discretionary with the trial court, and you have probably noticed that our appellate courts have almost uniformly affirmed whatever that decision was.

Ever since *Alabama Hospital Association Trust v. Mutual Assurance Society,* 538 So.2d 1209 (Ala. 1989), which held that juror affidavits are not admissible to explain a jury's rationale behind a general verdict, it has been my experience that an increasing number of trial judges have exercised that discretion in favor of intervention. Today, I believe that limited intervention of the type sought by Ohio Casualty (as opposed to "Universal Underwriters" intervention of the type first proposed in *Universal Underwriters Ins. Co. v. East Central Alabama Ford-Mercury, Inc.,* 574 So.2d 716 (Ala. 1990) cited by counsel for the Plaintiffs) is denied only in exceptional circumstances.



EXHIBIT
E

Hon. Bradley E. Mendheim
April 20, 2006
Page 2

---

As discussed at the hearing, the circumstances of this particular case are tailor-made for limited intervention given that a general verdict in favor of the Plaintiffs may forever obscure the components of that verdict and possibly result in an absence of liability insurance coverage for that verdict.

For example, coverage under the Ohio Casualty policy is limited to "bodily injury" and "property damage" (as those terms are defined in the policy) caused by an "occurrence" (defined as a "accident"). The term "occurrence" does not include situations where damage is expected or intended by an insured. *Alfa Mut. Ins. Co. v. Meroney*, _____ So.2d _____ 2005 WL 1532322 (Ala. Civ. App. 2005) (copy enclosed). The term "property damage" does not include economic loss, *American States Ins. Co. v. Martin*, 662 So.2d 245, 248 (Ala. 1995) (copy enclosed) and property damage coverage is further limited by certain exclusions.

However, the Plaintiffs are asserting claims for intentional wrongs and unintentional wrongs, and are also asserting claims for economic loss and other types of damage which are not covered. If the jury returns a general verdict, it will be impossible to determine what, if any, portion of that verdict is covered. One possible outcome of this is that no portion of the verdict will be covered and that the trial of the case would have been in vain.

I recognize that counsel for the litigants have followed their initial instinct in objecting to anything that a liability insurer might propose despite the absence of prejudice to their positions. However, given that Ohio Casualty's *limited* intervention will not alter their preparation or trial of this case; that you will be the final arbiter on

Hon. Bradley E. Mendheim
April 20, 2006
Page 3

what interrogatories are propounded to the jury, and that answers to those
interrogatories will effectively determine whether the Plaintiffs will actually receive
any compensation, I submit that intervention is an absolute necessity.

Respectfully submitted,

Christopher Lyle McIlwain

CLM/brs

Enclosure

cc:    Davis B. Whittelsey
       James Don McLaughlin
       Bradley J. Smith
          Court Clerk

ELECTRONICALLY FILED
12/1/2006 11:45 AM
CIRCUIT COURT OF
LEE COUNTY, ALABAMA
CORINNE T. HURST, CLERK

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| WHITTELSEY PROPERTIES, INC.,<br>et al., | )<br>)<br>) |
|     Plaintiffs, | )<br>) |
| v. | )     CV-05-137<br>) |
| MANIFOLD CONSTRUCTION, LLC,<br>et al., | )<br>)<br>) |
|     Defendants. | )<br>) |

### DEFENDANTS' MOTION FOR A NEW TRIAL

COME NOW the Defendants, Manifold Construction, LLC and Jack Manifold (the "Manifold Defendants"), and move this court for a new trial due to errors which prejudiced the Manifold Defendants. In support of their motion, the Manifold Defendants state as follows:

Plaintiffs' claims involve work performed on a residential construction development in Opelika, Alabama. Plaintiffs allege the Manifold Defendants' improper workmanship caused a host of damages to the development. The trial began on October 30, 2006, and concluded on November 2, 2006, at which time the jury awarded a verdict in favor of the Plaintiffs in the total amount of $2,775,000 in both compensatory and punitive damages. This award consisted of $275,000 in compensatory damages, $1.5 million in punitive damages against Manifold Construction, and $1.0 million in punitive damages against Jack Manifold, individually.

The Manifold Defendants move for a new trial based upon certain grounds which were prejudicial to them. First, over the Manifold Defendants' objection,



the court granted challenges for cause on three venire members who had reservations about awarding damages for mental anguish but ultimately agreed they would follow the law. Second, over the Manifold Defendants' objection, the court granted a challenge for cause regarding an elderly juror who had diabetes. Third, again over the Manifold Defendants' objection, this court granted a directed verdict (JML) for Plaintiffs on the issues of negligent construction and reckless fraud. Fourth, it was error for the jury to decide on the claim of wantonness as there was insufficient evidence for such a finding on the part of Manifold Construction. Fifth, the jury's award of punitive damages is outside of the allowable bounds in that it is more than three times the award of compensatory damages. Sixth, testimony concerning alleged but altogether unsubstantiated drug use by Manifold Construction employees was improperly submitted to the jury. Seventh, the jury should not have been able to consider Jack Manifold's individual liability as he was working in his capacity as a member of Manifold Construction, LLC throughout the course of the project. Finally, the directed verdict on the breach of contract claim was in error because the contract between the parties had been rescinded.

Because of the above-referenced errors that resulted in prejudice, the Manifold Defendants are entitled to a new trial.

### 1.   Three jurors who expressed reservations about mental anguish damages should not have been struck from the jury.

Over the Manifold Defendants' objection, Plaintiffs challenged for cause three potential jury members who initially expressed reservations about awarding mental anguish damages, but then said they would be able to follow the

law regarding that issue.  Plaintiffs' challenge for cause was improper and should

not have been granted.  Alabama law has provided the following concerning the

striking of a juror under these circumstances:

> Even though a prospective juror may initially admit to
> a potential for bias, the trial court's denial of a motion
> to strike that person for cause will not be considered
> error by an appellate court if, upon further
> questioning, it is ultimately determined that the
> person can set aside his or her opinions and try the
> case fairly and impartially, based on the evidence and
> the law.

*Hall v. State,* 820 So.2d 113, 126-127 (Ala. Crim. App. 1999) (quoting *Travis v.*

*State,* 776 So.2d 819, 867 (Ala. Crim. App. 1997)).

The real test in deciding a challenge for cause is determining whether the

juror at issue can ignore any preconceived ideas he may have and still render a

verdict according to the evidence and law.  *Ex parte Burgess,* 827 So.2d 193 (Ala.

2000).  This challenge for cause must show an *absolute* bias or favor.  *Hutchins*

*v. DCH Regional Medical Center,* 770 So.2d 49, 54 (Ala. 2000); *Wallace v.*

*Alabama Power Co.,* 497 So.2d 450 (Ala. 1986).

The jurors at issue indicated an initial hesitation towards awarding mental

anguish damages, but then stated they would be able to follow the law regarding

such an award.  Clearly there is no absolute bias against mental anguish damages

awards shown in this instance, as the jurors themselves indicated their ability to

follow the law properly.  A juror may be excused when his opinion or bias is so

fixed that he is prevented from trying the case fairly and impartially.  *Stewart v.*

*State,* 601 So.2d 491 (Ala. Crim. App. 1992).  As no such opinion or bias was

shown, given the jurors' willingness to follow the law as to mental anguish

damages, the challenge was without basis.    Therefore the granting of the challenge and the striking of those jurors, was in error.  Plaintiffs succeeded in eliminating any jurors who had an initial opinion concerning mental anguish damages adverse to their interests, even though those jurors agreed they would follow the law on the issue.  Once a juror indicates he can put aside his personal opinions and follow the law, the juror cannot properly be struck.  As such, the Manifold Defendants were prejudiced and a new trial is due.

**2.      The challenge for cause of a diabetic juror was improper.**

The court granted the Plaintiffs' challenge for cause of a potential juror who had diabetes.  The striking of this juror was improper and prejudiced the Manifold Defendants, as there was no basis for this strike.  Under Alabama law, it is proper to strike a juror who does not want to serve due to poor health. *See Hall v. State,* 820 So.2d 113 (Ala. Crim. App. 1999).  In *Hall,* a potential juror had been sick for some time with hypertension and heart disease, and thus the court determined this was a valid reason for striking the juror.  In the present case, however, there was no discussion of the juror's overall health and whether he would be able to serve in his fullest capacity.  Though the juror may from time to time need food or water that other jurors may not need with similar frequency, this alone does not constitute poor health that would prevent a juror from serving.  When the juror himself did not request to be released from jury service due to his diabetic condition, the court should not infer that such condition will be an impediment to service or the trial proceedings.

There was simply not enough information provided concerning the juror's diabetic condition which would lead to a proper strike of that juror. As such, the Manifold Defendants were prejudiced by the court's decision to strike the juror.

### 3. The directed verdict on the issues of negligent construction and reckless fraud was improper.

Over the Manifold Defendants' objection, this court granted a directed verdict in favor of the Plaintiffs on the issues of negligent construction and reckless fraud. Reckless fraud should never have been presented to the jury. The Manifold Defendants now assert the trial court's decision was in error.

In order for a directed verdict to be properly entered, there must be "a complete absence of proof on a material issue" or "no disputed questions of fact for the jury to determine." *Bergob v. Scrushy,* 855 So.2d 523, 530 (Ala. Civ. App. 2006) (quoting *Woodruff v. Johnson,* 560 So.2d 1040 (Ala. 1990)). Essentially, "a directed verdict is proper only if the evidence and the inferences which can be drawn from that evidence must lead reasonable persons only to one conclusion." *Pegram v. Hebding,* 667 So.2d 696, 701 (Ala. 1995). The evidence presented showed the jury could have reached a different conclusion, however they were not given such an opportunity due to the directed verdict. As a result of the directed verdict, the Manifold Defendants were prejudiced.

### a. Negligent Construction

Plaintiffs' claim of negligent construction was presented in count nine in the First Amended Complaint. Through this claim, Plaintiffs allege the Manifold Defendants negligently performed installations and/or construction on the project. Such installations and/or construction included work on the sewer

system, certain manholes, the drain rise gate and/or closing valve on the dam, and the coring of the dam. There is simply no evidence presented to demonstrate that a directed verdict on this issue was proper.

At the time the Manifold Defendants left the project, Plaintiffs determined it was necessary to finish grading the roadways, install additional utility lines, repair the water system, and repair the sewer. Plaintiffs claim to have discovered Manifold's alleged poor workmanship upon beginning repair work. Despite these repair efforts, Plaintiffs encountered problems with the dam after it had been repaired by a second company, Kendrick Construction. Because of the work performed by Kendrick, it cannot be known which damages or mistakes that had to be remedied by the Plaintiffs were made by Manifold or Kendrick. Alabama law has provided:

> However negligent a person may have been in some particular, he is liable only to those who may have been injured by reason of such negligence, as the proximate cause. Where some independent agency has intervened and been the immediate cause of the injury, the party guilty of negligence in the first instance is not responsible.

*Baugh v. Bradford,* 529 So.2d 996, 999 (Ala. 1998) (quoting *General Motors Corp. v. Edwards,* 482 So.2d 1176, 1194 (Ala. 1985) (internal citations omitted)).

There are too many unresolved questions of fact concerning the work performed on the project to allow the issue of negligent construction to be kept from the jury. It is for the jury to determine, based on the facts and evidence presented, whether it was clearly the acts of the Manifold Defendants which caused problems with the project. The evidence cannot definitively point to the

Manifold Defendants for the damage done, and thus the directed verdict which took the decision out of the jury's hands prejudiced these Defendants.

**b.    Reckless Fraud**

Plaintiffs contend the Manifold Defendants, through Jack Manifold, misrepresented certain facts concerning the Defendants' performance on the job, responsibilities to subcontractors and other workers or vendors, and similar matters.    Plaintiffs assert they relied on the representations made and were consequently damaged by the Defendants' failure to be honest about their ability to complete the work.    By entering a directed verdict, this court made the determination that there was nothing on the issue of fraud to be presented to the jury, a determination which was in error given the evidence presented.

The trial court erred by directing a verdict on reckless fraud when it should have dismissed such count.    There was no evidence to substantiate a count of reckless fraud.    Rather, the only viable count would have been one of innocent fraud, as it was clear through the evidence that there was no intent to deceive shown by the Defendants.

The Manifold Defendants were not given the opportunity to present to the jury their actions surrounding this project.    For instance, the fact that Manifold Construction was undergoing financial difficulty was disclosed to the Plaintiffs from the very beginning of the project.    As such, Plaintiffs would have had knowledge of potential problems with the Defendants' abilities on the project due to the financial hardship.    By directing a verdict, the trial court prevented the jury from hearing this mitigating circumstance.    Further, there is no evidence that at the time the contract was made Jack Manifold did not intend to fulfill his

responsibilities under the contract. Rather, Manifold Construction was simply having financial struggles which could impact the work, but Jack Manifold still intended for Manifold Construction to complete the work it agreed to do. Similarly, there is no evidence that Jack Manifold operated with any intent to deceive the Plaintiffs. The Plaintiffs' contention that the Manifold Defendants were dishonest in communications concerning the subject property is unsubstantiated.

All of the facts demonstrate that any misrepresentation alleged was innocent in nature, not reckless. Under Alabama Code § 6-5-101, a distinction is made between a reckless and an innocent misrepresentation based upon the intent of the party making the alleged misrepresentation. Alabama law provides that an innocent misrepresentation does not require an element of recklessness or willfulness. *Young v. Serra Volkswagen, Inc.,* 579 So.2d 1137 (Ala. 1999). As there was simply no evidence submitted to show an intent to deceive by the Manifold Defendants, the reckless misrepresentation claim was due to be dismissed. Instead, at most, an innocent misrepresentation claim was due to be presented to the jury.

The issue of reliance also comes into play when considering a claim of fraud. In this instance, it cannot be said that Plaintiffs reliance on the Manifold Defendants' representations was reasonable given their knowledge of the Defendants' financial problems. As stated, from the beginning the Plaintiffs were made aware of Manifold Construction's financial difficulties. Plaintiffs also had a history with Manifold Construction through work performed on the first phase of Sanders Creek as well as working as a subcontractor on projects of Plaintiff

Sheldon Whittelsey's previous company. Given Manifold's admission that it had financial problems going into the project, Plaintiffs' reliance on Manifold's representations concerning the project was unreasonable and misplaced. Plaintiffs cannot now contend that these Defendants fraudulently misrepresented their abilities on this project when Defendants were open and honest about the financial situation from the beginning.

The main point presented here is that there is plenty of evidence and disputed facts that were not allowed to be presented to the jury on the issues of negligent construction and reckless fraud. A directed verdict should not be granted "if there is any conflict in the evidence for the jury to resolve." *Independent Life & Acc. Ins. Co. v. Parker,* 470 So.2d 1289, 1291 (Ala. 1985). These conflicts go to the heart of the Manifold Defendants' intentions and actions concerning this project, the Plaintiffs' understanding of the Defendants' representations, and the overall interaction between the parties on the project. The evidence is not so clear cut as to direct a verdict for the Plaintiffs on the issues of negligent construction and reckless fraud, and to do so was in error. By presenting the facts to the jury, a different conclusion could have been drawn, and it was prejudicial to the Manifold Defendants not to be afforded the possibility of a different conclusion. Further, a directed verdict on these issues tainted the jury to believe that because the Manifold Defendants were liable on these counts, they were necessarily liable on all other counts. Due to the prejudice resulting from the directed verdict, it is clear the directed verdict was in error and a new trial on these issues is warranted.

4.  **The wantonness count should not have been submitted to the jury; such issue should have been decided on summary judgment.**

The Alabama Code defines wantonness as "conduct which is carried on with a reckless or conscious disregard of the safety of others." Alabama Code (1975) § 6-11-20(b)(3). There must be a showing of consciousness that injury is likely to result. The trial court erred in submitting the count of wantonness to the jury as there was no showing of any knowledge or consciousness on the part of the Manifold Defendants that injury would occur. This issue should have been decided in favor of the Defendants upon their motion for summary judgment.

The testimony presented at trial showed Jack Manifold, as the owner of Manifold Construction, never intended to cause any harm to the Plaintiffs. He was unaware of the severity of his financial situation and business problems. Jack Manifold became overwhelmed with the amount of work Manifold Construction was doing and was unable to get out from underneath the problems. Despite these problems, there is a complete absence of evidence that Jack Manifold had the requisite conscious culpability to warrant a finding of wantonness. Further, there is no evidence to indicate that the work performed by Manifold Construction on the Sanders Creek project was done in a wanton manner. There was no evidence was presented to show Manifold Construction was aware of any poor workmanship, which negates any conscious culpability on its part regarding the work done.

The mindset which Manifold Construction and Jack Manifold had on the Sanders Creek project was not one that rose to the level of wantonness. Rather, these Defendants tried to do the job they were hired to do, but were unable to

complete that job due to financial difficulties with the company. At no time did these Defendants set out to harm the project. Without any evidence as to these Defendants having knowledge that injury and damage would occur to this project, summary judgment on this issue was proper. The Court's denial of the Defendants' motion for summary judgment on this issue was in error, and therefore the wantonness count was improperly submitted to the jury.

5.    **The punitive damages awarded are improper, excessive and due to be reduced, and therefore a hearing for review of this award is requested.**

Punitive damages awards are proper only when there is a showing of intentional conduct. The applicable code section provides:

> Punitive damages may not be awarded in a civil action...other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

Alabama Code (1975) § 6-11-20(a).

As discussed, there is a lack of clear and convincing evidence of wantonness on the part of the Manifold Defendants. Plaintiffs have not shown any intent to deceive on the part of Jack Manifold or Manifold Construction. To the contrary, these Defendants were upfront and honest about the company's financial condition and ability to move forward with the project once it went out of business. Plaintiffs have also failed to show that any construction errors were made intentionally to cause harm to the Plaintiffs. Any mistakes made were innocent in nature, and the jury should have been instructed as to the innocence, rather than intentional or reckless nature, of any misrepresentations alleged.

Without any evidence of intentional conduct, a punitive damages award is improper.  *See Ferguson v. Baptist Health System, Inc.,* 910 So.2d 85 (Ala. 2005); *Shiv-Ram, Inc. v. McCaleb,* 892 So.2d 299 (Ala. 2003).

Even if the court should determine that punitive damages were proper, the amount awarded is excessive.  The jury awarded $275,000 in compensatory damages to the Plaintiffs based upon the wantonness claim asserted against the Manifold Defendants.  The jury then assessed $1,500,000 in punitive damages against Manifold Construction, LLC and $1,000,000 against Jack Manifold individually.  These assessments of punitive damages are excessive and must be remitted.

Alabama Code (1975) § 6-11-21 governs the award of punitive damages.  In a case which does not involve physical injury, such as the case herein, punitive damages must be, at most, three times compensatory damages or $500,000, whichever is greater.  The code section further provides in subparts (b) and (c) that when the defendant is a small business, meaning a business having a net worth of less than $2,000,000 at the time of the occurrence made the basis of the suit, punitive damages cannot exceed $50,000 or ten percent of the business's net worth, whichever is greater.  *See also Prudential Ballard Realty Co. v. Weatherly,* 792 So.2d 1045 (Ala. 2000).  As Manifold Construction, LLC was a small business at the time of the occurrence, and is now out of business, the punitive damages award against it cannot exceed $50,000.  Similarly, because Jack Manifold was operating in his capacity as owner and member of Manifold Construction, LLC, any damages assessed against him should also come under

the $50,000 cap.  The punitive damages award clearly violates the applicable

portion of the Alabama Code and is due to be remitted.

> **a.    Request for   hearing to review the punitive damages award.**

Due to the excessiveness of the punitive damages award, the Manifold

Defendants request a hearing pursuant to Alabama Code (1975) § 6-11-23(b),

which provides as follows:

> In all cases wherein a verdict for punitive damages is awarded, the trial court shall, upon motion of any part, either conduct hearings or receive additional evidence, or both, concerning the amount of punitive damages.

The Manifold Defendants further point out that Alabama law, through

*Hammond v. City of Gadsden,* 493 So.2d 1374, 1378 (Ala. 1986), provides that a

court may reduce a jury's award of punitive damages if it can be shown by these

Defendants that (1) the amount of the award is excessive and (2) that because of

the excessiveness of the award, these Defendants are being deprived of property

contrary to constitutional protections.  Clearly there is no substantial evidence to

support the punitive damages awarded, nor do the punitive damages comport

with statutory limitations.  As such, the punitive damages are excessive and

grossly disproportional to the Manifold Defendants' alleged offenses.

**6.    Testimony regarding alleged drug use was prejudicial to the Manifold Defendants as there was no credible evidence of defects to the project resulting from the alleged drug use.**

The Manifold Defendants have been prejudiced by the testimony

presented by Plaintiffs' witness Jesse Cason concerning alleged drug use by

Manifold employees on the Sanders Creek project.  The Manifold Defendants'

objection to this testimony was improperly overruled. Plaintiffs have not been able to point to a specific defect in the Manifold Defendants' work which resulted from this alleged drug use, and therefore the testimony's prejudicial effect far outweighed any probative value it may have had. Therefore, under Alabama Rule of Evidence 403, this evidence was due to be excluded.

Plaintiffs have failed to relate any specific defect in the Sanders Creek project to the alleged drug use. Evidence related to non-pled claims is irrelevant and will not assist the trier of fact in determining the claims at issue. Instead, the admission of the evidence, albeit unsubstantiated, has the resulting effect of characterizing the Defendants in a very negative light. The evidence was clearly used in an attempt to prove the alleged negligence and wantonness of the Manifold Defendants, which was improper. The discussion of the non-pled claims related to the alleged drug use in the course of trying the other claims was unfairly prejudicial to these Defendants. As the alleged drug use was not probative as to the work performed on the project, as no defects were recognized as resulting from the alleged drug use, it served only to prejudice the Defendants as to all other claims presented. The evidence related to the alleged drug use improperly led the factfinder to determine the Manifolds' negligence and wantonness.

7. **Jack Manifold should not have been held liable as an individual, as he was working in his capacity as a member of Manifold Construction, LLC.**

Throughout the course of the Sanders Creek project, Jack Manifold worked as a member of Manifold Construction, LLC. While working in that

capacity, it was improper for the jury to award damages to the Plaintiffs against Jack Manifold individually.

Jack Manifold worked on the Sanders Creek project entirely in his capacity as owner and operator of Manifold Construction, LLC. He signed the contract with the Plaintiffs as owner of Manifold Construction, LLC, and not as an individual. It has been held that when a contract is signed on behalf of an LLC in the capacity of an owner or member, that owner or member does not become a signatory to the contract in an individual capacity. *See Clement Contracting Group, Inc. v. Coating Systems, LLC,* 882 So.2d 971, 975 (Ala. 2003). The Alabama Limited Liability Company Act, codified in the Alabama Code, further directs that a member or manager of an LLC is not a property party to proceedings against the LLC. Alabama Code (1975) § 10-12-18. A member of an LLC will not be found liable except for his own acts or conduct outside of his representation of the LLC itself. Alabama Code (1975) § 10-12-90.

These Plaintiffs have not presented any evidence to show Jack Manifold acted at any time outside of his capacity as the owner of Manifold Construction, LLC. Any representations made or acts performed were all on behalf of Manifold Construction, LLC and its work on the Sanders Creek project. Without a showing that any of the alleged acts were performed by Jack Manifold on an individual basis and not on behalf of Manifold Construction, LLC, Jack Manifold was improperly added as a party to the suit. Subsequently, any finding of liability on an individual basis was improper and in error.

8.    **The directed verdict on the breach of contract claim was in error due to the rescission of the contract.**

The trial court erred in granting a directed verdict to the Plaintiffs on the breach of contract claim. This claim was without merit because the Plaintiffs assumed the contract upon the Defendants' inability to perform fully under the contract. This contract was effectively rescinded by the parties, therefore releasing the Defendants from any liability under it.

After the Defendants realized Manifold Construction would have to go out of business, the parties met to determine how the Sanders Creek project would need to e handled going forward. The Plaintiffs then took over as the general contractor on the project and paid the Manifold Construction employees for work already completed. Plaintiffs were making strides to take over the work which remained unfinished under the contract with the Defendants.

There was a clear decision between the parties that the Plaintiffs would take over what the Defendants could not complete. The contract thus became a nullity. The rescission of the contract erases the validity of the Plaintiffs' breach of contract claim, and therefore the directed verdict on that issue was in error.

## Conclusion

WHEREFORE, PREMISES CONSIDERED, Manifold Construction, LLC and Jack Manifold request this court to grant its motion for a new trial due to the prejudices entered against these Defendants through the course of trial.

Respectfully submitted, this the 1st day of December, 2006.

/s/ Bradley J. Smith
Bradley J. Smith – SMI 242
Eric D. Bonner – BON 020
Cynthia N. Williams – WIL 338
Attorneys for Defendant
Manifold Construction, LLC

OF COUNSEL:

CLARK, ONCALE, HAIR & SMITH, PC
800 Shades Creek Parkway, Suit 850
Birmingham, AL 35209
Tel:    205-397-2900
Fax:   205-397-2901

## CERTIFICATE OF SERVICE

I hereby certify that I have this 1st day of December, 2006 served a copy of the above notice via electronic mail and/or U.S. to the following attorneys of record:

Davis B. Whittelsey, Esq.
Whittelsey, Whittelsey & Poole, PC
600 Avenue A
PO Box 106
Opelika, AL 36803-0106

James D. McLaughlin, Esq.
Davis & McLaughlin
324 East Magnolia Avenue
Auburn, AL 36830

Honorable Judge Brady E. Mendheim (Via U.S. Mail)
District Court Judge
114 North Oats Street
P.O. Box 6406
Dothan, Alabama 36302-6406

/s/ Bradley J. Smith
OF COUNSEL

17